Exhibit A



## REPRESENTATION AGREEMENT

Made as of the 30th day of APRIL   2020.

BETWEEN:

**TEMPLETON MARSH LTD.,**
a corporation incorporated pursuant to the laws of the Province of Ontario and respecting
Canadian and American laws
(hereinafter called the "**Finder**")

-AND-

**CJ WILSON, PORSCHE FRESNO,BMW FRESNO and AUDI FRESNO**

An individual residing in the city of Fresno in the State of California or a corporation incorporated
pursuant to the laws of California
(hereinafter called the "**Seller**")

**WHEREAS** the Finder is in the business of facilitating the purchase and sale of retail automotive
dealerships by identifying companies or individuals with an interest in acquiring or selling retail
automotive dealerships, arranging for the introduction of those similarly motivated parties, and
providing consulting services to assist in the conclusion of the transaction;

**AND WHEREAS** the Seller is interested in selling the retail automotive dealership defined in this
Agreement;

**AND WHEREAS** the Seller wishes to engage the Finder as its exclusive agent for the purpose of
facilitating the sale of the retail automotive dealership and the parties hereto wish to establish the
terms upon which the Finder will act and be compensated for performing its services;

**NOW THEREFORE IN CONSIDERATION OF** the mutual agreements and covenants hereinafter
contained, and such other good and valuable consideration, the receipt and sufficiency of which
are hereby acknowledged by each party, the parties hereto agree as follows:

1.   Interpretation

The recitals set forth above are incorporated into and deemed a part of this Agreement.

Throughout this Agreement, words importing any gender include all genders.  The singular
form of any word used in this Agreement shall include the plural, and vice versa, unless the
context otherwise requires.  Words importing persons include natural persons, associations,
partnerships and corporations.

2.   Definitions



In this Agreement, including all schedules hereto:

a. "**Buyer**" means an arm's length, third party purchaser or prospective purchaser of the Dealership.

b. "**Dealership**" means the retail automotive dealership described in section 3 of this Agreement including any part thereof or interest therein.

c. "**Related Party**" refers to any and all parents, subsidiaries, affiliated, associated or related companies of a party hereto as well as that party's principals, directors, officers, shareholders, agents, trustees and business partners.

d. "**Sale**" means the sale of all or substantially all of the assets or outstanding shares or securities of the Dealership and includes the entering into of any agreement to exchange, the provision of an option to purchase the Dealership which is subsequently exercised, or any other form of agreement to purchase or transfer the shares or assets, or any combination thereof, of the Dealership.

e. "**Success Fees**" means the compensation due and payable to the Finder in accordance with the terms and conditions set out in section 6 of this Agreement.

f. "**Transaction Value**" means the net total dollar value of all consideration provided, or to be provided, to the Seller or to a Related Party of the Seller, directly or indirectly, on account of and pursuant to the terms of a Sale. The Transaction Value does not include the aggregate dollar value of the *bona fides* consideration attributed or allocated to new vehicle inventories.

3. Appointment Scope

The Seller hereby grants the Finder the **exclusive and irrevocable** authority to act as the Seller's agent for the period of 90 days commencing at 12;00 a.m.. on the

30th day of April, 2020,

and expiring at 11:59 p.m. on the 31st    day of July, 2020  (the "**Irrevocable Period**")

for the purpose of facilitating a Sale/Partnership of the Dealership known as :

Name of Retail Dealership:Porsche Fresno,Audi Fresno and BMW Fresno

Address:7171 N Palm Ave, Fresno, CA 93650, United States

Following the expiration of the Irrevocable Period, the Finder's exclusive authority to act as the Seller's agent for the purpose of facilitating a Sale shall continue indefinitely until such time that this Agreement is terminated by either party in accordance with section 8 herein.

Templeton Marsh Ltd. – Seller Agreement



4.  Finder Services

It is understood and agreed that throughout the term of this Agreement, the Finder is authorized to provide the Seller with any or all of the following services which the Finder may, at its sole discretion, deem necessary or prudent in order to facilitate a Sale (the "**Services**"):

a.  identify potential Buyers interested in purchasing the Dealership that meet the Seller's requirements for a Sale;

b.  access and review the Seller's financial and business records to assist in the valuation of the Dealership;

c.  assist and advise the Seller in negotiations with a Buyer regarding a Sale or potential Sale, subject, where applicable, to certain restrictions imposed on the Finder in the event of the Finder's multiple representation of the Buyer and Seller as further set out in section 9 of this Agreement;

d.  such other services which are mutually agreed upon by the Finder and Seller, including those set out at Schedule "A" to this Agreement, if any.

The Finder is not a licensed real estate or securities agent, broker or dealer and the Services shall not include those which only a licensed real estate or securities agent, broker or dealer can provide. By executing this Agreement, the Seller acknowledges that it understands and accepts this fact and that, at no time, has the Finder made any representation to the contrary or, if such representation has been made, that it was not relied upon by the Seller.

5.  Representations and Warranties

The Seller represents that:

a.  it has not appointed, engaged or otherwise retained any other agent or party with authority to act on the Seller's behalf for the purpose of facilitating a Sale;

b.  it has the exclusive authority to complete a Sale or has advised the Finder of all interests or encumbrances which might impact the Seller's ability to complete a Sale;

c.  it is not subject to or bound by the terms of any other representation agreement with any other agent or party for the purpose of facilitating or concluding a Sale; and

d.  it is not obligated to provide a success fee, commission, or other incentive or compensation to any other party upon the completion of a Sale.


The Seller warrants that it will:

a.  cooperate fully with the Finder with respect to the provision of the Services;

b.  with the following exception ( Harris, Kitihara, Monjazeb, Deboer "Lithia", and Gerstz ) the seller will not attempt to circumvent this Agreement, frustrate the Finder's efforts to provide the Services or in any way act so as to avoid paying the Finder the Success Fee which, in accordance with the terms of this Agreement, otherwise would have been due;

Templeton Marsh Ltd. – Seller Agreement



4

c.  during the term of this Agreement, not appoint, engage or otherwise retain any other agent or party with authority to act on the Seller's behalf for the purpose of facilitating a Sale;

d.  advise the Finder of all offers, enquiries, or expressions of interest with respect to a Sale or potential Sale that the Seller receives during the term of this Agreement; and

e.  advise the Finder of all offers for a Sale received by the Seller within twelve (12) months following termination of this Agreement from a Buyer or Related Party which was introduced to the Seller by the Finder during the term of this Agreement.

6.  Success Fee

The Seller agrees to pay the Finder the Success Fee on the following basis:

a.  upon closing of a Sale by the Seller or any Related Party, or any other party whatsoever, to a Buyer, or any other party whatsoever, during the term of this Agreement;

b.  upon closing of a Sale by the Seller or any Related Party, for which the Finder provided Services to the Seller during the term of this Agreement or for which the terms of the Sale were agreed upon between the Seller and Buyer during the term of this Agreement, but the Sale closes subsequent to termination of this Agreement;

c.  upon closing of a Sale by the Seller or any Related Party, or any other party whatsoever, to a Buyer, or any other party whatsoever, which takes place within twelve (12) months of termination of this Agreement where the Buyer or a Related Party was introduced to the Seller during the term of this Agreement;

d.  in the event that the original equipment manufacturer ("**OEM**") which provides motor vehicles to the Dealership exercises, pursuant to the provisions of any agreement between the Seller and the OEM, Exercises its right of first refusal to a Sale and which said right of first refusal was exercised as a result of an offer having been submitted to the Seller during the term of this Agreement, the Finder shall be entitled to a prorated percentage Success Fee not to exceed 50% due upon closing of the Sale to the OEM.

e.  in the event that the OEM elects not to exercise its aforementioned right of first refusal but fails or refuses to provide the required approval for a Sale proposed to the OEM during the term of this Agreement and, instead, presents the Seller with another Buyer prepared to complete a Sale for which the OEM will provide the required approval and the Seller or any Related Party does complete a Sale to the Buyer presented by the OEM, the Finder is entitled to the Success Fee at a prorated percentage not to exceed 50% upon closing of that Sale.

f.  in the event that the terms of any Sale or any collateral or ancillary agreement thereto affords the Buyer or any Related Party the option to purchase another retail automotive dealership owned by the Seller or a Related Party, and the Buyer or a Related Party subsequently exercises that option, the Finder is entitled to a mutually agreed Success Fee upon closing of the sale of that retail automotive dealership and/or partnership finding.

g.  in all cases, the Success Fee will be paid by the Seller or the Seller's lawyer from the proceeds of the Sale on the day of closing. addendum: if proceeds are non-cash i.e transferring of stock, shares, cash value goods, digital assets. gold or other agreed value



real property that must be then appraised, marketed,valued or liquidated, no reasonable delay in payment may be withheld.

    h.    Success fee due and payable to the Finder upon closing will be due and payable immediately.

    i.    the amount of the Success Fee shall be determined in accordance with the formula set out in Schedule "A" to this Agreement.

### 7.    Irrevocable Direction to Pay Success Fee

Where a Success Fee is owed to the Finder in accordance with the terms and conditions herein, the Seller irrevocably authorizes and directs its solicitor, or any other party controlling the receipt of the proceeds of the Sale, to direct and remit payment of the Success Fee, together with all applicable state taxes, to the Finder forthwith upon completion of the Sale.

### 8.  Termination

Following expiration of the Irrevocable Period, either party may terminate this Agreement by providing thirty (30) days' written notice to the other.

### 9.  Representation and Multiple Representation

The parties hereto acknowledge and agree that:

a. the Finder is not obligated to present the Seller with all offers to purchase the Dealership from all Buyers. The Finder retains the right and sole discretion to screen all Buyers and offers and to only present the Finder with those it deems to be appropriate and/or in the Seller's best interest.

b. throughout the term of this Agreement, the Finder may and most likely will enter into representation agreements on terms similar to this Agreement with other parties interested in selling retail automotive dealerships. The Seller expressly consents to the Finder entering into such agreements without any claim by the Seller of a conflict of interest.

c. the Finder may represent the interests of both the Buyer and Seller to a Sale. Where the Finder has also been engaged by the Buyer, the Finder shall, at the earliest practicable opportunity and, in any event before an offer for a Sale is presented, disclose to all parties the nature of the Finder's relationship with the others.

d. The Seller acknowledges and agrees that the Finder may also receive a finder's fee, reward and/or other incentive or compensation from the Buyer or any other party in association with the Sale and the Seller expressly consents to any such benefit being received and retained by the Finder in addition to the Success Fee as set out in section 6 herein.

e. the Finder will not disclose the terms of any offer to purchase the Dealership or a Sale to any party other than the Buyer and Seller unless expressly authorized and requested to do so by the Seller.



6

f.  when representing both the Buyer and Seller to a Sale, the Finder has a duty of full disclosure to both parties, including a duty to disclose all factual information regarding the Dealership which is pertinent to the Sale. The Finder may also disclose, at its discretion, market information about comparable retail automotive dealerships and information known to the Finder concerning potential uses for the property on which retail automotive dealerships are located to assist the Seller and prospective Buyer in coming to their own conclusions.

g.  notwithstanding the foregoing, the Finder shall not be obligated to disclose:

   i.  that the Seller may, or will accept less than any proposed price for a Sale, unless otherwise authorized and instructed to do so by the Seller;

   ii.  that the Buyer is prepared to, or would pay more than the offered price for a Sale, unless otherwise authorized and instructed to do so by the Buyer;

   iii.  the motivation of, or personal information regarding the Seller or Buyer, unless otherwise authorized and instructed by the party to which the information pertains to do so or unless failure to disclose the information would, in the Finder's opinion, constitute fraudulent, unlawful or unethical practice;

   iv.  the price the Buyer should offer for a Sale or the price the Seller should accept; or

   v.  to the Buyer, the terms of any other offer the Seller has or expects to receive.

h.  the Finder must be impartial when acting for the Seller and other parties which the Finder represents and equally protect the interest of all such parties.

10.  General Terms and Conditions:

   a.  This Agreement shall be binding upon the parties hereto and their respective successors, heirs, administrators and permitted assigns.

   b.  This Agreement may be modified only with written consent of both parties.

   c.  This Agreement constitutes and contains the entire agreement between the parties relating to the matters described herein and supersedes and cancels any and all previous agreements and understanding between all or any of the parties hereto.

   d.  If any provision herein is determined to be invalid, illegal or unenforceable by a court of competent jurisdiction, such provision shall be fully severable from the remaining provisions to this Agreement and such invalidity, illegality or unenforceability shall not affect the validity, legality or enforceability of any other provision herein.

   e.  The failure of either party to enforce the provisions of this Agreement or to require at any time performance by the other party of any of the provisions hereof shall in no way be construed as a waiver of such provisions or to affect either the validity of this Agreement or any part hereof, or the right of either party to enforce each and every provision in accordance with its terms. No waiver by either party hereto at any time of any breach by the other party hereto of, or compliance with, any condition or provision of this Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar conditions or provisions at that time or at any prior or subsequent time.



f.   Unless otherwise provided herein, all monetary amounts set forth in this Agreement are in American dollars.

g.   Fax, e-mail, portable document format or tagged image file copies have the same binding effect as originals.

h.   All written notices required or permitted to be provided to either party herein shall be delivered to the following addresses and deemed given upon actual receipt or the fifth (5) day after mailing, whichever is earlier, if delivered by post or upon the date of transmission if sent by electronic mail or facsimile:

If to the Finder:  Templeton Marsh Attn: Martiin Couture
                   123 Edgehill Court NW ,
                   Calgary  Alberta, T3A 2X3 Canada


If to the Seller:  CJ Wilson
                   7171 N Palm Ave,
                   Fresno, CA 93650, United States

i.   The provisions of this Agreement shall be governed by and interpreted in accordance with the laws of the State of California and each of the parties hereto hereby irrevocably attorns to the jurisdiction of the courts of California.

j.   The parties hereto acknowledge that they have had full and fair opportunity to seek and obtain independent legal advice prior to entering into this Agreement and they have obtained such independent legal advice or expressly waived their right thereto.

k.   The parties hereto execute this Agreement freely and voluntarily, without any duress, coercion or undue influence having been exerted upon them.

l.   This Agreement may be signed in counterparts.

**IN WITNESS WHEREOF** the parties hereto have executed this Agreement as of the date first written above.

_____
Witness

**TEMPLETON MARSH LTD.**

Per:   _____

Name:  Samir Akhavan

Title: Managing Partner

I   have   authority   to   bind   the corporation.


_____
Witness

**SELLER**

Per:   _____

Name:  CJ Wilson

Templeton Marsh Ltd. – Seller Agreement

8

Title:

I have authority to bind the corporation.

## Schedule "A"

1. **Additional Finder Services**: (if required)

    1.  Finding individual or corporation to enter in a partnership with CJ Wilson and his platform

2. **Calculation of Success Fee**

    The quantum of the Success Fee due and payable in accordance with the terms of this Agreement shall be:

    a.  5% of the total value of the following items (as set out in the final terms of the Sale)[1]:

        i.   goodwill;
        ii.  fixed assets, including all new incentives and generated in 2020, trade and factory receivables; ( forward short term receivables)
        iii. intangible assets;
        iv.  parts inventories;

    or,

    b.  in the event that the land and buildings in use for the Dealership are leased from the Seller or a Related Party as a condition of the Sale:

        i.   in the event that the Buyer is afforded an option or the right or requirement to purchase the land and buildings in use for the Dealership at the expiry of the first term of the lease, the Finder is to be paid 2% of the value of that transaction upon closing, whenever it may occur.

---

[1] New vehicle inventories ARE NOT included in the calculation of the Success Fee



Templeton Marsh Ltd. – Seller Agreement