# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUNDATION AUTO HOLDINGS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> WEBER MOTORS, FRESNO, INC., et al., <br><br> Defendants. | Case No. 1:21-cv-00970-NONE-EPG <br><br> FINDINGS AND RECOMMENDATION TO GRANT MOTION TO INTERVENE <br><br> (ECF No. 16) <br><br> OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Before the Court is Proposed Plaintiff-in-Intervention Templeton Marsh, Ltd.'s motion to intervene. (ECF No. 16). For the reasons described below, the undersigned recommends that the motion to intervene be granted.

**I.    BACKGROUND[1]**

Plaintiff Foundation Auto Holdings, LLC ("Plaintiff" or "Foundation") is a Delaware limited liability company with twenty-three stores in Canada and the United States and "provide[s] modern automotive solutions across North America." (ECF No. 1 at 2).[2] Defendant Weber Motors ("Weber") owns and operates a BMW dealership in Fresno, Defendant CJ's Road to Lemans Corp. ("Lemans") owns and operates an Audi dealership and Porsche dealership in Fresno. (Id.). Defendant Christopher John Wilson ("Wilson" and, together with Weber and Lemans, collectively the "Defendants") is the trustee of the trust that is the primary owner of Weber and Lemans. (Id. at 2–3). Proposed Plaintiff-in-Intervention Templeton Marsh, Ltd.

---

[1] The Court relies on the allegations in the Complaint (ECF No. 1) and Templeton Marsh's proposed Complaint in Intervention (ECF No. 16-1) for this background summary.
[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

("Templeton Marsh") "is a Canadian corporation which specializes in introducing prospective buyers and sellers for automotive dealership transactions." (ECF No. 16-1 at 3).

On April 30, 2020, Wilson, on behalf of Weber and Lemans, entered into a Representation Agreement with Templeton Marsh to assist in finding a partner to become the majority owner of the BMW, Audi, and Porsche dealerships owned by Weber and Lemans. (ECF No. 1 at 3; ECF No. 16-1 at 4). The Representation Agreement provides that Templeton Marsh is entitled to a Success Fee of either: (1) 5% of the total value of the goodwill, fixed asserts, intangible assets, and party inventories of the transaction completed between Defendants and any potential buyer; or (2) in the event the land and buildings in use for the auto dealerships are leased, 2% of the value of the transaction completed between Defendants and any potential buyer. (ECF No. 16-1 at 4–5).

With the assistance of Templeton Marsh, Foundation and Defendants negotiated the terms of a deal for Foundation to purchase a majority stake in the BMW, Audi, and Porsche dealerships. (ECF No. 1 at 3). On November 30, 2020, Foundation and Wilson, both individually and on behalf of Weber and Lemans, executed and entered into an Asset Purchase Agreement ("APA"). (Id. at 4).

By letter dated June 8, 2021, Foundation notified Defendants that it considered them in breach of the APA, noting the following failures to meet obligations under the agreement:

> a. Weber and Lemans' failure to disclose Wilson's pledge, in his capacity as trustee, of the Trust's equity ownership in Weber and Lemans to a creditor, in breach of applicable dealer sales and service agreements with the manufacturers;
>
> b. Wilson's failure to provide information with respect to his trust and his net worth as required by the manufacturers in connection with their approval of the subject transactions;
>
> c. Wilson's refusal to agree to the non-compete agreement and the employment agreement, as attached to the APA;
>
> d. Their failure to engage in any negotiations in good faith with respect to the form of amended and restated limited liability company agreements for each of the new entities, to be agreed to by the parties under Section 3.2(j) of the APA;
>
> e. Weber and Lemans' apparent lack of sufficient assets to pay all amounts owing to creditors outstanding as of the closing date for

    all obligations not assumed by Foundation, as suggested in statements made by Wilson and Mr. Borkum to Foundation; and

    f. Wilson and Lemans' failure to take all action reasonably requested by Foundation to carry out the transactions contemplated under the APA, including, without limitation, (i) failing to pay all current and delinquent contributions it or a member of Seller's controlled group are obligated to pay to the I.A.M. National Pension Fund, and (ii) failing to obtain an estimate of the withdrawal liability that it or a member of Seller's controlled group will be obligated to pay as a result of withdrawal from the I.A.M. National Pension Fund.

(ECF No. 1 at 11–12). On June 11, 2021, attorneys for Weber and Lemans served a letter on Foundation purporting to terminate the APA and declaring the agreement without force or effect. (Id. at 13).

  On June 18, 2021, Foundation commenced this action by filing a complaint for breach of contract. (ECF No. 1). On August 3, 2021, Defendants moved to dismiss the complaint for failure to state a claim for relief. (ECF No. 7). Defendants argue that the complete terms of the contract are missing from the complaint and that Plaintiff failed to allege sufficient facts regarding performance of its obligations under the contract. Defendants contend that due to Plaintiff's failure to fulfill its obligations prior to closing, any obligation to close expired through no fault of Defendants. (Id. at 2, 6). Plaintiff filed an opposition, and Defendants filed a reply. (ECF Nos. 11, 12).

  On September 15, 2021, Proposed Plaintiff-in-Intervention Templeton Marsh filed the instant motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, permissively under Rule 24(b)(1)(B). (ECF No. 16). To date, no opposition to the motion has been filed, and the time for doing so has passed.

**II. LEGAL STANDARD**

  Intervention as a matter of right is governed by Federal Rule of Civil Procedure 24(a), which provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R.

Civ. P. 24(a)(2). When analyzing a motion to intervene of right under Rule 24(a)(2), the Ninth Circuit applies the following four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

Cooper v. Newsom, 13 F.4th 857, 864 (9th Cir. 2021) (quoting Wilderness Soc'y v. U.S. Forest Serv., 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc)). "Each of these four requirements must be satisfied to support a right to intervene," Arakaki v. Cayetano, 324 F.3d 1078, 1083 (9th Cir. 2003), and "the party seeking to intervene bears the burden of showing those four elements are met," Prete v. Bradbury, 438 F.3d 949, 954 (9th Cir. 2006). "The four parts of the test 'often are very interrelated and the ultimate conclusion reached as to whether intervention is of right may reflect that relationship.'" Cooper, 13 F.4th at 865 (quoting Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1908 (3d ed. 2020 update)).

"In determining whether intervention is appropriate, we are 'guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention.'" Cooper, 13 F.4th at 865 (quoting United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004)). See Smith v. Los Angeles Unified Sch. Dist., 830 F.3d 843, 853 (9th Cir. 2016) (noting that the Ninth Circuit has "repeatedly instructed that 'the requirements for intervention are [to be] broadly interpreted in favor of intervention'" (quoting Alisal Water Corp., 370 F.3d at 919)). A liberal interpretation of the rule "serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues[.]" Forest Conservation Council v. U.S. Forest Serv., 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (citations omitted).

Rule 24 also allows for permissive intervention for anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "An applicant who seeks permissive intervention must prove that it meets three threshold

requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." Cooper, 13 F.4th at 868 (quoting Donnelly v. Glickman, 159 F.3d 405, 412 (9th Cir. 1998)). Even if the threshold requirements are satisfied, the district court has discretion to deny permissive intervention after "considering whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." Cooper, 13 F.4th at 868 (citing Donnelly, 159 F.3d at 412).

### III. DISCUSSION

#### A. Intervention as of Right

As noted above, "[e]ach of th[e] four requirements must be satisfied to support a right to intervene." Arakaki, 324 F.3d at 1083. "Failure to satisfy any one of the requirements is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied." Perry v. Proposition 8 Off. Proponents, 587 F.3d 947, 950 (9th Cir. 2009).

##### 1. Timeliness

The timeliness of a motion to intervene as of right is determined "by the totality of the circumstances facing prospective intervenors, with a focus on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." Smith, 830 F.3d at 854 (internal citation omitted). "Timeliness is a flexible concept; its determination is left to the district court's discretion." Alisal Water Corp., 370 F.3d at 921. The Court will consider each of these factors in turn.

Here, the motion to intervene was filed at an early stage of the proceedings. Although a motion to dismiss has been filed, the Court has not ruled on the motion. Further, no Rule 26(f) conference has occurred, no Rule 26 disclosures have been made, and no discovery has commenced. As the Court has not substantively engaged in the issues presented in this case, this factor weighs in favor of a finding of timeliness. See League of United Latin Am. Citizens v. Wilson (LULAC), 131 F.3d 1297, 1303 (9th Cir. 1997) ("We believe that the fact that the district court has substantively - and substantially - engaged the issues in this case weighs heavily against allowing intervention as of right under Rule 24(a)(2).").

"[P]rejudice to existing parties is 'the most important consideration in deciding whether a motion for intervention is untimely.'" Smith, 830 F.3d at 857 (quoting United States v. Oregon, 745 F.2d 550, 552 (9th Cir. 1984)). "[T]he only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more 'difficult[ ].'" Smith, 830 F.3d at 857 (second alteration in original) (quoting Oregon, 745 F.2d at 552–53). Templeton Marsh did not unduly delay filing its motion to intervene, and as the motion was filed at an early stage of the proceedings before the Court substantively engaged in the issues presented, it appears no party would be prejudiced. See Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 837 (9th Cir. 1996) (holding that motion to intervene was timely because it "does not appear to have prejudiced either party in the lawsuit, since the motion was filed before the district court had made any substantive rulings").

The complaint in this case was filed on June 18, 2021. Proposed Plaintiff-in-Intervention Templeton Marsh became aware of this suit on July 31, 2021. (ECF No. 16-3 at 5; ECF No. 16-10 at 2). Templeton Marsh immediately contacted counsel for Plaintiff and began meeting and conferring with all appearing parties. (ECF No. 16-3 at 6). The motion to intervene was filed on September 15, 2021, three months after the complaint was filed and one and a half months after Templeton Marsh became aware of this suit. Based on the record before this Court, it appears that Templeton Marsh acted promptly and there is no indication there was undue delay.

Based on the foregoing, in light of the totality of the circumstances, the undersigned finds that the motion to intervene is timely.

### 2. Significant Protectable Interest

"A would-be intervenor has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claim or claims at issue." Cooper, 13 F.4th at 865 (citing Alisal Water Corp., 370 F.3d at 919). "[A] non-speculative, economic interest may be sufficient to support a right of intervention." Alisal Water Corp., 370 F.3d at 919 (citing Arakaki, 324 F.3d at 1088). "To trigger a right to intervene, however, an economic

interest must be concrete and related to the underlying subject matter of the action." Alisal Water Corp., 370 F.3d at 919 (citations omitted).

Here, the Representation Agreement provides that Templeton Marsh be paid a Success Fee by Defendants pursuant to any transaction completed between Defendants and any potential buyer. Thus, Templeton Marsh has an economic interest in seeing that its Success Fee is paid from the closing funds of the dealership sale agreement that is governed by the APA, which is the underlying subject matter of this action. Accordingly, the undersigned finds that Templeton Marsh has a significant protectable interest to support intervention. See CRI, Inc. v. Watson, 608 F.2d 1137, 1140 n.2 (8th Cir. 1979) (finding that investment company that introduced shopping center owner to potential source of financing and was to receive a fee when agreement between the other two was closed had a sufficient interest in the suit brought by the potential financer against the owner to intervene as of right in the action).

### 3. Practical Impairment

"The question of whether protectable interests will be impaired by litigation 'must be put in practical terms rather than in legal terms.'" Akina v. Hawaii, 835 F.3d 1003, 1011–12 (9th Cir. 2016) (Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1908.2 (3d ed. 2007)). The Ninth Circuit has "follow[ed] the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee note to 1966 amendment).

Here, Templeton Marsh's Success Fee is contingent upon a *completed* transaction between Defendants and a buyer. Thus, determinations made in this action regarding whether the APA is a valid and enforceable contract and whether Plaintiff is entitled to specific performance of the APA will substantially affect whether Templeton Marsh receives its Success Fee pursuant to Representation Agreement. The factual and legal issues to be resolved in this action are likely to be relevant to the factual and legal issues underlying Templeton Marsh's dispute with Defendants regarding breach of contract and specific performance of the Representation

1  Agreement. Accordingly, the undersigned finds that the disposition of this action may as a
2  practical matter impair or impede Templeton Marsh's ability to protect its interest. See Watson,
3  608 F.2d at 1140 n.2 (finding that investment company that introduced shopping center owner to
4  potential source of financing and was to receive a fee when agreement between the other two
5  was closed "risked, as a practical matter, impairment of its ability to protect its interest by
6  disposition of the suit [brought by the potential financer against the owner] in its absence"
7  because "judgment in [owner]'s favor would clearly have been compelling precedent adverse to
8  its own cause of action").

### 4. Inadequate Representation

The Ninth Circuit considers the following three factors in determining the adequacy of representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

Arakaki, 324 F.3d at 1086 (citing California v. Tahoe Reg'l Planning Agency, 92 F.2d 775, 778 (9th Cir. 1986)). "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." Citizens for Balanced Use v. Montana Wilderness Ass'n, 647 F.3d 893, 898 (9th Cir. 2011) (quoting Arakaki, 324 F.3d at 1086).

"The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." Arakaki, 324 F.3d at 1086. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." Id. (citations omitted).

Both Plaintiff and Templeton Marsh's causes of action arise from the dealership sale between Foundation and Defendants, and Plaintiff and Templeton Marsh's rights to recovery

require the completion of the transactions contemplated under the APA. However, Foundation and Templeton Marsh do not have the same ultimate objective and their interests are not identical because Templeton Marsh's right to recovery is based on a separate Representation Agreement, which has not been presented to the Court by the existing parties. Accordingly, the undersigned finds that Templeton Marsh has met its minimal burden of demonstrating that representation of its interests may be inadequate.

5. Conclusion

As set forth above, Proposed Plaintiff-in-Intervention Templeton Marsh has satisfied the four requirements to support a right to intervene. The existing parties have not filed oppositions to intervention, and given the Ninth Circuit's repeated instruction that the requirements for intervention are to be broadly interpreted in favor of intervention, the undersigned recommends that the motion to intervene as of right under Rule 24(a)(2) be granted.

**B. Permissive Intervention**

Although the undersigned finds that Templeton Marsh may intervene as of right under Rule 24(a)(2), the Court will also address Templeton Marsh's alternative argument that it be permitted to intervene under Rule 24(b)(1)(B). The three threshold requirements for permissive intervention are: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." Freedom from Religion Found., Inc. v. Geithner, 644 F.3d 836, 843 (9th Cir. 2011) (quoting Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992)).

Here, there is an independent ground for jurisdiction because complete diversity of citizenship exists between the existing parties and Proposed Plaintiff-in-Intervention Templeton Marsh and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332; Geithner, 644 F.3d at 843 (noting the independent jurisdictional requirement stems "from our concern that intervention might be used to enlarge inappropriately the jurisdiction of the district courts" and that "manifests itself most concretely in diversity cases where proposed intervenors seek to use permissive intervention to gain a federal forum for state-law claims over which the district court would not, otherwise, have jurisdiction"). As discussed in section III(A)(1), *supra*, the motion to

intervene was timely. See LULAC, 131 F.3d at 1308 (stating that courts consider the same three factors when determining whether a motion to intervene is timely under Rule 24(a) and Rule 24(b)). Lastly, Templeton Marsh's claims against Defendants have common questions of fact with the main action, *i.e.*, the dealership sale between Foundation and Defendants pursuant to the APA.

The threshold requirements are satisfied, and as there is no indication that intervention will unduly delay this action or will unfairly prejudice the existing parties, the undersigned recommends that the alternative motion to intervene permissively under Rule 24(b)(1(B) be granted.

## IV. CONCLUSION

Accordingly, the undersigned HEREBY RECOMMENDS that Proposed Plaintiff-in-Intervention Templeton Marsh's motion to intervene (ECF No. 16) be GRANTED under Federal Rule of Civil Procedure 24(a)(2), or alternatively, under Rule 24(b)(1)(B).

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **FOURTEEN (14) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **FOURTEEN (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 7, 2021**         /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE