1
2
3
4
5
6
7

8                        **UNITED STATES DISTRICT COURT**

9                        **EASTERN DISTRICT OF CALIFORNIA**

10

11  FOUNDATION AUTO HOLDINGS, LLC, a )   Case No.: 1:21-cv-00970-JLT-EPG
    Delaware limited liability company,      )
12                                           )   ORDER GRANTING DEFENDANTS' MOTION
            Plaintiff,                       )   TO DISMISS
13                                           )
        v.                                   )   (Doc. 7)
14                                           )
    WEBER MOTORS, FRESNO, INC. d/b/a         )
15  BMW Fresno, a California corporation; CJ'S )
    ROAD TO LEMANS CORP. d/b/a Audi          )
16  Fresno and Porsche Fresno, a California   )
    corporation; and CHRISTOPHER JOHN        )
17  WILSON, an individual and resident of the )
    State of California,                     )
18                                           )
            Defendants.                      )
19  _____ )

20          Foundation Auto Holdings, LLC, alleges that Weber Motors, Fresno, Inc., CJ's Road to Lemans

21  Corp., and Christopher John Wilson breached their contract to sell three automotive dealerships to

22  Plaintiff. (Doc. 1.) Defendants seek dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal

23  Rules of Civil Procedure. (Doc. 7.) Plaintiff opposes dismissal, asserting it states a valid and plausible

24  claim on its face. (*See* Doc. 11 at 11.) The Court finds the matter suitable for decision without oral

25  argument, and no hearing date will be set pursuant to Local Rule 230(g) and General Order 618. For the

26  reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

27  ///

28  ///

## I.     Background and Allegations

Plaintiff alleges that Wilson, as trustee of the trust that primarily owns Weber and Lemans, engaged a brokerage and consulting firm, Templeton Marsh, "to assist in finding a partner to become the majority owner of the BMW dealership owned by Weber, and the Audi and Porsche dealerships owned by Lemans." (Doc. 1 at ¶¶ 8-9.) Plaintiff alleges that on or about May 6, 2020, Martin Couture, a Principal with Templeton Marsh, introduced Wilson to Plaintiff's President and CEO, Kevin Kutschinski, regarding the opportunity for Plaintiff to become the dealerships' majority owner. (*Id*. at ¶¶ 11-12.) Plaintiff asserts that on November 30, 2020, Plaintiff and Wilson, "both individually and on behalf of Weber and Lemans, executed and entered into" an Asset Purchase Agreement ("APA")[1] whereby Plaintiff was to purchase from Weber and Lemans "substantially all of the assets they used in connection with the subject BMW, Audi, and Porsche dealerships." (*Id*. at ¶¶ 16-17.)

Section 7.1(a) and (b) of the APA provides for the parties' right to terminate the APA prior to closing, upon appropriate notice to the other party, if any of the terminating party's conditions precedent have not been satisfied prior to the closing date or have become incapable of being satisfied by the closing date through no breach by the terminating party. (*See* Doc. 11-1 at 24.) Section 7.1(c) further provides that neither party is "entitled to terminate [the APA] pursuant to this Section 7.1 if such Party's willful breach of [the APA] or any Related Agreement or intentional misrepresentation under [the APA] or any Related Agreement has prevented the Closing from taking place before such date." (*Id*. at 25.)

Plaintiff alleges that following the execution of the APA, Wilson initially participated in Plaintiff's efforts to obtain necessary manufacturer approvals. (Doc. 1 at ¶¶ 28-29.) However, Plaintiff asserts that over time Wilson became "uncooperative and unresponsive" to Plaintiff's communications

---

[1] Generally, the Court is limited to the contents of the complaint in reviewing a motion to dismiss for failure to state a claim. *See United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) ("As a general rule, we may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.") (internal citation and quotation marks omitted). However, the incorporation-by-reference doctrine allows the Court to consider documents not attached to the complaint upon which the complaint "necessarily relies" if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id*. (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). Plaintiff's complaint consists of a single claim for breach of contract. (*See generally* Doc. 1.) The APA is both referred to throughout the complaint and is central to Plaintiff's claim. (*Id*.) Defendants appear to concede the authenticity of the document, as evidenced by Defendants' reliance upon several quoted provisions in their motion to dismiss. (*See* Doc. 7 at 12-14.) Thus, the APA is incorporated by reference and is appropriate for the Court's consideration.

1   and requests for information. (*Id.* at ¶ 29.) Specifically, Plaintiff alleges that "Wilson delayed, and in

2   certain respects, refused, to provide information necessary to complete the applications [Plaintiff]

3   needed for manufacturer approvals." (*Id.*) Plaintiff asserts that beginning in January 2021, Wilson

4   "began to express an unwillingness to move forward to close the transactions" and communicated to

5   Kutschinski "concern regarding his ability to close the deal" due to "existing loans and tax-related

6   issues." (*Id.* at ¶ 30.)

7          Plaintiff alleges that despite the continued efforts of Kutchinski, Wilson refused to provide

8   information necessary for manufacturer approval, leading to Plaintiff's written demand, under Section

9   5.23 of the APA, for Weber and Lemans to provide written assurances of their intent to honor the terms

10  of the APA. (Doc. 1 at ¶¶ 36-37.) Notwithstanding "some momentum" following the demand and

11  Plaintiff obtaining "at least" conditional manufacturer approvals, Plaintiff asserts that Wilson indicated

12  that he had "no intention of executing and delivering" certain documents required for closing. (*Id.* at ¶¶

13  39-42.) After receiving no response to another demand for assurances, Plaintiff alleges it provided

14  notice by letter, dated June 8, 2021, that it considered Defendants in breach of the APA and requested

15  an "acceptable response" by June 10, 2021. (*Id.* at ¶¶ 43-46.) Plaintiff asserts that on June 11, 2021,

16  attorneys for Weber and Lemans served a letter on Plaintiff, "purporting to terminate the APA[] and

17  declaring the agreement without force or effect." (*Id.* at ¶ 50.)

18         Plaintiff alleges Defendants engaged in "willful and intentional breaches of the APA, which,

19  taken together, to date have prevented the subject transactions from closing, and now make concluding

20  the subject transactions by the APA's outside closing date deadline of June 29, 2021 impossible." (Doc.

21  1 at ¶ 51; *see also id.* at ¶¶ 56, 57.) Plaintiff asserts that as a result, under Section 7.1(c) of the APA,

22  Defendants are not entitled to terminate the APA or any related agreement. (*Id.* at ¶ 51.)

23         Based on Plaintiff's allegations, it asserts a breach of contract claim against all Defendants,

24  seeking monetary relief and specific performance under the APA. (*See* Doc. 1 at ¶¶ 52-59.) Defendants

25  filed a motion to dismiss on August 3, 2021. (Doc. 7.) Specifically, Defendants assert Plaintiff's cause

26  of action "fails to state a claim for relief where the complete terms of the contract are entirely missing

27  from the Complaint and where Plaintiff failed to allege specific facts regarding performance of its

28  obligations under the contract." (*Id.* at 2.) Plaintiff filed its opposition on September 7, 2021 (Doc. 11),

1    to which Defendants filed a reply on September 14, 2021. (Doc. 12.)

2    **II.      Motion to Dismiss**

3         A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729,

4    732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks

5    a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

6    *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is

7    limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

8         "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

9    true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

10   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

11           A claim has facial plausibility when the plaintiff pleads factual content that allows the
             court to draw the reasonable inference that the defendant is liable for the misconduct
12           alleged. The plausibility standard is not akin to a "probability requirement," but it asks
             for more than a sheer possibility that a defendant has acted unlawfully. Where a
13           complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops
             short of the line between possibility and plausibility of 'entitlement to relief.'"
14

15   *Iqbal*, 556 U.S. at 678 (internal citations omitted).

16        "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled

17   to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a

18   recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236

19   (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to

20   plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

21   *Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be

22   cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss &*

23   *Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

24   **III.     Discussion and Analysis**

25        Defendants seek dismissal of Plaintiff's complaint in its entirety, asserting that Plaintiff's sole

26   cause of action for breach of contract fails as a matter of law because Plaintiff does not state the

27   material terms of the contract and fails to allege satisfaction of all conditions precedent prior to the

28

1   closing date.[2] (Doc. 7 at 10-14.) Plaintiff argues the complaint establishes a plausible claim on its face.

2   (Doc. 11 at 11-12.)

3        To state a claim for breach of contract under California law, a plaintiff must sufficiently allege

4   (1) the existence of a contract, (2) performance or excuse for nonperformance by the plaintiff, (3)

5   breach by the defendants, and (4) resulting damages to the plaintiff. *Alcalde v. NAC Real Est. Invs. &*

6   *Assignments, Inc.*, 316 F. App'x 661, 662 (9th Cir. 2009) (citing *First Com. Mortg. Co. v. Reece*, 89

7   Cal. App. 4th 731, 745 (2001)); *see also Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1082 (C.D.

8   Cal. 2017), *aff'd*, 747 F. App'x 643 (9th Cir. 2019) (same).

9        **A.   Existence of a contract, breach, and damages**

10       Initially, Defendants argue that Plaintiff fails to attach a copy of the APA to its complaint,

11   instead "cherry-pick[ing]" certain provisions and omitting material terms and conditions of the APA.

12   (Doc. 7 at 10.)[3] Without citing to authority, Defendants assert the complaint is "entirely insufficient to

13   state material facts to support a claim for breach of contract." (*Id.*) Plaintiff, on the other hand, contends

14   that "[f]ederal courts to examine this issue uniformly reject the contention that a claim for California's

15   breach of contract requires either attaching the contract or pleading all of its terms." (Doc. 11 at 11-12,

16   citing *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002 (C.D. Cal. 2011);

17   *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014); *Constr. Protective*

18   *Servs., Inc. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189, 198-99 (2002).)

19       In *WellPoint*, the defendants argued that the plaintiffs failed to identify the contracts at issue and

20   the provisions that were allegedly breached. 865 F. Supp. 2d at 1046. In denying the motion to dismiss,

21   the court explained that "[a] plaintiff who sues on a written contract is not required to attach a copy of

22   the contract to the complaint, but its existence and how it was breached must be identified." *Id.*; *see*

23   *also Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 908 (N.D. Cal. 2020) ("Identifying the specific

---

[2] The parties initially disagreed as to whether a 150-day extension applied to the original closing date of January 30, 2021. (*See generally* Docs. 1, 7, 11.) However, Defendants appear to concede in their reply that the extension applied. (*See* Doc. 12 at 5 (referring to January 30, 2021 as the "original" closing date and stating that "after January 30, 2021, Seller's conditions precedent to Closing still were not satisfied and became incapable of being satisfied by the extended Closing Date").) Thus, the Court finds no remaining dispute and declines to address prior arguments on this point.

[3] Specifically, Defendants assert Plaintiff entirely omitted the provisions of Section 3.1, twelve material terms of Section 3.2, at least five material conditions of Section 6.1, and the provisions of Section 6.2. (*See* Doc. 7 at 10-11.) Section 3.1 relates to the closing date, Section 3.2 relates to actions to be taken at closing, Section 6.1 sets forth conditions precedent to Plaintiff's obligations under the APA, and Section 6.2 provides conditions precedent to Weber and Lemans' obligations. (Doc. 11-1 at 5-7, 23-24.)

provision of the contract allegedly breached by the defendant does not require the plaintiff to attach the contract or recite the contract's terms verbatim. Rather, the plaintiff must identify with specificity the contractual obligations allegedly breached by the defendant.") (quotation marks omitted).

Although Plaintiff did not attach a copy of the APA to the complaint, it sufficiently alleges the APA's existence. (*See* Doc. 1 at ¶¶ 16-27.) Furthermore, it appears undisputed that Plaintiff entered into a written agreement with Defendants wherein Plaintiff was to purchase three automotive dealerships from Defendants Weber and Leman. (*See id.* at ¶¶ 16-17; Doc. 7 at 6-7.) Plaintiff also adequately pleads the specific contractual obligations that Defendants breached. (*See* Doc. 1 at ¶¶ 29-33, 36-38, 42, 45, 56-57.) Finally, Plaintiff sufficiently alleges that it suffered damages (*see id.* at ¶¶ 45, 58), which Defendants do not challenge. (*See generally* Docs. 7, 12.) Thus, Plaintiff's allegations are sufficient to satisfy three elements of a breach of contract claim. The only remaining dispute is whether Plaintiff sufficiently alleges its performance or excuse for nonperformance under the contract.

### B.    Performance or excuse

Defendants contend that Plaintiff failed to allege performance under the APA because it has not pleaded full compliance with various conditions precedent.[4] (*See* Doc. 7 at 6, 10-14; Doc. 12 at 3.) When a plaintiff asserts a claim for breach of contract, it has a "duty to plead its own performance or excuse for the failure to perform." *Merced Irr. Dist. v. Cnty. of Mariposa*, 941 F. Supp. 2d 1237 (E.D. Cal. 2013); *see also Urica, Inc. v. Medline Indus., Inc.*, 2011 WL 13128408, at *5 (C.D. Cal. Oct. 5, 2011) ("[A] plaintiff must sufficiently allege that it has performed its obligations under the contract or plead an excuse for its nonperformance."). This includes any conditions precedent. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1389 (1990) ("Where contractual liability depends upon the satisfaction or performance of one or more conditions precedent, the allegation of such satisfaction or performance is an essential part of the cause of action.") (cited with approval in

---

[4] When entering an agreement, parties may "agree that a right or duty is conditional upon the occurrence or nonoccurrence of an act or event." *Platt Pacific, Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993). A condition precedent is an act that "is to be performed before some right dependent thereon accrues, or some act depending thereon is performed." Cal. Civ. Code § 1436 (2022). Section 6.1 of the APA provides several conditions precedent to Plaintiff's obligations under the contract and Section 6.2 provides the conditions precedent to Defendants' obligations, which the Court finds unnecessary to recite in their entirety. (*See* Doc. 11-1 at 23-24.) Both parties characterize these sections as creating conditions precedent. (*See* Doc. 1 at ¶¶ 21-22; Doc. 7 at 12-13.) Thus, the Court accepts the parties' characterization that Section 6 of the APA creates conditions precedent to the parties' respective obligations.

*Coppola v. Smith*, 2018 WL 684801, at *3 (E.D. Cal. Feb. 2, 2018)); *see also Orlando v. Carolina Cas. Ins. Co.*, 2007 WL 781598, at *4 (E.D. Cal. Mar. 13, 2007) ("The failure to allege the satisfaction, waiver or excuse of a condition precedent amounts to a failure to state a claim for relief.") (collecting cases).

1.      Performance

Although a plaintiff must allege performance, general allegations are sufficient.[5] *Snyder v. Stanislaus Cnty.*, 2021 WL 2210729, at *5 (E.D. Cal. June 1, 2021); *see also Careau*, 222 Cal. App. 3d at 1389 ("It is sufficient for a plaintiff to simply allege that he has duly performed all the conditions on his part.") (internal quotation marks omitted). However, "a general allegation of due performance will not suffice if the plaintiff also sets forth what has actually occurred and such specific facts do not constitute due performance." *Careau*, 222 Cal. App. 3d at 1389-90; *see also* 4 Witkin, Cal. Proc. 6th Plead § 462 (2022) (explaining that if specific details or "explanatory averments" are added to general allegations, "and there is any inconsistency between them, the specific allegations control, and a complaint that might have been sufficient with the general allegations alone may be rendered defective if the specific averments negate an element of the cause of action.").

Plaintiff alleges only that it "proceeded in good faith with respect to its obligations under the APA and, further, timely performed its obligations under the APA." (Doc. 1 at ¶ 55.) This is insufficient to state a claim where conditions precedent exist. *See Careau*, 222 Cal. App. 3d at 1389; *Orlando*, 2007 WL 781598, at *4. Section 6.2 of the APA lists several conditions precedent to Defendants' obligations:

> **Condition to Seller's Obligations.** Seller's obligations under this Agreement are subject to the satisfaction, on or prior to the Closing Date, of the following conditions, which may be waived by Seller:
>
> (a) Buyer will have fully complied with and performed all its obligations under this Agreement, including, but not limited to, Section 3.2 and the Related Agreements.

---

[5] In addition to Defendants' erroneous contention that Plaintiff cannot state a claim because it failed to allege facts indicating performance of specific obligations under the APA, Defendants rely on inapplicable sections of the APA. For example, Defendants argue that Plaintiff "failed to allege any facts in the Complaint regarding its ability to secure financing to close the transaction by January 30, 2021." (Doc. 7 at 12.) In making this contention, Defendants cite to Section 6.1 of the APA. (*Id.*) However, Section 6.1 sets forth conditions precedent to *Plaintiff's* obligations, the satisfaction of which Plaintiff need not plead. (*See* Doc. 11-1 at 23-24.)

7

> (b) All representations of Buyer in this Agreement and the Related Agreements will be true and complete as of the date when given and on the Closing Date.
> (c) The New Buyer Entities shall issue the Membership Interests to the Seller Principal.
> (d) All of the Purchased Assets shall be transferred to Buyer, or a permitted Buyer assignee, simultaneously on the Closing Date.
> (e) All consents, approvals and waivers (including the approval by the Manufacturers) required to consummate the transactions contemplated by this Agreement and the Related Agreements will have been obtained in writing by Buyer and Seller, as applicable.

(Doc. 11-1 at 24 (emphasis in original).)

Plaintiff alleges that it timely performed all obligations and obtained "conditional"[6] manufacturer approvals. (Doc. 1 at ¶¶ 40, 41, 55.) However, Plaintiff fails to allege either: (1) that it generally satisfied all conditions precedent; or (2) that it satisfied the remaining conditions precedent beyond manufacturer approvals, pursuant to Section 6.2 of the APA. As an essential element to a breach of contract claim, this failure is fatal. Moreover, even if the Court found Plaintiff's general allegation that it performed its obligations to be sufficient with respect to conditions precedent, the specific factual allegations do not constitute due performance. Plaintiff alleges an extensive factual history of the events leading up to Defendants' breach (*see id.* at ¶¶ 9-51), including specific allegations that it made efforts to obtain, and eventually obtained, manufacturer approvals. (*Id.* at ¶¶ 28, 40, 41.) However, as presented, the facts do not indicate that the remaining conditions precedent were satisfied, which cannot constitute due performance. Therefore, notwithstanding Plaintiff's assertion that it performed its obligations, the factual allegations are not sufficient to support such a finding. Nonetheless, if performance was not yet due when the alleged breaches occurred, an excuse to nonperformance may be more applicable.

### 2. Excuse

Satisfaction of a condition precedent may be excused in certain circumstances. *Coppola*, 2018 WL 684801, at *5; *Orlando*, 2007 WL 781598, at *4 ("Performance of a condition precedent may be excused *inter alia* when the condition is waived, performance of the condition is unlawful or impossible, or the other party prevents or makes impossible the performance of the condition."); *Cnty.*

---

[6] Because Plaintiff does not allege performance of all remaining conditions precedent, the Court need not address whether a "conditional" manufacturer approval satisfies the requirement of Section 6.2(e) of the APA. (*See* Doc. 12 at 3, 6.)

1  *of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262, 1273 (1999) (finding plaintiff's

2  performance was excused by defendant's anticipatory breach) (cited with approval in *Comparetto v.*

3  *Allstate Ins. Co.*, 2014 WL 11514474, at *15 (C.D. Cal. July 24, 2014)). Notwithstanding, the failure

4  to sufficiently allege an excuse cannot save an otherwise meritorious claim. *See Orlando*, 2007 WL

5  781598, at *4. Moreover, an excuse for nonperformance of a condition precedent must be specifically

6  pleaded. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010); 4 Witkin, Cal. Proc. 6th

7  Plead § 540 (2022).

8      Plaintiff avers that Defendants' breaches rendered *consummation of the transaction*

9  "impossible" (*see* Doc. 1 at ¶ 51), and that Wilson "refused" to provide information necessary for

10 Plaintiff to meet its obligations. (*See id*. at ¶ 36.) Plaintiff fails to allege specifically that impossibility

11 is an excuse to its nonperformance of the conditions precedent. Similarly, Plaintiff alleges facts

12 suggesting that Defendants anticipatorily repudiated the APA but does not allege the elements of an

13 anticipatory breach of contract claim or that Defendants' repudiation excused its nonperformance. (*See*

14 *generally* Doc. 1.) Therefore, Plaintiff does not sufficiently allege performance or excuse for

15 nonperformance and the Court must conclude that Plaintiff fails to state a claim for breach of contract.

16 **IV.    Leave to Amend**

17     Plaintiff requests that if the motion to dismiss is granted, it be granted leave to amend. (Doc. 11

18 at 15.) Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely

19 given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

20 decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122,

21 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted). When dismissing a

22 complaint for failure to state a claim, "a district court should grant leave to amend even if no request to

23 amend the pleading was made, unless it determines that the pleading could not possibly be cured by

24 the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to

25 amend generally shall be denied only if allowing amendment would unduly prejudice the opposing

26 party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v.*

27 *BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

28

Because it is possible that the deficiencies identified herein may be cured by amending the complaint, it does not appear amendment would be futile. Specifically, amendment would allow Plaintiff to cure its deficiencies related to its performance or excuse for nonperformance. Furthermore, it does not appear amendment would cause undue delay at this juncture, and there is no evidence Plaintiff acted in bad faith. Thus, the request for leave to amend is granted.

**V.     Conclusion and Order**

For the reasons set forth above, the Court **ORDERS**:

1.      Defendants' motion to dismiss (Doc. 7) is **GRANTED**.

2.      The action is **DISMISSED** with leave to amend.

3.      Plaintiff **SHALL** file any First Amended Complaint within 45 days of the date of service of this order. <u>Failure to comply with this order will result in the dismissal of the action for failure to prosecute</u>.

IT IS SO ORDERED.

Dated:   **September 14, 2022**

UNITED STATES DISTRICT JUDGE