HOLLAND & KNIGHT LLP
David I. Holtzman (SBN 299287)
Daniel P. Kappes (SBN 303454)
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: 415-743-6900
Fax: 415-743-6910

Attorneys for Plaintiff
FOUNDATION AUTO HOLDINGS, LLC

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

| | |
|---|---|
| FOUNDATION AUTO HOLDINGS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WEBER MOTORS, FRESNO, INC. d/b/a BMW Fresno, a California corporation; CJ'S ROAD TO LEMANS CORP. d/b/a Audi Fresno and Porsche Fresno, a California corporation; and CHRISTOPHER JOHN WILSON, an individual and resident of the State of California,<br><br>Defendants. | Case No. 1:21-cv-00970-JLT-EPG<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(I) BREACH OF CONTRACT**<br><br>**(II) ANTICIPATORY BREACH OF CONTRACT**<br><br>JURY TRIAL DEMANDED |

Plaintiff, Foundation Auto Holdings, LLC ("Foundation" or "Plaintiff") for its First Amended Complaint against Defendants Weber Motors, Fresno, Inc. d/b/a BMW Fresno ("Weber"), CJ's Road to Lemans Corp. d/b/a Audi Fresno and Porsche Fresno ("Lemans"), and Christopher John Wilson ("Wilson" and, together with Weber and Lemans, the "Defendants"), alleges the following:

**JURISDICTION AND VENUE**

1.      This is an action for civil damages for breach of contract, arising out of a transaction to purchase certain BMW, Audi, and Porsche dealerships located in Fresno, California.

2.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship amongst the parties.

1

FIRST AMENDED COMPLAINT                                    CASE NO: 1:21-CV-00970-JLT-EPG

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA  94111
Tel: 415.743.6900; Fax: 415.743.6910

3.     This Court has personal jurisdiction over the Defendants because they are citizens of and do business within this State, have engaged in acts or omissions within this State causing injury, and have otherwise established contacts with this State making the exercise of personal jurisdiction proper.

4.     Venue is proper under 28 U.S.C. § 1391(b)(1) because each of Wilson, Weber, and Lemans reside in the State of California and one or more of them reside in this District.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claims herein occurred in this District.

## THE PARTIES

5.     Foundation Auto Holdings, LLC is a Delaware limited liability company.  The company's only member is Foundation Automotive U.S. Corp., a company formed under the laws of the State of Delaware and which maintains a principal place of business in Houston, Texas.  Foundation's mission is to provide modern automotive solutions across North America.  Today, Foundation has 23 stores across Canada and the United States, with plans to continue strategic growth across the continent.

6.     Defendant Weber Motors, Fresno, Inc. d/b/a BMW Fresno is a California corporation.  It owns and operates a BMW dealership located at 7171 N. Palm Ave., Fresno, California 93650.

7.     Defendants CJ's Road to Lemans Corp. d/b/a Audi Fresno and Porsche Fresno is a California corporation.  It owns and operates an Audi dealership and a Porsche dealership, each of which are located at 7121 N. Palm Ave., Fresno, California 93650.

8.     Defendant Christopher John Wilson is an individual and resident of the State of California.  Wilson is the trustee of the trust that is the primary owner of Defendants Weber and Lemans (herein, the "Trust").

## GENERAL ALLEGATIONS

**A.     Defendant Wilson seeks majority partner for his dealership businesses.**

9.     Upon information and belief, in early 2020, Wilson, on behalf of Weber and Lemans, engaged a firm named Templeton Marsh to assist in finding a partner to become the majority owner of the BMW dealership owned by Weber, and the Audi and Porsche dealerships owned by Lemans.

FIRST AMENDED COMPLAINT                                    CASE NO: 1:21-CV-00970-JLT-EPG

10.    Templeton Marsh is a Canadian business that operates within several areas of the automotive industry, including new dealership brokerage and related consulting services, as well as consulting services associated with new dealership mergers and acquisitions.

11.    On or about May 1, 2020, Martin Couture, a Principal with Templeton Marsh, contacted Foundation's President and CEO, Kevin Kutschinski, regarding the opportunity for Foundation to become the majority owner of the BMW, Audi, and Porsche dealerships that Weber and Lemans own in Fresno.

12.    On or about May 6, 2020, Mr. Couture introduced Wilson to Mr. Kutschinski and other representatives of Foundation.  The parties subsequently held an introductory call, on or about May 8, 2020, to discuss the potential deal.

13.    At the time Wilson and Foundation were introduced, Foundation was also pursuing a potentially lucrative deal regarding certain dealerships located in the State of Oregon. By way of communications with Mr. Couture, Wilson asked Foundation to prioritize the subject transactions over the Oregon transaction.  Based on this request, and in good faith, Foundation agreed, and in the process lost and/or forewent the Oregon opportunity.

14.    With the assistance of Mr. Couture, over the next several months Foundation and the Defendants negotiated the terms of a deal for Foundation to purchase a majority stake in the subject dealerships.

15.     On or about July 24, 2020, the parties executed a Letter of Intent with respect to the deal.

**B.    Defendants and Foundation enter into Asset Purchase Agreement.**

16.    With the Letter of Intent in place, the parties began negotiating an Asset Purchase Agreement (herein, the "APA"), whereby Foundation would purchase from Defendants Weber and Lemans substantially all of the assets they used in connection with the subject BMW, Audi, and Porsche dealerships.

17.    On November 30, 2020, Foundation and Wilson, both individually and on behalf of Weber and Lemans, executed and entered into the APA.  Specifically, the APA provided as follows:

> Subject to the terms and conditions of this Agreement, on the Closing Date (as defined in Section 3.1), [Weber and Lemans] will sell to [Foundation], and

3

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA  94111
Tel: 415.743.6900; Fax: 415.743.6910

[Foundation] will purchase from [Weber and Lemans], all of the assets listed on Schedule 1.1 in accordance with Schedule 1.1 (collectively, the "Purchased Assets"), free and clear of all security interests, liens, restrictions, claims, encumbrances or charges of any kind ("Encumbrances"). [Foundation] and [Weber and Lemans] acknowledge and agree that the Purchased Assets shall include all of the assets determined in accordance with Schedule 1.1. For the avoidance of doubt, Purchased Assets shall include all of the goodwill associated with, and the assets used in the operation of, all of the Dealerships.

(APA at p. 1, § 1.1.)  The APA defines "Dealerships" as those "certain assets used or useful in the operation of BMW, Audi, and Porsche motor vehicle sales and service businesses … located at: (i) 7171 North Palm Avenue, Fresno, California 93650 (the "BMW Site"); and (ii) 7121 North Palm Avenue, Fresno, California 93650 (the "Audi/Porsche Site")."  (*Id*. at p. 1, Recital A.)

18.    Under the APA's terms, closing for the subject transactions was to "occur no later than January 30, 2021" provided, however, that the deadline would "automatically be extended without further action by either party for up to an additional one hundred fifty (150) days as may be necessary in connection with Manufacturer and State of California regulatory approvals as required" thereunder (*i.e*. June 29, 2021).  (*Id*. at p. 4, § 3.1(a).)

19.    Section 3.1, in its entirety, states the Closing Date is:

(a) Subject to the terms and conditions of this Agreement, the closing of the transactions (the "Closing") contemplated by this Agreement and any other agreement or instrument executed by the Parties pursuant to this Agreement (collectively, the "Related Agreements") will occur on a mutually agreeable date, at a mutually agreeable location, at 10:00 a.m. local time no later than thirty (30) days after all necessary Manufacturer (as defined below) and governmental approvals are received for the transactions contemplated under this Agreement so long as all other conditions set forth in this Agreement are satisfied (the date on which such Closing occurs, the "Closing Date"). The Closing Date shall occur no later than January 30, 2021 (the "Closing Date Deadline"); provided, however, the Closing Date Deadline shall automatically be extended without further action by either party for up to an additional one hundred fifty (150) days as may be necessary in connection with Manufacturer and State of California regulatory approvals as required under Section 6.1(c) and Section 6.1(e) below.

(b) Buyer and Seller acknowledge and agree that all profits, or losses, relating to the Dealerships on the Closing Date shall be the property and responsibility of Buyer.

(c) The Closing shall be deemed to be completed as of 12:01 a.m. on the applicable Closing Date.

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA  94111
Tel: 415.743.6900; Fax: 415.743.6910

4

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

20.    Under the APA, "Manufacturer" refers to BMW of North America, LLC, with respect to Weber's BMW operations, and Audi of America, Inc. and Porsche Cars North America, Inc., with respect to Lemans' Audi and Porsche operations, respectively (*Id*. at p. 5, § 3.2(b).)

21.    Section 3.2 of the APA outlines several actions that the parties had to take, and documents the parties had to deliver, ***at the closing***.  These section 3.2 actions are incorporated in APA § 6.1(a), and a failure to perform any 3.2 closing actions, is a failure to meet a condition precedent outlined in APA § 6.1(a) to Buyer's obligations. These include, but are not limited to:

a.    Defendant Wilson executing and delivering a non-compete, non-solicitation and no-hire agreement in the form attached to the APA as Exhibit B (*id*., § 3.2(d));

b.    Defendant Wilson and Foundation executing and delivering an employment agreement with respect to Defendant Wilson in the form attached to the APA as Exhibit C (*id*., § 3.2(k)); and

c.    The parties taking such other actions, and executing and delivering such other instruments, documents and certificates, as required under the terms of the APA, or agreements related to the APA, or as may be reasonably requested by any party in connection with the consummation of the transactions contemplated under the APA (*id*. at p. 6, §3.2(o)).

22.    The Closing, as a result of Defendants' conduct, did not occur. Defendants' conduct included a failure to undertake diligent efforts to obtain necessary approvals, provide necessary notices, and provide paperwork required to complete the deal, which prevented the Closing actions in APA § 3.2(a)-(o) from occurring. Separately, Defendants' terminated the APA on June 11, 2021, ***prior*** to the Closing date of June 29, 2021, which also prevented ***any*** Closing actions from taking place.

23.    Defendants' actions also prevented conditions precedent from occurring, as described below.

24.    The APA § 6.1 outlines several conditions precedent to Foundation's obligations under the APA.  It states: "Buyer's obligations under this Agreement are subject to the satisfaction,

5

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA  94111
Tel: 415.743.6900; Fax: 415.743.6910

on or prior to the Closing Date, of *each* of the following conditions[.]" (emphasis added). These include:

    a.    Seller will have fully complied with and performed all its obligations under this Agreement, including, but not limited to, Section 3.2 and the Related Agreements. Seller will also have caused the Seller Principal to have fully complied with and performed all of his obligations under this Agreement, including, but not limited to, Section 3.2 and the Related Agreements. (*id*. at p. 22, § 6.1(a));

    b.    Seller will have paid any and all current and delinquent contributions it or a member of Seller's controlled group is obligated to pay to the I.A.M. National Pension Fund and any other union pension plan. (*id*. § 6.1(b));

    c.    Seller will have paid any and all withdrawal liability it or a member of Seller's controlled group is obligated to pay as a result of withdrawal from the I.A.M. National Pension Fund or another multi-employer union pension fund where the withdrawal arose out of or relates to this transaction. (*id*. § 6.1(c));

    d.    All representations of Seller in this Agreement and the Related Agreements will be true and complete as of the date when given and on the Closing Date. (*id*., § 6.1(d));

    e.    Buyer will have received all necessary approvals from the Manufacturers including, but not limited to, the appointment of Buyer's representative as the dealer principal, and the execution and delivery by Buyer and the applicable Manufacturer of the appropriate dealer agreements and related documentation; and Buyer shall be satisfied in its sole discretion with any facility or relocation demands or obligations that any Manufacturer conditions approval of Buyer upon. Notwithstanding the foregoing, if one or more of the Manufacturers exercises its right of first refusal or option to purchase the applicable Dealership and the associated Purchased Assets, then, either: (1) with the consent of both Buyer and Seller, Buyer will purchase the remaining Dealerships and Purchased Assets at

FIRST AMENDED COMPLAINT                CASE NO: 1:21-CV-00970-JLT-EPG

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

new negotiated purchase prices if mutually agreed to by Buyer and Seller; or (2) this Agreement will be terminated. (*id*., § 6.1(e));

f.   Buyer will have secured the necessary financing required to complete the transactions contemplated hereby and by the Related Agreements, with the terms and structure to be deemed acceptable by Buyer in its sole discretion (*id*., § 6.1(f));

g.   Buyer will have received all necessary approvals from the State of California and any regulatory body thereof to operate the Dealerships (*id*., § 6.1(g));

h.   Buyer will have completed its due diligence investigations of the Dealerships, the Property and the Purchased Assets as of the Closing Date in accordance with Section 5.1 above and the relevant provisions of the Related Agreements, and will be satisfied with such investigations in its sole discretion and shall not have terminated this Agreement due to such due diligence investigations (*id*., § 6.1(h));

i.   Buyer shall be satisfied in its sole discretion that the operation of the Business and the Property complies with all applicable laws, including, without limitation, municipal by-laws and zoning by-laws, and that the Buyer may continue to operate the Business in compliance with such laws post-Closing (*id*., § 6.1(i));

j.   Buyer and the Seller Principal shall have executed and delivered a Non-Compete Agreement for Seller Principal (*id*. at p. 23, § 6.1(j));

k.   Buyer and the applicable landlord(s) of the Property shall have executed and delivered the Lease Assignments (*id*., § 6.1(k));

l.   All of the Purchased Assets shall be transferred to Buyer, or a permitted Buyer assignee, simultaneously on the Closing Date (*id*., § 6.1(l));

m.   No material adverse change (as defined in Section 7.2 hereof) shall have occurred (*id*., § 6.1(m));

n.   All consents, approvals and waivers required to consummate the transactions contemplated by this Agreement and the Related Agreements and allow Buyer to operate the Business will have been obtained in writing by Buyer and Seller, as

7

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

applicable, including, without limitation, any workers' compensation legislation (*id.*, § 6.1(n)).

25.    Section 6.1 provides that Foundation's obligation to perform under the APA was contingent on Defendants' performance of each condition precedent listed under § 6.1. Any failure of Defendants' to perform *any* condition precedent thereunder excused all of Foundation's further performance.

26.    With respect to § 6.1(a), Defendants, as sellers, did not perform their obligations as required under section 3.2. For example, as required in section 3.2(c), Defendants did not provide evidence of a voluntary termination of their dealer agreements with the applicable manufacturers. Such failure to perform excused Foundation's performance.

27.    Moreover, Foundation's performance was further excused because it was not yet due. Foundation's performance was due on or before June 29, 2021, the date of Closing. Defendants terminated June 11, 2021, *prior* to the date of Closing, informing Foundation that "the APA is terminated and has no force or effect."

28.    Defendants' repudiation of the APA on June 11, 2021, excused any remaining performance due by Foundation under the APA, both generally and as to any conditions precedent. *Cnty. of Solano v. Vallejo Redevelopment Agency*, 75 Cal.App.4th 1262, 1276 (1999) ("Due to the Agency's anticipatory breach, Solano County was excused from fulfilling any conditions, whether precedent or concurrent, under the contract"). Thus, at the time of Defendants' breach and termination of the APA, none of Foundation's performance was due.

29.    Foundation's performance also was excused and not due because Defendants failed to perform their duties under the APA.

30.    With respect to sections § 6.1(b) and (c), Defendants, as sellers, on information and belief, did not pay and become current on all delinquent contributions and withdrawal liability owed to the I.A.M. National Pension Fund or other union pension fund.

31.    With respect to section § 6.1(d), given Defendants terminated prior to the closing date, Defendants never provided Foundation with true and complete representations on the closing date, excusing Foundation's performance under § 6.1(d).

8

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

32.    With respect to section § 6.1(e), Foundation obtained all necessary approvals from each Manufacturer. It obtained approval from Audi on May 3, 2021, BMW on April 23, 2021, and Porsche on May 20, 2021. Each approval was conditional on the consummation of the APA (which Defendants prevented).

a.    For example, BMW stated, in its approval "BMW [] is pleased to advise Foundation Auto Holdings, LLC [] that it has approved Foundation Auto Holdings' purchase of the BMW passenger car and BMW light truck [] assets of Weber Motors, Fresno, Inc. dba BMW Fresno ('Weber Motors')."

b.    Audi stated, "AoA has concluded a management review of the Proposed Transaction. In reliance upon the representations, disclosures, and commitments made by Seller, Buyer, Assignee and their respective representatives, AoA is informing you that the Proposed Transaction is conditionally approved. This approval is contingent on there being no changes to the terms, conditions, or documentation for the Proposed Transaction submitted to us for our review." (i.e., the APA terms being adhered to).

c.    Like the other manufacturers, Porsche also confirmed that it had agreed to approve the parties' transfer, so long as the parties complied with the terms of the APA.

33.    Foundation also obtained all necessary financing with BMO Harris Bank, under APA § 6.1(f), "in its sole discretion" as required by 6.1(f).

34.    Foundation was in the process of obtaining all necessary approvals from the State of California pursuant to APA § 6.1(g), at the time of Defendants' termination. On January 18, 2021, Foundation submitted to the California DMV a draft dealer application for soft approval. Remaining obligations thereunder did not become due given Defendants' termination of the APA.

35.    Pursuant to DMV guidance, formal DMV approval begins 5-10 days prior to closing, which here was to occur no later than June 29, 2021. *See* https://www.dmv.ca.gov/portal/vehicle-industry-services/occupational-licensing/occupational-licenses/vehicle-dealer-license/buy-sell-procedures-for-new-vehicle-dealers/. Thus, formal approval was to be sought by June 19, 2021.

9

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

Foundation could not seek formal approval, however, because Defendants repudiated the APA eight days prior to the date on which formal DMV approval could be sought.

36. Foundation completed its due diligence, and was satisfied with "such investigations in its sole discretion" under APA § 6.1(h).

37. Foundation was satisfied with the "the operation of the Business" and its compliance with applicable laws under APA § 6.1(i).

38. Defendants did not execute and deliver a non-compete agreement, as required by APA § 6.1(j). Defendants' failure to satisfy this condition precedent excused all of Foundation's performance under the APA.

39. Foundation's performance under APA § 6.1(k) had not come due, as it was due at Closing on June 29, 2021, and Defendants terminated on June 11, 2021. Nevertheless, at the time of termination, Foundation was in discussions with the relevant landlords to timely assign all relevant leases and, on information and belief, would have completed such negotiations in compliance with APA § 6.1(k) on or before the Closing date.

40. Foundation's performance under APA § 6.1(l) had not come due, as it was due at Closing on June 29, 2021, and Defendants terminated on June 11, 2021. Defendants did not transfer any Purchased Assets to Foundation at the time Defendants terminated, though Foundation stood ready and willing to receive such assets.

41. No material adverse change had occurred under APA § 6.1(m) affecting the ability of Foundation to operate the Dealership, at the time Defendants terminated the APA on June 11, 2021.

42. Foundation's performance under APA § 6.1(n) had not come due, as it was due at Closing on June 29, 2021, and Defendants terminated on June 11, 2021. Defendants did not transfer "all consents, approvals, and waivers required to consummate the transactions," instead Defendants repudiated the APA.

43. Likewise, the APA outlines conditions precedent to Defendants' obligations under the agreement. (*Id*., §§ 6.2(a)-(e).) It states, "Seller's obligations under this Agreement are subject to the satisfaction, on or prior to the Closing Date, of the following conditions, which may be waived by Seller:"

10

a.  Buyer will have fully complied with and performed all its obligations under this Agreement, including, but not limited to, Section 3.2 and the Related Agreements. (id. at p. 23, § 6.2(a));

b.  All representations of Buyer in this Agreement and the Related Agreements will be true and complete as of the date when given and on the Closing Date (*id*. § 6.2(b));

c.  The New Buyer Entities shall issue the Membership Interests to the Seller Principal (*id*. § 6.2(c));

d.  All of the Purchased Assets shall be transferred to Buyer, or a permitted Buyer assignee, simultaneously on the Closing Date (*id*., § 6.2(d));

e.  All consents, approvals and waivers (including the approval by the Manufacturers) required to consummate the transactions contemplated by this Agreement and the Related Agreements will have been obtained in writing by Buyer and Seller, as applicable (*id*., § 6.2(e)).

44.  Section 6.2 provides that Defendants' obligations to perform under the APA were contingent on Foundation's performance of each condition precedent listed under § 6.2.

45.  With respect to section § 6.2, Foundation performed its obligations or was excused as Defendants delayed, hindered, or obstructed Foundation's performance. Additionally, Foundation's performance was excused because it was not yet due.

46.  Foundation's performance under APA § 6.2(a) had not come due, as each requirement in APA § 3.2(a)-(o) was due at Closing on June 29, 2021, and Defendants terminated on June 11, 2021, which prevented Foundation's performance of section 3.2.

47.  For example, Foundation could not complete APA § 3.2(a), delivery of a Bill of sale or Assignment and Assumption Agreement because Defendants terminated the APA.

48.  Pursuant to APA § 6.2(b) all representations made by Foundation were true and complete when given.

49.  Foundation's performance under APA § 6.2(c), was excused and had not come due, because its performance was due at Closing on June 29, 2021, and Defendants terminated on June

11

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA  94111
Tel: 415.743.6900; Fax: 415.743.6910

11, 2021, which prevented Foundation's performance of section 6.2(c). Moreover, Foundation stood ready and able to issue membership interests at the time of closing.

50.    Foundation had no obligations to perform under APA § 6.2(d), which imposed an obligation on Defendants to transfer assets. Defendants did not perform, however, as Defendants terminated the APA on June 11, 2021, despite Foundation standing ready to receive assets.

51.    Foundation's performance under APA § 6.2(e), was excused and had not come due, because its performance was due at Closing on June 29, 2021, and Defendants terminated on June 11, 2021, which prevented Foundation's performance of section 6.2(e). Moreover, Foundation had obtained all approvals from manufactuters, was diligently pursuing approvals from the State of California in accordance with DMV process, and was in negotiations with the relevant landord to secure leases. On information and belief, negotiations with the landord would have successfully concluded by the closing date.

52.    Foundation had performed all required obligations or was pursuing such obligations by the closing date to abide by APA § 6.2(e).

53.    Under the terms of the APA, Foundation, Weber, and Lemans all agreed to "execute and deliver any further instruments or documents, and take all further action, reasonably requested by the other Party to carry out the transactions contemplated by" the APA and the related agreements. (*Id*. at p. 21, § 5.23.)

54.    Further, in executing the APA, Weber and Lemans provided several representations and warranties to Foundation.  These include, but are not limited to:

      a.    That they would "have sufficient assets to pay," and, in fact, would "pay, all amounts owing" to their creditors as of the closing date, as to all obligations not assumed by Foundation (*id*. at p. 9, § 4.1(k)); and

      b.    That neither the APA, nor any other related agreement, schedule or other document, certificate or item that they delivered under the APA, or any other related agreement, contained any untrue statement of a material fact, or omitted a material fact necessary to make each statement contained in the APA, or any other related agreement, not misleading (*id*. at p. 11, § 4.1(r)).

12

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA  94111
Tel: 415.743.6900; Fax: 415.743.6910

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

55. Finally, the APA contains provisions governing its termination. Specifically, Foundation has the right to terminate prior to closing, upon appropriate notice to Weber and Lemans, if any of its conditions precedent have not been satisfied prior to the closing date or have become incapable of being satisfied by the closing date through no breach of Foundation. (*Id*. at p. 23, § 7.1(a).)

56. Weber and Lemans have similar rights to terminate under the APA. (*Id*., § 7.1(b).) Specifically, they each may terminate the APA, upon proper notice to Foundation, if any of their conditions precedent have not been satisfied prior to the closing date or have become incapable of being satisfied by the closing date through no breach of Weber or Lemans. (*Id*.)

57. With that said, none of the parties to the APA are "entitled to terminate" if the party's "willful breach" of the APA or any related agreement, or "intentional misrepresentation" under the APA or any related agreement "prevented the [c]losing from taking place before" the closing date deadline. (*Id*. at p. 24, § 7.1(c).)

**C.     Defendants express an unwillingness to comply with the APA.**

58. In December of 2020, following execution of the APA, Foundation began efforts to communicate with the associated manufacturers regarding the deal, and to introduce the manufacturers to the Foundation team, all toward obtaining the necessary manufacturer approvals contemplated under the APA.

59. Initially, Wilson participated in the process. Over time, however, Wilson became uncooperative and unresponsive to Foundation's communications and requests for information. Specifically, Wilson delayed, and in certain respects refused, to provide information necessary to complete the applications Foundation needed for manufacturer approvals.

60. During the month of January, 2021, Wilson began to express an unwillingness to move forward to close the transactions contemplated under the APA. Through text messages with Mr. Kutschinski, Wilson communicated concern regarding his ability to close the deal, and specifically his fear of being in a "cashless situation after closing" because of existing loans and tax related issues.

61. During the text exchange, Wilson for the first time communicated allegedly dire financial circumstances. Wilson suggested by text that he owed nearly $5,200,000.00 regarding a

13

FIRST AMENDED COMPLAINT                                          CASE NO: 1:21-CV-00970-JLT-EPG

private loan, owed BMW nearly $4,000,000.00, owed his landlord nearly $3,000,000.00, and, further, anticipated a tax liability with respect to the sale of the BMW dealership somewhere between $4,000,000.00 and $5,000,000.00. Wilson mused to Mr. Kutschinski that instead of closing the deal, he might try to "piece together some personal loans" or "[w]ork it out with some friends or something" to continue operating the business himself.

62. Mr. Kutschinski reiterated Foundation's desire to bring the deal to a close, and indicated his and Foundation's commitment to work with Wilson, Weber, and Lemans to do what is necessary to bring the deal to close. That being said, Mr. Kutschinski also noted that under the existing circumstances in January of 2021 there was "not a chance" that Wilson would be able to "secure capital and get approval from the [manufacturers] before the end of the month" to bring the deal to a close by the original January 30 closing date deadline.

63. Wilson responded to Mr. Kutschinski by suggesting that, rather than closing the deal, he should "just put [his] head down and operate the" subject dealerships, and "kick the can down the road" and "re-evaluate in 6+ months."

64. In the end, Mr. Kutschinski informed Wilson that Foundation intended to honor the APA as executed, and if Wilson was indeed intent on choosing a path other than bringing the deal to a close, he asked that his attorney contact Foundation's counsel because the company would view such a change as a breach of contract. Wilson, unfortunately, did not provide a meaningful response.

65. As the parties approached the original closing date of January 30, 2021, manufacturer and regulatory approval remained the primary hurdle to clear for closing. Accordingly, the automatic extension of up to an additional one hundred fifty (150) days applied to accommodate the circumstances and the need for approval, and set the outside closing date deadline for the subject transactions at June 29, 2021.

66. Despite Wilson's previous indications, in late January and early February of 2021, Mr. Kutschinski continued his attempts to communicate with Wilson in an effort to obtain the information necessary to obtain both manufacturer and regulatory approval. Wilson responded by reiterating his concerns about closing, primarily due to his alleged economic circumstances. Moreover, Wilson, in his capacity as a projected partner with Foundation in the proposed post-closing operating entities,

14

FIRST AMENDED COMPLAINT                                    CASE NO: 1:21-CV-00970-JLT-EPG

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

refused to provide information necessary for Foundation to complete and submit the respective manufacturer applications for approval, again, pointing to his alleged economic troubles.

67. As a result of Wilson's conduct, the tenor and substance of his communications, and his increasing propensity to not respond to Foundation's communications, by letter dated February 15, 2021, Foundation made a demand under Section 5.23 of the APA for Weber and Lemans to provide written assurances of their intent to honor the terms of the APA.

68. Specifically, Foundation demanded assurances from Weber and Lemans regarding their compliance with their obligations to (a) timely respond to all information requests; (b) submit timely and complete applications for all necessary manufacturer and State of California regulatory approval; and (c) proceed in good faith toward closing.

69. Although Weber, Lemans, and Wilson did not respond in writing, Wilson's attorney subsequently initiated communications with Foundation.

70. Following those communications, the parties appeared to create some momentum to move the deal along, including the required manufacturer approvals. On April 23, 2021, BMW of North America, LLC provided its approval for Foundation's purchase of Weber's BMW assets. On May 3, 2021, Audi of America, Inc. provided its conditional approval for the proposed Audi transaction with Lemans. Finally, on May 20, 2021, Porsche Cars North America, Inc. provided its conditional approval as to the associated transaction with Lemans. Unfortunately, the positive momentum did not last for long.

71. On May 24, 2021, Chris Beaton, Foundation's Vice President of Mergers and Acquisitions, contacted Wilson's attorney, Reggie Borkum, to inform him that Foundation had received the conditional approval letter from Porsche, that Foundation had at least conditional manufacturer approval on all three of the contemplated transactions, and that Foundation was moving to close.

72. Mr. Beaton and Mr. Borkum had a follow up call approximately one week later, on June 1, 2021, regarding the push to close the deal. At that time Mr. Borkum indicated that Wilson had concerns regarding the level of trust between the parties, and, as a result, he had no intention of executing and delivering certain documents required for closing under the APA, including his

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

15

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

employment agreement and the operating agreements for the post-closing operating entities.

73.    Mr. Beaton addressed Wilson's concerns by reiterating to Mr. Borkum Foundation's intent to close the transactions contemplated under the APA and, further, to fulfil its obligations of having Wilson as an operating partner in the subsequent business.  Nevertheless, Mr. Beaton once again made clear that Foundation needed immediate assurances from Wilson that he, Weber, and Lemans intended to move forward and close the deal.  Mr. Borkum indicated that Wilson was "busy" attending to multiple other civil lawsuits, but that he would relay the information.

74.    Regrettably, Wilson made no attempt to respond to Foundation's request for assurances of compliance.

75.    By letter dated June 8, 2021, Foundation provided notice to Wilson, Weber, and Lemans that it considered them in breach of the APA.  Specifically, Foundation noted the following failures of Wilson, Weber, and Lemans to meet their various obligations under the agreement:

a.    Weber and Lemans' failure to disclose Wilson's pledge, in his capacity as trustee, of the Trust's equity ownership in Weber and Lemans to a creditor, in breach of applicable dealer sales and service agreements with the manufacturers;

b.    Wilson's failure to provide information with respect to his trust and his net worth as required by the manufacturers in connection with their approval of the subject transactions;

c.    Wilson's refusal to agree to the non-compete agreement and the employment agreement, as attached to the APA;

d.    Their failure to engage in any negotiations in good faith with respect to the form of amended and restated limited liability company agreements for each of the new entities, to be agreed to by the parties under Section 3.2(j) of the APA;

e.    Weber and Lemans' apparent lack of sufficient assets to pay all amounts owing to creditors outstanding as of the closing date for all obligations not assumed by Foundation, as suggested in statements made by Wilson and Mr. Borkum to Foundation; and

f.    Wilson and Lemans' failure to take all action reasonably requested by Foundation to

16

FIRST AMENDED COMPLAINT                    CASE NO: 1:21-CV-00970-JLT-EPG

carry out the transactions contemplated under the APA, including, without limitation, (i) failing to pay all current and delinquent contributions it or a member of Seller's controlled group are obligated to pay to the I.A.M. National Pension Fund, and (ii) failing to obtain an estimate of the withdrawal liability that it or a member of Seller's controlled group will be obligated to pay as a result of withdrawal from the I.A.M. National Pension Fund.

76.    Foundation requested that Wilson, Weber, and Lemans provide an acceptable response to their June 8, 2021 letter by Thursday, June 10, 2021.

**D.    Defendants purport to terminate the APA.**

77.    Unfortunately, the Defendants chose not to communicate directly with Foundation regarding the issues raised in the June 8, 2021 letter.  Rather, on June 10, 2021, Wilson exchanged several communications with Martin Couture, the broker that he engaged and that introduced Wilson to Foundation.

78.    Specifically, Wilson accused Mr. Couture of "bringing these foxes"--*i.e.*, Foundation--"into [his] henhouse."  Wilson stated that threats would not work on him, and, rather, he would be "serving" Mr. Couture's firm "as a result of [F]oundation attempting to extort" him.

79.    Wilson went on to indicate that he was "firing" Mr. Couture, claiming that it was clear that "the client" Templeton Marsh produced had sent him "outright threats, and now has filed a formal breach action against me."  Wilson then indicated to Mr. Couture that he would "not be selling the dealership to Kevin [Kutschinski] and his team" as a result of certain unidentified "dishonest actions" on their part.

80.    On June 11, 2021, attorneys for Weber and Lemans served a letter on Foundation purporting to terminate the APA, and declaring the agreement without force or effect.

81.    As the circumstances show, however, Wilson, Weber, and Lemans' have engaged in willful and intentional breaches of the APA, which, taken together, to date have prevented the subject transactions from closing, and now make concluding the subject transactions by the APA's outside closing date deadline of June 29, 2021 impossible.  As a result, under Section 7.1(c) of the APA neither Wilson, Weber, nor Lemans are entitled to terminate the APA or any related agreement.

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA  94111
Tel: 415.743.6900; Fax: 415.743.6910

17

Accordingly, Foundation now seeks to enforce the terms of the APA, and obtain relief regarding the Defendants' breaches of its terms.

82. Defendants' express repudiation on June 11, 2021, evidenced a clear and unequivocal refusal to perform. An express repudiation "is a clear, positive, unequivocal refusal to perform." *Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal.App.5th 506, 550 (2021). Defendants issued a clear and express repudiation through their June 11, 2021, letter to Foundation in which Defendants stated that the APA was terminated. "[I]f a party to a contract expressly or by implication repudiates the contract before the time for his or her performance has arrived, an anticipatory breach is said to have occurred. *Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal.App.5th 506, 550 (2021).

83. Final performance of Defendants was due June 29, 2021, at the Closing Date. Here, Defendants repudiated performance on June 11, 2021, prior to the time for final performance.

### FIRST CAUSE OF ACTION

### (BREACH OF CONTRACT AS TO EACH DEFENDANT)

84. Plaintiff hereby incorporates by this reference paragraphs 1-83 as though set forth in this First Cause of Action.

85. Foundation, Wilson, Weber, and Lemans entered into the APA on November 30, 2020.

86. The APA is a valid and enforceable contract as a matter of California law.

87. At all relevant times herein, Foundation proceeded in good faith with respect to its obligations under the APA and, further, timely performed its obligations under the APA.

88. Weber and Lemans, however failed to perform their obligations under the APA. These breaches include, but are not necessarily limited to:

    a. Failure to provide written assurances of their intent to proceed to closing in good faith, and to comply with their obligations under the APA, in violation of Section 5.23 of the APA;

    b. Weber and Lemans' failure to disclose Wilson's pledge, in his capacity as trustee, of the Trust's equity ownership in Weber and Lemans to a creditor, in breach of

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

18

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA  94111
Tel: 415.743.6900; Fax: 415.743.6910

applicable dealer sales and service agreements with the manufacturers;

c.    Failure to cause Wilson to agree to the non-compete agreement and the employment agreement, as attached to the APA;

d.    Failure to engage in any negotiations in good faith with respect to the form of amended and restated limited liability company agreements for each of the new entities, to be agreed to by the parties under Section 3.2(j) of the APA;

e.    The apparent lack of sufficient assets necessary to pay all amounts owing to creditors outstanding as of the closing date for all obligations not assumed by Foundation; and

f.    Wilson's failure to provide information with respect to his trust and his net worth as required by the manufacturers in connection with their approval of the subject transactions.

g.    Likewise, Wilson failed to perform certain obligations he individually had under the APA.  These breaches include, but are not necessarily limited to:

a.    His refusal to agree to the non-compete agreement and the employment agreement, as attached to the APA;

b.    His failure to engage in any negotiations in good faith with respect to the form of amended and restated limited liability company agreements for each of the new entities, to be agreed to by the parties under Section 3.2(j) of the APA; and

c.    His discussions with other individuals regarding a potential deal for the BMW dealership, in violation of Section 5.13 of the APA.

89.    Defendants' breaches of their obligations under the APA have caused Foundation to suffer significant monetary damages in an amount that Foundation will prove at trial, but that Foundation believes likely exceeds $30,000,000.00.

90.    Foundation will also seek specific performance of the APA, as allowed for under California law, and as authorized under Section 7.2 of the agreement.

19

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

## SECOND CAUSE OF ACTION

### (ANTICIPATORY BREACH AS TO EACH DEFENDANT)

91.    Plaintiff hereby incorporates by this reference paragraphs 1-90 as though set forth in this Second Cause of Action.

92.    Foundation, Wilson, Weber, and Lemans entered into the APA on November 30, 2020.

93.    The APA is a valid and enforceable contract as a matter of California law.

94.    At all relevant times herein, Foundation proceeded in good faith with respect to its obligations under the APA and, further, timely performed its obligations under the APA.

95.    Final performance of Defendants and Foundation was due June 29, 2021, at the Closing Date.

96.    Defendants repudiated performance and terminated the APA on June 11, 2021, prior to the Closing Date.

97.    Defendants' repudiation frustrated Foundation's performance. Defendants' anticipatory breach of the APA caused Foundation to suffer significant monetary damages in an amount that Foundation will prove at trial, but that Foundation believes likely exceeds $30,000,000.00.

## CONCLUSION

WHEREFORE Plaintiff Foundation Auto Holdings, LLC prays for relief from the Court as follows:

A.    For expectation and reliance damages to be proved at trial;

B.    For special damages in an amount to be proved at trial;

C.    For the attorney fees and costs incurred in pursuing this action, and seeking Defendants' compliance with the APA, as authorized under Section 7.2 of the APA;

D.    Specific performance of the APA as allowed under California law, and as authorized under Section 7.2 of the APA; and

E.    For such other relief as the court may deem just and proper.

20

FIRST AMENDED COMPLAINT                                CASE NO: 1:21-CV-00970-JLT-EPG

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: 415.743.6900; Fax: 415.743.6910

## JURY DEMAND

Foundation hereby demands a jury trial under Fed. R. Civ. P. 38(b) on all claims, issues, or defenses triable by right.


Dated: November 1, 2022.              HOLLAND & KNIGHT LLP


                                      /s/ Daniel Kappes
                                      Daniel P. Kappes

                                      Attorneys for Plaintiff
                                      FOUNDATION AUTO HOLDINGS, LLC

21

FIRST AMENDED COMPLAINT                              CASE NO: 1:21-CV-00970-JLT-EPG