**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FOUNDATION AUTO HOLDINGS, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> WEBER MOTORS, FRESNO, INC. d/b/a BMW Fresno, a California corporation; CJ'S ROAD TO LEMANS CORP. d/b/a Audi Fresno and Porsche Fresno, a California corporation; and CHRISTOPHER JOHN WILSON, an individual and resident of the State of California, <br><br> Defendants. | Case No.: 1:21-cv-00970 JLT EPG <br><br> ORDER DENYING DEFENDANTS' MOTION TO DISMISS <br><br> (Doc. 43) |

Foundation Auto Holdings, LLC alleges that Weber Motors, Fresno, Inc., CJ's Road to Lemans Corp., and Christopher John Wilson breached their contract to sell their automotive dealerships to Plaintiff. (*See generally* Doc. 42.) Defendants seek dismissal of Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting Plaintiff fails to allege sufficient facts regarding performance of its obligations. (Doc. 43.) Specifically, Defendants contend Plaintiff was incapable of obtaining necessary approvals required to close the transactions. (*See id*.) Plaintiff opposes dismissal, asserting the allegations are sufficient to state a claim. (*See* Doc. 48.) The Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and

1

General Order 618. For the reasons set forth below, Defendants' motion to dismiss in **DENIED**.

## I. Background

### A. Factual Allegations

This action arises from the proposed sale of three automotive dealerships in Fresno, California: a BMW dealership owned and operated by Defendant Weber, and Audi and Porsche dealerships owned and operated by Defendant Lemans. (*See* Doc. 42 at ¶¶ 6-7.) In early 2020, as trustee of the trust that primarily owns Weber and Lemans, Defendant Wilson began seeking a partner to become the majority owner of the dealerships. (*Id*. at ¶¶ 8-9.) On November 30, 2020, Wilson, "both individually and on behalf of Weber and Lemans," entered into an Asset Purchase Agreement ("APA") with Plaintiff, whereby Plaintiff would purchase from Weber and Lemans "substantially all of the assets they used in connection with the subject BMW, Audi, and Porsche dealerships." (*Id*. at ¶¶ 16-17.)

Plaintiff alleges that following the execution of the APA, Wilson initially participated in Plaintiff's efforts to obtain manufacturer approvals necessary to close the transactions. (Doc. 42 at ¶¶ 58-59.) However, over time, Wilson became "uncooperative and unresponsive" to Plaintiff's communications and requests for information, "delay[ing], and in certain respects, refus[ing], to provide information necessary to complete the applications [Plaintiff] needed for manufacturer approvals." (*Id*. at ¶ 59.) In January 2021, Wilson "began to express an unwillingness to move forward to close the transactions" and communicated to Plaintiff's President and CEO, Kevin Kutschinski, "concern regarding his ability to close the deal" due to existing loans and tax-related issues. (*Id*. at ¶¶ 11, 60.)

Because manufacturer and regulatory approvals "remained the primary hurdle to clear" as the parties approached the original closing date of January 30, 2021, Plaintiff asserts an automatic extension of up to 150 days applied "to accommodate the circumstances and need for approval," adjusting the outside closing date deadline to June 29, 2021, as provided under Section 3.1 of the APA. (*See infra* Part I.B.2; Doc. 42 at ¶ 65.) Kutschinski continued his efforts to obtain information from Wilson, but he "responded by reiterating his concerns about closing, primarily due to his alleged economic circumstances" and refused to provide information necessary for manufacturer approval. (Doc. 42 at ¶ 66.) As a result of Wilson's "conduct, the tenor and substance of his communications, and

his increasing propensity to not respond to [Plaintiff's] communications," Plaintiff made a demand, in writing, for Weber and Lemans to provide written assurances of their intent to honor the terms of the APA. (*Id*. at ¶ 67.) Plaintiff alleges that Wilson's attorney, Reggie Borkum, subsequently initiated communications with Plaintiff, which "appeared to create some momentum to move the deal along," and led to Plaintiff obtaining BMW's approval on April 23, 2021, Audi's conditional approval on May 3, 2021, and Porsche's conditional approval on May 20, 2021. (*Id*. at ¶¶ 69-70.)

Plaintiff asserts that on May 24, 2021, its Vice President of Mergers and Acquisitions, Chris Beaton, informed Borkum that Plaintiff had received at least conditional manufacturer approval for all three transactions and that it was "moving to close." (Doc. 42 at ¶ 71.) On June 1, 2021, Borkum indicated to Beaton that "Wilson had concerns regarding the level of trust between the parties and, as a result, he had no intention of executing and delivering certain documents required for closing under the APA, including his employment agreement and the operating agreements for the post-closing operating entities." (*Id*. at ¶ 72.) Plaintiff alleges Beaton "once again made clear that [Plaintiff] needed immediate assurances" that Defendants intended to move forward and close the deal. (*Id*. at ¶ 73.) After receiving no response from Wilson, Plaintiff provided notice by letter, dated June 8, 2021, that it considered Defendants in breach of the APA and requested an "acceptable response" by June 10, 2021. (*Id*. at ¶¶ 74-76.) On June 11, 2021, attorneys for Weber and Lemans served a letter on Plaintiff, "purporting to terminate the APA [] and declaring the agreement without force or effect." (*Id*. at ¶ 80.)

Plaintiff alleges Defendants engaged in "willful and intentional breaches of the APA, which … prevented the subject transactions from closing," and made "concluding the subject transactions by the APA's outside closing date deadline of June 29, 2021 impossible." (Doc. 42 at ¶ 81.) Plaintiff asserts that, as a result, under Section 7.1(c), Defendants were not entitled to terminate the APA or any related agreement. (*Id*.; Doc. 43-2 at 24-25; *see infra* Part I.B.3.)

Based on these allegations, Plaintiff filed a breach of contract claim against Defendants on June 18, 2021. (Doc. 1.) Defendants filed a motion to dismiss on August 3, 2021, which the Court granted. (Docs. 7, 37.) Plaintiff then filed its First Amended Complaint on November 1, 2022, asserting claims for breach of contract and anticipatory breach of contract. (Doc. 42.) Now pending before the Court is Defendants' second motion to dismiss the FAC. (Doc. 43.)

**B. Relevant Terms of the APA**[1]

### 1. Parties

The APA defines Plaintiff as "Buyer," Weber and Lemans, collectively, as "Seller," and Wilson as "Seller Principal." (Doc. 43-2 at 2, 6, § 3.2(d).)

### 2. Closing Date

Section 3.1 of the APA, titled "Closing Date," provides the following:

> (a) Subject to the terms and conditions of this Agreement, the closing of the transactions (the "Closing") contemplated by this Agreement and any other agreement or instrument executed by the Parties pursuant to this Agreement (collectively, the "Related Agreements") will occur on a mutually agreeable date, at a mutually agreeable location, at 10:00 a.m. local time no later than thirty (30) days after all necessary Manufacturer (as defined below) and governmental approvals are received for the transactions contemplated under this Agreement so long as all other conditions set forth in this Agreement are satisfied (the date on which such Closing occurs, the "Closing Date"). The Closing Date shall occur no later than January 30, 2021 (the "Closing Date Deadline"); provided, however, the Closing Date Deadline shall automatically be extended without further action by either party for up to an additional one hundred fifty (150) days as may be necessary in connection with Manufacturer and State of California regulatory approvals as required under Section 6.1(c) and Section 6.1(e) below.

(Doc. 43-2 at 5.)

### 3. Required Actions at Closing and Conditions Precedent

Section 3.2 of the APA, "Actions to be Taken at the Closing," outlines certain actions and documents the parties were required to deliver at the Closing. (Doc. 43-2 at 5-7.) Section 6.1 of the APA sets forth conditions precedent to Plaintiff's obligations under the APA. (Doc. 43-2 at 23-24.) Section 6.2 sets forth conditions precedent to Weber and Lemans' obligations under the APA. (Doc. 43-2 at 24.)

---

[1] In the Ninth Circuit, the incorporation-by-reference doctrine allows the Court to consider certain documents not attached to the complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Under this doctrine, "a defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id*. (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). Although Plaintiff did not attach the APA to the FAC, Defendants attached it as an exhibit to the instant motion. (Doc. 43-2.) The parties do not dispute that the APA is referred to extensively in the FAC and forms the basis of Plaintiff's claim. It is the contract upon which every allegation depends on. Thus, the APA is incorporated by reference and is appropriate for the Court's consideration.

4.      Termination of the APA

Section 7.1 provides for the parties' right to terminate the APA "at any time before the Closing" as follows:

> (a) By Buyer, by notice to Seller, if any of Buyer's conditions precedent to Closing have not been satisfied as of the Closing Date or has become incapable of being satisfied by the Closing Date through no breach hereof by Buyer.
> (b) By Seller, by notice to Buyer, if any of Seller's conditions precedent to Closing have not been satisfied as of the Closing Date or has become incapable of being satisfied by the Closing Date through no breach hereof by Seller. Subject to Section 3.1 above, by Buyer or Seller, by notice to the other, if the Closing does not take place on or before the Closing Date Deadline (as automatically extended in accordance with Section 3.1(a)); provided that a Party will not be entitled to terminate this Agreement pursuant to this Section 7.1 if such Party's willful breach of this Agreement or any Related Agreement or intentional misrepresentation under this Agreement or any Related Agreement has prevented the Closing from taking place before such date.

(Doc. 43-2 at 24-25.)

## II.     Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled

to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.    Discussion and Analysis

Defendants assert Plaintiff's causes of action fail as a matter of law because (1) all conditions precedent unrelated to manufacturer and regulatory approvals were due by January 30, 2021; and (2) Plaintiff was incapable of obtaining the necessary approvals by June 29, 2021. (Doc. 43.) Plaintiff contends all conditions were due on one closing date: June 29, 2021, and that it sufficiently alleges performance or excuse under the APA. (Doc. 48.)

####     A.    The Closing, the Closing Date and the Closing Date Deadline

A motion to dismiss must be denied where the language of a contract is ambiguous, as this "leaves doubt as to the parties' intent." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 908 (N.D. Cal. 2020) (quoting *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008)); *see also Workcare, Inc. v. Plymouth Med., LLC*, 2022 WL 886452, at *3 (C.D. Cal. Feb. 18, 2022) ("If an 'agreement is ambiguous, then interpretation of the agreement presents a fact issue that cannot be resolved on a motion to dismiss.'") (quoting *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1008-09 (9th Cir. 2014)). An ambiguity does not arise simply because the parties dispute a contract's meaning; "a contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (internal quotation marks omitted). Contract terms cannot be examined in a vacuum. The language must be interpreted "as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Tarakanov v. Lexington Ins. Co.*, 441 F. Supp. 3d 887, 898 (N.D. Cal. 2020); *see also Cent. Arizona Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1127-28 (D. Ariz. 1998) (explaining that to be reasonable, an interpretation must be "consistent with the language of the contract

as a whole") (citing *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989)). Nonetheless, a party cannot attempt to "distort the interpretation of contracts to reach absurd or unfair results." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 48 (1st Cir. 2014); *see also Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1340-41 (9th Cir. 1989) (ambiguity cannot be based on a "strained" interpretation); *Rsrv. Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982) ("Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.") (citing Cal. Civ. Code § 1638).

At issue is Section 3.1 of the APA, which provides the following:

> Subject to the terms and conditions of this Agreement, the closing of the transactions (the "Closing") contemplated by this Agreement and any other agreement or instrument executed by the Parties pursuant to this Agreement (collectively, the "Related Agreements") will occur on a mutually agreeable date, at a mutually agreeable location, at 10:00 a.m. local time no later than thirty (30) days after all necessary Manufacturer (as defined below) and governmental approvals are received for the transactions contemplated under this Agreement so long as all other conditions set forth in this Agreement are satisfied (the date on which such Closing occurs, the "Closing Date"). The Closing Date shall occur no later than January 30, 2021 (the "Closing Date Deadline"); provided, however, the Closing Date Deadline shall automatically be extended without further action by either party for up to an additional one hundred fifty (150) days as may be necessary in connection with Manufacturer and State of California regulatory approvals as required under Section 6.1(c) and Section 6.1(e) below.

(Doc. 43-2 at 5, § 3.1 [emphasis added].) Defendants argue the language is clear that the "Closing Date" was extended by 150 days for necessary approvals only, while all other conditions remained due by the original Closing Date of January 30, 2021. (*See* Doc. 43 at 9.)

Defendants take the position that the "Closing Date" and the "Closing Date Deadline," were two separate deadlines and that the extension of the Closing Date Deadline did not extend the Closing Date. First, the Section 3.1 does not indicate that the "Closing Date" would be a fixed date, let alone January 30, 2021. Rather, "the Closing Date" would be "the date on which such Closing occurs." (Doc. 43-2 at 5) The Closing would occur on a date that would be determined by mutual agreement of the parties. *Id*. The January 30, 3021 date was simply the latest date the parties anticipated that the Closing would occur. *Id.* Thus, the Closing Date and the Closing Date Deadline could be different days or could be the same day, depending on whether the Closing occurred before the Closing Date Deadline.

7

Second, all of the conditions set forth in Sections 6.1 and 6.2 are required to be completed no later than the "Closing Date," which is, as stated, the date the closing occurs. (Doc. 43-2 at 23-24) Neither Section 6.1 or 6.2 refer to January 30, 2021 and no portion of the contract defines the "Closing Date" as January 30, 2021. Thus, the suggestion that the APA defined the Closing Date as January 30, 2021, is fabricated out of whole cloth.

Third, Defendants' argument that the APA allowed "the Closing Date [to] be extended for up to 150 days" (Doc. 43 at 9), is not accurate. Rather, it is the "Closing Date Deadline" which could be extended. (Doc. 43-2 at 5) This would allow the parties to "mutually agree" upon a closing date on which "the Closing" would occur, assuming it would be no later than 150 days after January 30, 2021—or June 29, 2021. *Id*.

Finally, Defendants' interpretation of the time by which actions needed to be taken or conditions satisfied defies common sense. For example, Defendants assert that Plaintiff was required to complete an assignment of the real property leases by January 30, 2021. (Doc. 43 at 10) If true, this would have required Plaintiff to become financially responsible for the leases for up to 150 days before Plaintiff received any benefit from the operation of dealerships, assuming the Closing ever occurred. And, if the Closing never occurred—as it did not—this would have required Plaintiff to be financially responsible for the leases until their expirations whether Plaintiff received any benefit from the operation of the dealerships.

Plaintiff contends the plain language provides for only one Closing Date, and because it had not yet received the necessary approvals by January 30, 2021, the Closing Date Deadline was automatically extended and the new Closing Date was June 29, 2021, when all conditions and other required actions under the APA were due. (Doc. 48 at 7-8; *see also* Doc. 42 at 14, ¶ 65.) The Court finds this is the only reasonable interpretation of the contract language, and thus, no ambiguity exists. *Doe 1*, 552 F.3d at 1081; *Monaco*, 554 F. Supp. 2d at 1040. Therefore, Defendants' first argument in support of dismissal—that satisfaction of all conditions unrelated to manufacturer approvals was due January 30, 2021—is unavailing.[2]

---

[2] Alternatively, Plaintiff asserts that the parties' conflicting interpretations, at best, demonstrate an ambiguity in the contract language that cannot be resolved at this stage of the litigation. (*See* Doc. 48 at 10.) Indeed, "[i]f an

### B. Performance

Defendants also challenge the sufficiency of Plaintiff's allegations with respect to its performance under the APA, arguing that Plaintiff's claims fail because it was incapable of obtaining manufacturer and regulatory approvals by June 29, 2021. (Doc. 43 at 11.) In so doing, however, they rely on unidentified pleading standards or otherwise challenge the truth of the allegations in the first amended complaint rather than their sufficiency.[3] It is well-settled that the latter is inappropriate at this stage. *Iqbal*, 556 U.S. 662; *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). Accordingly, the Court will only briefly address Defendants' arguments.

Despite conceding that Plaintiff alleges it obtained conditional manufacturer approvals, Defendants attach and recite portions of the manufacturer approval letters to contradict those

---

'agreement is ambiguous, then interpretation of the agreement presents a fact issue that cannot be resolved on a motion to dismiss.'" *Workcare*, 2022 WL 886452, at *3. At first glance, the relevant language of Section 3.1, "in connection with," may reasonably be interpreted to indicate that an extension only applied to approvals. For example, one could argue that if the parties intended the extension to be all-encompassing, the inclusion of such specific language was perhaps unnecessary. Instead, the language would have explicitly stated that the extension applied only if *all* conditions were not met or, at a minimum, the "approval" distinction language would not be included. However, as explained, the Court does not take the terms in isolation when determining the parties' intent. The interpretation must be reasonable within the context of the contract as a whole. Moreover, even assuming, *arguendo*, that the interpretation was reasonable in light of the remaining contract terms, the end result would be the same; this ambiguity would require denial of Defendants' motion to dismiss. *See Williams*, 449 F. Supp. 3d at 908; *Workcare*, 2022 WL 886452, at *3.

[3] Defendants make at least two erroneous assertions that, while not dispositive, warrant clarification. First, Defendants claim only *Plaintiff* was required to obtain the necessary approvals under Section 6.2(e). (Doc. 43 at 12.) However, in so doing, they disregard the plain language imposing this requirement on Weber and Leman as well. (*See* Doc. 43-2 at 24 [providing that Seller's obligations were conditioned upon "[a]ll consents, approvals and waivers (including the approval by the Manufacturers) required to consummate the transactions contemplated by this Agreement and the Related Agreements [to be] obtained in writing **by Buyer and Seller**, as applicable."] (emphasis added).) Similarly, Defendants claim that because Plaintiff was "incapable" of obtaining the necessary approvals, they properly terminated the APA pursuant to Section 7.1. (Doc. 43 at 12.) Yet Defendants omit Section 7.1(c), which provides that a Party "will not be entitled to terminate this Agreement pursuant to this Section 7.1 if such Party's willful breach of this Agreement or any Related Agreement has prevented the Closing from taking place before such date." (Doc. 43-2 at 25.) This is, in fact, what Plaintiff alleges in the FAC. (*See* Doc. 42 at 5, ¶ 22 ["The Closing, as a result of Defendants' conduct, did not occur. Defendants' conduct included a failure to undertake diligent efforts to obtain necessary approvals, provide necessary notices, and provide paperwork required to complete the deal, which prevented the Closing actions in APA § 3.2(a)-(o) from occurring. Separately, Defendants[] terminated the APA on June 11, 2021, ***prior*** to the Closing date of June 29, 2021, which also prevented ***any*** Closing actions from taking place." (emphasis in original)]; *see also id.* at 18-19, ¶ 88 [citing provisions of the APA Defendants purportedly breached].)

9

1   allegations. (*See* Doc. 43 at 12-16; Docs. 43-4, 43-5, 43-6.) They argue that Plaintiff failed to satisfy
2   certain conditions set forth by the manufacturers, which demonstrates Plaintiff's inability of obtaining
3   the necessary approvals. (*See* Doc. 43 at 12-16.) The Court is not persuaded. First, Defendants cite to
4   no legal authority supporting the contention that because Plaintiff failed to allege it satisfied conditions
5   set forth *in the manufacturer approval letters*, it fails to state a claim for breach of the APA. Defendants
6   also argue that Plaintiff failed to allege it used reasonable efforts in obtaining the approvals. (*Id*. at 16-
7   18.) However, Defendants do not connect these "failures" with any pleading standard, let alone one that
8   serves as a basis for dismissal. Moreover, they assert Plaintiff was required to obtain regulatory
9   approvals as set forth in Section 6.1(g). (*See id*. at 17-18.) As the Court previously explained, Section
10  6.1 consists of conditions precedent to *Plaintiff's* obligations, which Plaintiff is not required to plead.

11      Next, consideration of such extrinsic evidence is not appropriate at this stage. To establish
12  Plaintiff's purported failure to satisfy conditions of the contract, Defendants claim the letters are
13  incorporated by reference into the FAC. (Doc. 49 at 6.) As provided *infra* Part I.B. n.1, "a defendant
14  may seek to incorporate a document into the complaint if the plaintiff refers extensively to the
15  document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (internal
16  quotation marks omitted). The approval letters satisfy neither requirement. Defendants appear to
17  contend that the repeated use of the word "approval" in the FAC demonstrates the letters are central to
18  its claim, but this misconstrues the standard. Use of the word "approval" does not necessarily mean the
19  word is referring to the documents themselves. In fact, only four of the eighteen uses Defendants cite
20  mention the approval letters at issue. (*See* Doc. 49 at 6; Doc. 43-2 at ¶¶ 32, 51, 70, 71.) Out of the 97
21  paragraphs comprising the FAC, this does not amount to "extensive," and it does not demonstrate that
22  the letters form the basis of Plaintiff's claims.

23      Plaintiff does not quote any language from the letters or in any way rely on the contents of the
24  letters. *See Khoja*, 899 F.3d at 1003-05 (finding an abuse of discretion by incorporating a blog post
25  where plaintiff's claims did not rely on the statements made to the post's author, but no abuse where
26  documents were quoted or relied upon, or where they "triggered" the scheme leading to the claim or
27  revealed the materiality that formed the basis of plaintiff's claims). Moreover, the Ninth Circuit
28  explained "it is improper to assume the truth of an incorporated document if such assumptions only

serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Id*. at 1003. Defendants request that the Court assume the truth of the approval letters' content for purposes of disputing Plaintiff's allegation that it obtained the approvals, which is improper under established Ninth Circuit precedent. Thus, the letters are not incorporated by reference and the Court declines to consider them for purposes of this motion.[4] This is not to say these documents are irrelevant to the litigation or inadmissible in the abstract; it is simply not the appropriate time for their consideration.

## IV.     Conclusion and Order

Thus, because the Closing Date Deadline was June 29, 2021 and the Closing and Closing Date had not yet occurred, and because Defendants make no compelling argument to support their position that Plaintiff's purported failure to satisfy manufacturer conditions bears on the sufficiency of the allegations, Defendants' motion to dismiss (Doc. 43) is **DENIED**.

IT IS SO ORDERED.

Dated:    **October 24, 2023**                                     /s/ Jennifer L. Thurston
                                                                                UNITED STATES DISTRICT JUDGE

---

[4] Defendants claim that in the Court's prior order granting their first motion to dismiss, the Court "expressly stated" that these documents are "properly considered here as they were referenced in the FAC." (Doc. 49 at 6.) This is a wild misstatement of the Court's order. (Doc. 37 at 2 n.1) At issue in the Court's proper ruling was whether the incorporation-by-reference doctrine allowed the Court to consider the APA. At no time did the Court consider whether the letters were incorporated by reference into the first amended complaint.
   On a related note, Defendants' request (Doc. 49-1) that the Court judicially notice the order, filed at Docket 37, is unnecessary and thereby **DENIED** as moot. *See Samson Tug & Barge, Co. v. Int'l Longshore & Warehouse Union*, 2021 WL 1081139, at *2 (D. Alaska Feb. 12, 2021) (Although a court may take judicial notice of its own docket, the Court sees no reasons to do so in this instance, as the entire record … is available for the Court's review.") (footnote omitted); *see also Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (taking judicial notice of defendant's motion to dismiss but advising plaintiff that she "need not seek judicial notice of documents filed in the same case. An accurate citation will suffice." (quoting *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 960 n.7 (N.D. Cal. 2014)).