IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA (FRESNO)

| | | |
|---|---|---|
| FOUNDATION AUTO HOLDINGS, LLC, A DELAWARE LIMITED LIABILITY COMPANY, | . . . | Case No.: 1:21-CV-00970-JLT-EPG |
| | . | Fresno, California |
| Plaintiff, | . . | |
| vs. | . . | |
| WEBER MOTORS, FRESNO, INC., et al., | . . . | |
| Defendants. | . | Thursday, October 24, 2024 |
| . . . . . . . . . . . . . . . | | 1:30 P.M. |

TRANSCRIPT OF HEARING ON MOTION TO COMPEL
BEEFORE THE HONORABLE ERICA P. GROSJEAN
UNITED STATES MAGISTRATE COURT JUDGE

APPEARANCES ON THE NEXT PAGE.

Electronic Court          Otilia Rosales
Recording Operator:       United States District Court
                          Robert E. Coyle United States
                            Courthouse
                          2500 Tulare Street
                          Fresno, California 93721

Transcription Service:    Liberty Transcripts
                          9107 Topridge Drive
                          Austin, Texas 78750
                          (847) 848-4907
                          DBPATEL1180@GMAIL.COM
                          www.libertytranscripts.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

For the Plaintiff Foundation Auto Holdings, LLC:

Holland & Knight, LLP
BY: DANIEL PATRICK KAPPES, ESQUIRE
560 Mission Street
Suite 19th Floor
San Francisco, California 94105
(415) 743-6900
daniel.kappes@hklaw.com

Holland & Knight, LLP
BY: DAVID I. HOLTZMAN, ESQUIRE
560 Mission Street
Suite 19th Floor
San Francisco, California 94105
(415) 743-6900
david.holtzman@hklaw.com

Holland & Knight, LLP
BY: ANDREW KLAIR, ESQUIRE
560 Mission Street
Suite 19th Floor
San Francisco, California 94105
(415) 743-6962
andrew.klair@hklaw.com

For Intervenor Plaintiff Templeton Marsh Ltd.

Kennedys LLP CMK
BY: CAMILLE ZUBER, ESQUIRE
915 Wilshire Boulevard, Suite 700
Los Angeles, California 90017
(213) 289-4149
camille.zuber@kennedyslaw.com

For the Defendants, Weber Motors, Fresno, Inc., CJ's Road to Lemans Corp., and Christopher John Wilson:

MLG Attorneys at Law
BY: JOHN WHELAN, ESQUIRE
600 Anton Boulevard, Suite 1240
Costa Mesa, California 92626
(949) 581-6900
jwhelan@defectattorney.com

**FRESNO, CALIFORNIA, THURSDAY, OCTOBER 24, 2024, 1:30 P.M.**

THE COURT:  Good afternoon.  This is Judge Grosjean. This is the case of Foundation Auto Holdings, LLC v. Weber Motors, *et al.,* 21-CV-970.  We're here for a Motion To Compel.

Let me take appearances starting with Plaintiff's counsel.

MR. HOLTZMAN:  Good afternoon, Your Honor.

This is David Holtzman for Foundation Auto joined by my colleagues, Daniel Kappes and Andrew Klair.

THE COURT:  Okay.  Thank you.  And good afternoon Mr. Holtzman, Mr. Kappes, Mr. Klair.

Before I turn to others, I'm just reminding you that this is being recorded so, when you speak, if you could introduce yourself.

And for Defendants, Weber Motors, *et al.*

MR.  WHELAN:  Good afternoon, Your Honor.

This is John Whelan for the Defendants.

THE COURT:  Thank you.  Good afternoon, Mr. Whelan.

And for Intervener Templeton Marsh?

MS. ZUBER:  Yes, good morning.

This is Camille Zuber.

THE COURT:  Thank you.  And good afternoon, Ms. Zuber.

THE COURT:  Okay.  Thank you.  I did want to address

the Motion To Compel.  I apologize, I think it was here longer than I wanted it to be so I appreciate it.  I saw that we -- you reminded me and made sure I put it to the front of the line in your status report, and I also wanted to have the conference to make sure that we were on the same page of how things are moving forward.

So, let's speak about the Motion To Compel.  I think this is relatively simple in that I think the Defendants have already stipulated that they withdrew all objections.  So, I'm looking at Document 81 that was a joint Stipulation.  It is signed by Mr. Whelan on behalf of all Defendants.

It says, "Defendants withdraw all objections to Foundation's Requests For Production and will produce documents by July 1, 2024.  As such, no Motion To Compel should be necessary at this time."

I note that under Ninth Circuit precedent and I'm looking at, for example, CDN Inc. v. Kapes, 197 F.3d 1256, 1258 (9th Cir. 1999), "Because Stipulations serve both judicial economy and the convenience of the parties, courts will enforce them absent indications of involuntary or uninformed consent."

So I think that should end the issue.

Mr. Whelan, do you want to be heard?

MR. WHELAN:  Your Honor, the only response I have to that Stipulation is my client certainly did not and I did not

intend to stipulate to withdrawing all objections.  The attorney-client objections that were discussed among counsel, I did not intend to waive.  I realize based on the terms of the Stipulation that I failed to make that clear, and so that's the only comment I have, Your Honor.

THE COURT:  Okay.  So let's talk then about that.  I hear that at least -- it will be granted, except let's talk as to attorney-client documents.  Have you produced a privilege log?

MR. WHELAN:  No, Your Honor, I have not.

THE COURT:  What are you proposing, then?

MR. WHELAN:  That I withhold attorney-client privileged documents from the documents that are responsive to Plaintiff's request and produce a privilege log with those responses.

THE COURT:  Let's hear from Plaintiff's counsel on that proposal that it be granted except insofar as they haven't agreed to waive privilege.  But we'll need to work out timing, but that they do produce a privilege log. Certainly, you could still contest the assertion of privilege, but let's hear a little bit argument on whether the Stipulation also waived attorney-client privilege.

MR. HOLTZMAN:  Thank you, Your Honor.

This is David Holtzman.  I think our impression when we did the Stipulation was that all meant all.  We didn't

discuss the reserving of any particular objections including the privilege.  It's not even clear how most of our requests would even implicate the privileges as most of them deal with requesting evidence of performance under the APA.  And so it wasn't in the forefront of our mind, and I don't think it was in the forefront of Defendants' mind given that we didn't discuss it at all.

We agreed to give them an extended date to produce in exchange for the waiver of all objections.  We received a waiver of all objections.  And given the fact that not even non-privileged documents have been produced, I think it's hard to say now that actually back when we did the Stipulation, we were intended to reserve objections for Defendants and then just didn't write it down.

THE COURT:  Well, let's hear a little more from Mr. Whelan about, tell me some types or categories of documents that you think are responsive to the request but would be privileged.  So what sort of documents are we talking about?

MR. WHELAN:  Give me one moment, Your Honor.

(Whereupon, there was a brief pause in the proceedings.)

MR. KAPPES:  Your Honor, this is Dan Kappes on behalf of the Foundation.

I wonder if I could speak quickly while we wait for Mr. Whelan on the --

THE COURT:  Okay.

MR. KAPPES:  -- privilege issue?

THE COURT:  Yes.

MR. KAPPES:  I think some background is in order, just given the timing here.  If you recall, we participated in an IDC conference.  I'm not going into the specifics of what we discussed at the IDC conference, I think this Court will recall that Defendants were tardy in issuing document requests or responses to our document requests.  We propounded our request.  We did not receive a response.  We sent a follow-up request saying, where are your responses?  They're now late.  Later that day is when they issued objections.

So our contention and our argument would be, as the Court is well aware, if you fail to respond to discovery, you waive all objections, including privilege.  I think it's highly suspect that we're now in the position of we argued to the Court previously that the privilege has been waived, we issued a Stipulation that all objections were waived.  And now we're coming back and having an argument a third time before this Court about whether or not the Defendants have reserved the privilege.

THE COURT:  Okay, I understand that.  I'd like to understand more what we're talking about with privilege.  For what it's worth, just for one thing, for example, if

Mr. Whelan were to say, actually, we think a lot of these business discussions actually might have been for the purpose of legal advice, so we're going to be withholding documents kind of central to this case, I'm probably going to find that waived.  On the other hand, if what he's talking about is correspondence with litigation counsel in the course of this litigation, I'm going to be more hesitant to find that waived.

So I do want to get a little bit more about what particular attorney-client communications your claimants withhold.

MR. WHELAN:  Your Honor, for example, Request Number 35 asks for all communications regarding the Defendants' decision to terminate and or not perform under the agreement. That certainly calls for privilege materials that we would wish to withhold under the attorney-client privilege.

THE COURT:  Well, does it?  So what do you mean by that?  Are you representing that part of even before the decision to terminate, there were discussions with a lawyer about that and for the purpose of litigation?

MR. WHELAN:  There were certainly discussions by client and counsel prior to termination about the client's rights under the APA to terminate and the circumstances under the APA that would call for justified termination.  Yes, Your Honor.

THE COURT:  In-house or outside counsel?

MR. WHELAN:  That was outside counsel.

THE COURT:  Okay.  Anything else?

MR. WHELAN:  Give me a moment, Your Honor, please.

(Whereupon, there was a brief pause in the proceedings.)

MR. WHELAN:  That's primarily it, Your Honor.

THE COURT:  And do you have a sense of the volume of documents that you are intending to withhold?

MR. WHELAN:  It's hard for me to describe that, Your Honor, the quantity.  Certainly not thousands and thousands and thousands of pages.  Maybe, you know, it certainly could be a couple of hundred pages, you know, 50 to 100 -- or I'm not exactly sure of the volume of pages.  Primarily electronic, you know, email communications.

THE COURT:  This is a tough call.  Let me give my thoughts just for one time around and I'll either decide or I might reserve on this.  So let me -- I'm more hesitant on privilege and I see a little ambiguity on the other end.  It says waived all.  I also think that I can clearly find a waiver that you haven't had a privilege log.  That itself would be a waiver at this point.  So I can certainly find a waiver.  But I do have some reservations just because we're more respectful to attorney-client communication.

I also, in kind of thinking through and my tentative leaning, this does seem -- this is a hard call, even if it

were asserting the privilege.  These aren't your litigation communications.  This is correspondence with a lawyer for making a business decision that already is arguably not privileged.  We'd have to look at whether it was more for a business purpose or a legal purpose.  And I'm also anticipating that there might be some difficult calls insofar as, you know, in-house as part of business communication.

When you say that it could be hundreds, I'm not inclined to think that you, by saying waive all communications -- waive all objections.  I'm not inclined to let you now go through.  I mean, it doesn't sound like you're even prepared to have them.  It sounds, instead, that right now what you're arguing is that you would like to maintain the possibility of a privilege and now go through all the documents and see if you can find a reason why they're privileged.

I don't think that that's fair.  Given your waiver, it doesn't sound like you're prepared to assert an attorney-client privilege on any specific document or that you've pointed to clear privilege.  So I think if I were to make any -- I don't think that I would say that you are entitled to have an objection to something that broad.  I'm tempted to have you do a privilege log and let me see because, again, something may be what we really didn't mean to say, for example, correspondence with Jim Whelan about

this case, I could see that.

But these are really documents about why you terminated it.  That seems like the sort of objection that you would have had to assert.  So let me hear one time from all of you, and I'll either make a decision or at least take it under advisement and move to something else.  Let's hear one more from everybody on that issue.

Who wants to speak for Plaintiffs' counsel?

MR. HOLTZMAN:  Your Honor, this is David Holtzman.

I think that we would be fine if documents prior to the filing of the Complaint were produced but those documents afterwards were merely logged.  We're not trying to invade the litigation privilege, and I think that we don't really need to for the purposes of the case.

But the documents that led to the termination are particularly relevant, especially in this case where there's some pretty good evidence that the June 11, 2021 letter that purpose to terminate the agreement was pretextual and that the real reason the APA was terminated was that Mr. Wilson owed money to, among other people, a loan shark in Chicago and was afraid of doing the deal because he was worried about his cash position afterwards.

Okay.  Mr. Whelan?

MR. WHELAN:  Well, Your Honor, I know for a fact that there are documents that predate the termination letter

of June 11 between outside counsel and the Defendants that, as I said, address the rights of sellers to revoke the asset purchase agreement.  And that, to me, is clearly legal advice that should be protected.  And I could provide a privilege log to the Court for its review, as you suggested, and you could see what those documents contain.

THE COURT:  And Ms. Zuber, do you have anything you'd like to say on this?

MS. ZUBER:  Camille Zuber for Templeton Marsh.

Not really, Your Honor.  We align with Plaintiff's position on this.

THE COURT:  Okay.

MS. ZUBER:  Thank you.

THE COURT:  Okay.  I'm going to grant the Motion To Compel and find that per the Joint Stipulation, Document 81, Page 2, Defendants have withdrawn all objections to Foundation's Requests For Production.  And I do find that that includes work product and attorney-client privilege.

However, to the extent, and I don't know if there are any documents that would fall within the scope of this after the filing of the Complaint, I find that privilege has not been waived as to that time.  And my basis is because that's a clear statement of the Stipulation.  It is all objections.

Also, Defendants did not provide a privilege log.

And in not doing so, that also has been a waiver of any privilege to the extent that it has not been produced.  It also appears that even as of today, they are not prepared to do a privilege log or to identify specific privileged communication.

I also find that based on the description of the documents that Defendants wish to now withhold, those documents are not a side or an oversight or something that they would have not anticipated when they spoke about objections.  They are really central to the request.  The central requests go to what was the reason why Defendants decided to withdraw from the deal.

So hearing now that Defendants wish to carve out communications and claim privilege over communications about why they were withdrawn because there were lawyers who were involved in that decision, I think, was clearly anticipated by the objections and are addressed by the Stipulation. That's a big carveout.  That's not a side issue or something that would not be anticipated or something that would not be expected.  That's a big part of those communications.

And also, frankly, I think if there's any issue here, it goes to Plaintiff.  I am aware of the history, including that there are multiple informal conferences, that there is a Stipulation back in May that says that you will produce documents.  And this was not something that

Defendants acted properly in good faith and are entitled to the benefit of the doubt that they intended to act properly and produce documents and maintain this privilege.

Instead, the history is that Defendants did not produce documents after they said they did, after they told the Court they were going to.  We are now several months after Defendants said that they were going to produce documents.  I don't think that they are entitled to have the benefit of the doubt that they get to withhold those.

Additionally, I find that it would be prejudicial because my intuition is that this would pose very difficult privilege calls.  And if this were done properly, timely, with a privilege log, I think that we could work through those issues and sort through which of these communications were more for business purposes.

For example, I anticipate that there are probably counsel that are on email communications, and there would be difficult calls about which ones are for attorney-client privilege and not.  But we don't have the time to litigate that anymore because there has been no document production for several months when it was supposed to be and when you told the Court it was going to be.

So while I am sympathetic and I am very respectful of a properly identified privilege, I find that Defendants' request to carve out parts of central communications

regarding this case with what I think are going to be difficult privilege calls, I think the time for that has passed and that this waiver included those documents, as well.

So I am granting the Motion To Compel in full except to the extent that I find that Defendants have not waived any attorney-client or work-product privilege regarding any documents from the filing of this litigation on.

Let's talk about sanctions. I do find that this is a place where under Rule 37.1 sanctions are appropriate. I would even say, to give color, this is one of the more extreme examples.  I don't think I actually have ever had a case where Defendants filed a stipulation that they would produce documents and then refused to produce, as far as I understand, any of the documents that and very much necessitated filing the Motion To Compel and their delay.

And I appreciate in part because of the overworking of this Court, it has meant several months of delay.  I think that an award of reasonable cost and fees associated with filing the Motion To Compel are warranted.  I see that Plaintiff has requested, let me get the amount, I didn't hear any argument, so I don't hold this one up.  So Plaintiffs are requesting an award of $32,502.

Defendants, I think that you made a very small objection to some part of this.  Can I hear your position and

16

if you want to make an argument as to an actual amount of money that you would like to be deducted, I'd like to resolve this now on the record.

So can I hear from you, Mr. Whelan?

MR. WHELAN:  Yes, Your Honor.

I think that the sanctions that Plaintiffs are requesting are an extraordinarily large sum of money that I pointed out in the opposition, multiple instances in the billing that was provided in the motion that were inappropriate charges --

THE COURT:  So what is your -- what do you think is the appropriate number when you take away the charges that you believe were not properly associated with the filing of the Motion To Compel and litigating this issue?

MR. WHELAN:  Well, Your Honor, my position is that the hourly fees and the volume of work that appears in the moving parties' papers is extreme and necessary and that the Court --

THE COURT:  Give me a number if you want a number. And if you want to take a little moment to look at your own opposition, that's okay.  But I'm really not inclined to just hear the Defendants think generally it's too large.  This is the time to do it.  I can bring up -- or why don't you look at the amount and this is the time if you would like to request that it be -- that some amount be deducted.  I'm

hearing this now, so do you want to make a specific suggestion?

MR. WHELAN:  Yes, Your Honor.

THE COURT:  Okay.

(Whereupon, there was a brief pause in the proceedings.)

MR. WHELAN:  Your Honor, I would suggest that the sanction award be no more than the sum of $10,000.

THE COURT:  That's pretty arbitrary.  Are there actual -- did you add up actual amounts that you think should be taken off?

MR. WHELAN:  I did not, Your Honor.  I pointed out in the opposition there was a discount referred to in the invoices, which is not disclosed, and that there's research charges for Rule 30(b)(6) deposition that doesn't apply to this discovery.  We certainly shouldn't be sanctioned for that.

THE COURT:  How much is the 30(b)(6) research charge?

(Whereupon, there was a brief pause in the proceedings.)

MR. WHELAN:  I'm looking through the invoices, Your Honor.

THE COURT:  Okay.

(Whereupon, there was a brief pause in the proceedings.)

THE COURT:  What was the date of the informal conference?  What was the date of our informal conference?  I

can look it up, too.  I'm trying to see if we can -- it looks like the informal conference was April 26, 2024.  Is that right?

MR. KAPPES:  I believe it was -- Your Honor, this is Dan Kappes on behalf of the Foundation.  I believe it was April 22 but, yes, it was in late April.

And I can address quickly, just while we're waiting for counsel, we're not going to fight over the 30(b)(6) charge.  The reason why that issue showed up on this charge was because, as the Court is aware, we had set depositions and we had discussed we can't take depositions and move this case forward until we receive documents, and we haven't received any documents.

Therefore, we pushed the depositions several times.  And we had an associate research whether us voluntarily moving the depositions not once but twice, whether there was a risk that we had waived any rights with respect to the depositions, given there was just, quite frankly, a lack of communication and outreach from Defendants' counsel about production dates, and so we ended up taking depositions off calendar.

I believe Mr. Klair can advise me if I'm wrong, but I believe we took two deposition dates off calendar.  And we wanted to ensure we weren't, by taking those depositions off calendar, we weren't waiving our right to later take

depositions based on a failure to adhere to the Stipulation or (indiscernible) documents.  That's why those charges --

THE COURT:  We can take that off.  I want to think about this start date.  I do see that you have an invoice of April 4th.  That's even before the informal conference.  And then I also see that you're including amounts that are before the stipulation date, so you are including things that are more than the cost of filing the Motion To Compel.

So I am thinking that we should do a start date.  And let me look at Rule 37 about making sure that we're tied to what is there.  Just a moment.  I'm looking at the sanctions for this.

(Whereupon, there was a brief pause in the proceedings.)

MR. KAPPES:  This is Dan Kappes on behalf of the Plaintiff.  I'll speak while you're looking, Your Honor, just for the sake of efficiency.

THE COURT:  Okay.

MR. KAPPES:  I just want to be clear.  There is no question that we included charges before we filed the motion.  We included those charges because you cannot file a motion before you meet and confer, before you participate in an informal defense -- you know, IDC conference.  So we did include those charges because they are requirements before filing a Motion To Compel.

If the court is not inclined to grant those charges,

that's fine.  I just want to be clear on why we included those charges, because it's our understanding we can't file a motion until --

THE COURT:  I think it is about the motion.  So I'm looking at Rule 37(a)(5).  That's payment of expenses, and it says if the motion is granted or disclosure or discovery is provided after filing -- apologies, I'm going to read it.  Some of it might not be -- I'm going to read it all.

"If the motion is granted" -- which I'm granting -- "or if the disclosure or requested discovery is provided after the motion was filed" -- that's true, too -- "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment," and then it goes for things that don't apply.

And so I think that is where we're at, and so I'm through Rule 37(a)(5)(A), I am granting the motion.  It's being granted in full.  I have given an opportunity to be heard, but it is the expenses incurred in making the motion, including attorney's fees.  So I do not think that it includes the meet and confer efforts or the informal conference, and I don't think it includes the discussions that led to the Stipulation.  So I am inclined to start those

fees as of May 11, 2024.

Let me just hear from parties before I make that my order, if you want to say that it should be a different day or make other arguments.

Let's hear from Plaintiff's counsel first.

MR. HOLTZMAN:  Your Honor, this is David Holtzman for Foundation.  I think that we're fine with that, Your Honor.

THE COURT:  Okay.  Mr. Whelan?

MR. WHELAN:  That's fine, Your Honor.

THE COURT:  Okay.  So I am going to grant the Motion For Sanctions.  Again, it's under Rule 37(a)(5)(A).  And we'll grant it as for the reasonable expenses, including attorney's fees, in making the motion.

And so I will direct the Plaintiff to file a statement of what those expenses and fees are, how about no later than seven days from today.  And so what I'd like is any fees and costs associated with making the motion that would start as of May 11, 2024.  And it should not include fees and costs related to the 30(b)(6) deposition.  I'd like you to omit that, as well.  And when you give it, can you -- why don't I give Defense then has about another seven days if it objects to any of those fees and expenses.

But let me note at this part, Mr. Whelan, what I'm looking for if you think that it isn't really about the

motion, let me know.  This isn't to reiterate your objection to the award of fees.

Okay.  Plaintiff Counsel, does that make sense?

MR. KAPPES:  Your Honor, this is Dan Kappes for Plaintiff.  Just so I'm clear, we should submit the same invoices but only submit invoices that relate directly to the filing of the Motion itself, i.e., that would be the costs in, you know, whether it's research costs or drafting and appearing at the Motion hearing.  Is that correct?

THE COURT:  Yes.

MR. KAPPES:  I guess I'm confused --

THE COURT:  Although in the end, if you want to add the part about this hearing, I think you can do that.

MR. KAPPES:  Okay.

THE COURT:  I don't know if those were (indiscernible) already.

MR. KAPPES:  And I guess if it's limited to that, I guess -- and I'll be frank, I'm actually in Fresno today, and I don't have my computer in front of me.  I guess my question is why do we have a sort of an arbitrary cutoff day of May 11th if we started drafting the Motion prior to that date?  I guess --

THE COURT:  This is what I was thinking, because as of May 10, 2024, you had a Stipulation.  There was no Motion To Compel that was necessary at that time.  Are you

suggesting that some of the drafting was done earlier than that and ended up being what you filed?

MR. KAPPES: Yes. And I apologize, Your Honor, again. I guess what I would say is if we're going to limit the sanctions to the actual drafting of the motion, I think it makes sense for us to provide the Court within seven days, as you requested, the cost to go directly to the Motion or the hearing and so forth. The Defendant will get seven days to oppose certain line items that he believes don't go to that Motion, and then we make a decision.

But I have -- I don't feel comfortable, as I sit here today, saying May 11th is a hard and fast date, especially because --

THE COURT: Yeah, you know what, I think I am okay with that, because you're right. I was first thinking I'll just have an arbitrary date that reflected that. But if you're going to go through and we're actually looking for ones that are directed to the motion and not an arbitrary date, I think I'm okay with that. I don't know if you actually were drafting one before this or not. I can't tell.

So why don't we do that? So I won't make -- I'll pick out the arbitrary date, but I am going to, within seven days, Plaintiff's counsel shall file its renewed request for all costs and fees but only associated with the Motion pursuant to Rule 37. And Mr. Whelan has an objection period

of seven days if it wants to say that any of that was not for the Motion.  In theory, it could include things earlier than May 10th, but it'd have to really be like you're drafting the Motion before then and not just meet and confer efforts.

MR. KAPPES:  Of course not.  I understand your directive, Your Honor.

THE COURT:  Okay.  Mr. Whelan, do you understand, and is there anything you'd like to say about that process?

MR. WHELAN:  I understand the Court's instruction, Your Honor.

THE COURT:  Okay.  So now we need some timing.  When can you produce the documents, Mr. Whelan?

MR. WHELAN:  I'd say within 30 days, Your Honor.

THE COURT:  Okay.  So I'm going to order that Defendants comply with the Motion To Compel in terms of the documents and any privilege log, if any, as I instructed, though, that would be a privilege log if it is in the scope of the Requests For Production, which I don't know if it is, and also includes a document postdating the filing of the Complaint.  But if it is withholding any documents on that privilege, they should do a privilege log no later than 30 days, as well.

So let's kind of check back into now where we are on the schedule and the case.  So we've got, right now you have non-expert discovery deadline is December 16, 2024.  Given

that you're going to get more documents in 30 days, so that'll be late November, Plaintiff's counsel, are you requesting a change to the schedule?

MR. HOLTZMAN:  I don't know that we have a -- oh, I'm sorry.  This is David Holtzman, Your Honor, for Foundation.  I don't know that we have any specific request for a change of schedule right now.  I think that we entered the Stipulation to kick things out in 90 days.  We'll take a look, give them the document production, and meet and confer with the other parties.  And if there is a change in schedule needed, I think we can do it through another stipulation.

THE COURT:  Okay.  Mr. Whelan, are you okay with that, meaning that I'm not changing dates now, but you'll confer with Plaintiffs and submit a stipulation if you think that additional time is needed?

MR. WHELAN:  Yes, Your Honor.  That's fine.

THE COURT:  Okay.  That sounds good.  And I think if it's in a reasonable amount of time, I'll grant it. Reasonable, if it's somewhere 30 to 90 days and you think you need it, I'm willing to do that.  So I'd sign off on that. I'm not inclined to do more, but it doesn't sound like you're inclined to do that either.  If we do extend dates, we'll extend all the dates.

And let me look at where we are.  What else do we want to address here?  I want to make sure I'm taking care of

what you need to move things forward and don't leave anything unattended to.  So why don't I ask all counsel if there's other issues that you think that we need to discuss while we're together.

Plaintiff's counsel, is there anything else?

MR. KAPPES:  Your Honor?

MT. HOLTZMAN:  No, this is David Holtzman.

MR. KAPPES:  Oh, go ahead.

THE COURT:  Let's go with Mr. Holtzman first, and then if there are other Plaintiff's counsel, we can hear from them, as well.  How about you, Mr. Holtzman?

MR. HOLTZMAN:  Thank you, Your Honor.  I was about to say that I am not aware of anything else.

THE COURT:  Okay.  And Mr. Kappes, did I hear you might want to say something?

MR. KAPPES:  Yes, Your Honor.  Thank you.

I think it would be useful to keep moving this case forward that we have agreement whether it's on the record, that's fine from Plaintiff's [sic] counsel that he will make the deponents that he previously agreed to appear within 45 days of his or 30 days of the date of production.  I think that will help us keep moving this case forward.

The other issue that I would like --

THE COURT:  Hold on.  Wait, wait, wait.  Let me hear.  I think you said Plaintiff's counsel.  Did you mean

Defense Counsel?

MR. KAPPES:  I apologize, Your Honor.  I meant Defense Counsel, correct.

THE COURT:  Okay.  And let's hold on just that for a moment.  Mr. Whelan, is there anything, a commitment that you could make or tell me your plans to reassure Plaintiff's counsel that deponents will be made in a timely basis?

MR. WHELAN:  Your Honor, unfortunately, at this moment, all I can say is that I will contact my clients and tell them that the Plaintiffs wish to take those three depositions that have been noticed previously within 30 days of the document production.

Unfortunately, as I sit here today, I don't know whether those three witnesses would be available 30 days from November 24 or 25 for a deposition.

THE COURT:  What if we do -- what if we say something like Defense Counsel shall inquire regarding the availability of their witnesses and file -- or something that notifies the Court no later than 14 days from today regarding the status of that scheduling?  So, at least I can keep tabs on it.

Do you think you could file something in 14 days that says -- hopefully says dates but, if not dates, give an update that would also be available to the Court?

MR. WHELAN:  Yes, Your Honor.  I can do that,

certainly.

THE COURT: Okay. Why don't we do that? So, I'm going to say Defense Counsel shall coordinate with the outstanding three witnesses or dates for the deposition, I'm going to say promptly following the document production, and shall file a status update regarding deposition scheduling no later than 14 days from today. So, I'll at least see it.

Let's take it from there. I think that's probably the most Mr. Whelan can promise right now.

Go ahead, Mr. Kappes. That gets you at least --

MR. KAPPES: Yes, Your Honor. I think it's helpful for all counsel just to have sort of the Court's oversight, so I appreciate that.

THE COURT: Okay.

MR. KAPPES: The second issue I wanted to address, just to keep the Court apprised, I know your courtroom deputy spent, what I would say, a significant amount of time on this issue, is the parties were ordered to participate in a mediation. I know we've had several mediations booked with other magistrate judges within the district and, unfortunately, none of those dates have been able to come to fruition.

I just want to make sure that we are not running afoul of this Court's order of participating in mediation but we have not been able to mediate, largely because we don't

have documents that would allow us to evaluate this case.

THE COURT:  Okay.

MR. KAPPES:  So, I just want to put that on the Court's radar and --

THE COURT:  Okay.  No, that's good.  And I appreciate hearing that -- and I hear you taking orders seriously.  I had ordered it, and it hasn't happened.

Let me ask this.  Are Plaintiffs in a position that they believe those negotiations will be fruitful and, if so, when, now that we have some timeline, do they think that that would make sense?

MR. KAPPES:  I think I see no downside to getting some insight from a third party, not only for counsel, but for the parties to this case.  So, I see no downside.

Now, once we receive the documents and some of the financial statements, we'll have an idea, a better idea of damages that we would seek at trial and that might -- I can't imagine that won't be useful to all the parties --

THE COURT:  Mr. Whelan, where are you on -- are Defendants going to be in a position to meaningfully participate in a settlement conference, and if so, when in this sequence, do you think it makes sense?

MR. WHELAN:  I would say that they are interested, Your Honor.  I think, as Plaintiff's counsel said, we're not ready yet.  But after we complete the factual discovery, I

think we'd be ready.

THE COURT:  So, you think that would be something beginning or spring of next year?

MR. WHELAN:  Late winter, I think we could do that.

THE COURT:  Okay.  But I'm not going to argue with you if you want it sooner.

Okay.  How about the parties shall meet and confer regarding dates for a potential settlement conference and shall email my courtroom deputy no later than 14 days from today regarding dates that they are available for the conference.  So, the same date that you do a status report regarding depositions, I'd like a, it can just be an email, but an email to my courtroom deputy regarding dates for a settlement conference.

It's been my hope that you folks give dates and that we start lining up a magistrate judge for you if we can. I'll say, like everybody, at the end of the year, people start getting pretty booked, but we can try.

I have a caveat that I can't tell, and certainly given the lack of production of documents, I'm not really sure where the actual Defendants', meaning the clients, heads are at in this case.  And I'm a little bit worried that they're going to drag their feet in doing that.  I'm kind of thinking aloud with you all.

If it's just that Mr. Whelan has a hard time getting

people to focus on it, I definitely want to push to make this happen. I think it should go to a settlement conference. It's free, literally free, meaning there's no money, but it also is, I think, valuable. The magistrate judges are good at these. They do a lot. It's not going to be me, so there's not going to be any risk of prejudicing the parties, but I think they're quite good and will give your clients and everybody some real insight.

That said, if -- and I'm not sure whether we'll know this, but if whoever's making the decisions over in Defense really is not prepared to settle, and I don't know. They weren't prepared to give documents. If they're really not prepared to participate in any way, I'm not sure I want to waste the time of one of my colleagues to do it.

So I don't think I'm changing my order. The order is to give dates, but I want you all to hear me -- and in particular you, Mr. Whelan -- if you are unable to get dates from your client, then if there's some way that you can correspond and put the situation in that email, and I'm not asking for attorney-client communications, but if you want to say -- it's one thing if you say, we don't yet have dates, can we have another seven days, and I might even start really making orders on the record.

I can do that to make sure that just everybody's focused. But if you were to email and say something truly

along the lines that, you know, although I'm sure very respectfully, my client has thought about this but is not in any position to participate, I'll think about that. I don't know if I'm going to force you to go if you're not taking it seriously. I say that only as real commentary that -- I don't know -- you're counsel and doing your best. I don't know where everybody's head is who's making these decisions.

So that's my order. Confer, give us dates. But you hear if for some reason you're unable to do so, that's kind of what I'll be listening for in making the next step.

Okay.

MR. WHELAN: I understand, Your Honor.

THE COURT: Okay. So I'll check with, Mr. Klair, did you want to say anything?

MR. KLAIR: No, Your Honor. Thank you.

THE COURT: Okay. How about you, Mr. Whelan? Anything more that we can cover?

MR. WHELAN: I think we've covered everything, Your Honor. Thank you.

THE COURT: Okay, good. And Ms. Zuber?

MS. ZUBER: No, nothing on our end. Thank you, Your Honor.

THE COURT: Okay. Then I really appreciate all your time. And I apologize for some delay in getting to this important Motion, but I'm hoping that now we'll have a way

forward.  If there are issues, again, in discovery, you know where to find me.

For what it's worth, and I'm hoping I don't get this call, but during a deposition, if something comes up, I am the sort of judge that will take a call.  And so I'd much rather have a call at a deposition if something is happening with a witness than having a Motion To Compel later.  So I'm here most days, and I will make myself available if an issue arises.  I will attend to these few remaining issues and the schedule.

This is going to start to move to the district judge.  Now, you've already been through a briefing with Judge Thurston, and I think she's given at least some indications through her order on the Motion To Dismiss.  But I think it's going to start going before her.  For what it's worth, and you saw it with the Motion To Dismiss, she's maybe a little faster now.  She has a backlog, but she's also very active.  So she will be moving on it, but there will be a delay.

You always have the option to consent to magistrate-judge jurisdiction, in which case I would take over.  Clearly, I am also busy.  I'm not as busy as Judge Thurston.  There's no adverse consequences, and I assume it will go before Judge Thurston.  But I just want to give everyone these options if it goes forward to a dispositive

motion and/or trial, just so that you know your options.

Okay. And then thank you much, everyone, for their time. And Court is adjourned. Have a great day.

COUNSEL: Thank you, Your Honor.

(Whereupon, at 2:21 p.m., the hearing was adjourned.)

* * * * *

C E R T I F I C A T I O N

I, DIPTI PATEL, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

_____

DIPTI PATEL, AAERT CET-997

Expires: December 6, 2026

LIBERTY TRANSCRIPTS                    DATE: December 13, 2024