UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUNDATION AUTO HOLDINGS, LLC., | CASE NO.   1:21-CV-00970-JLT-EPG |
| PLAINTIFF, | |
| V. | ORDER GRANTING PLAINTIFF FOUNDATION AUTO HOLDINGS, LLC'S MOTION FOR FURTHER SANCTIONS |
| WEBER MOTORS, FRESNO, INC., *et al.*, | |
| DEFENDANTS. | (ECF No. 107) |
| TEMPLETON MARSH, LTD., | |
| INTERVENOR PLAINTIFF, | |
| V. | |
| WEBER MOTORS, FRESNO, INC., *et al.*, | |
| DEFENDANTS. | |

In this civil action, filed on June 18, 2021, Plaintiff Foundation Auto Holdings, LLC. ("Plaintiff"), and Intervenor Plaintiff Templeton Marsh, LTD., assert claims for breach of contract and anticipatory breach of contract against Defendants Weber Motors, Fresno, Inc., CJ's Road to Lemans Corp., and Christopher John Wilson, related to Defendants' failure to proceed with an Asset Purchase Agreement for car dealerships in Fresno, California.  (ECF Nos. 27, 42).

1

Previously, on October 29, 2024, the Court granted Plaintiff's motion to compel production of documents, and ordered Defendants to produce: (1) the requested documents, and (2) a privilege log, if any, reflecting privileged documents post-dating the commencement of this action on June 18, 2021, no later than 30 days from the date of that order, i.e., November 28, 2024.  (ECF No. 101).  On December 5, 2024, Plaintiff filed "Plaintiff Foundation Auto Holdings, LLC's Motion for Leave to File; Request for Further Sanctions," claiming that Defendants failed to comply with the Court's order and requesting sanctions.  (ECF No. 107).

For the reasons stated below, the Court will grant the motion.

## I.  BACKGROUND

### A.  Plaintiff's Complaint

This case has been pending since June 18, 2021.  (ECF No. 1).  Plaintiff filed its complaint on that date, naming as Defendants Weber Motors, Fresno, Inc., CJ's Road to Lemans Corp., and Christopher John Wilson.  (*Id.* at 2).  After Plaintiff's original complaint was dismissed without prejudice, Plaintiff was granted leave to file an amended complaint.  (ECF No. 37 at 9-10).

Plaintiff's amended complaint contains two claims: one claim for breach of contract and one claim for anticipatory breach of contract.  (ECF No. 42 at 18-20).  According to the amended complaint, Plaintiff Foundation Auto Holdings and Defendants entered into an Asset Purchase Agreement whereby Foundation would become the majority owner of car dealerships owned by Defendants Weber Motors, Fresno, Inc., and CJ's Roads to Lemans Corp.  (*Id.* at 3, 4).  Plaintiff alleges that Defendants agreed to the Asset Purchase Agreement.  (*Id.* at 4).  However, on June 11, 2021, Defendants notified Plaintiff that Defendant would not proceed with the deal.  (*Id.* at 13).  In its amended complaint, Plaintiff seeks (1) expectation and reliance damages; (2) special damages; (3) attorney fees; (4) specific performance; and (5) any other relief the Court may deem proper.  (*Id.* at 20).

### B.  Discovery Schedule

The scheduling of the case and opening of discovery was initially delayed due to Defendants' motion to dismiss.  (ECF No. 8).  After this initial delay, the parties submitted a Stipulated Discovery Plan Pursuant to FRCP 26 on March 1, 2022.  (ECF No. 28).  The Court held a scheduling conference shortly thereafter.  (ECF No. 30).  The Court issued a scheduling order on April 1, 2022, setting the non-expert discovery deadline for March 10, 2023.  (ECF No. 35).

After Defendants filed their second motion to dismiss, this Court ordered that discovery remain open. (ECF No. 47). On October 24, 2023, the then-assigned district judge denied Defendants' second motion to dismiss. (ECF No. 55). Plaintiff filed its First Amended Complaint on November 1, 2022. (ECF No. 42).

About a month later, this Court extended the non-expert discovery deadline to July 9, 2024. (ECF No. 62).

### C. Discovery Dispute Resulting In Court's Order Compelling Discovery

#### 1. Informal Discovery Dispute Conference

Plaintiff's first notified the Court of the dispute regarding the discovery at issue in the present motion in April 2024, when Plaintiff requested an informal discovery conference. (ECF No. 73). The Court held an informal conference on April 26, 2024. (ECF No. 78). Plaintiff generally argued that Defendants did not timely serve objections and responses to Plaintiff's Requests for Production of Documents (RFPs), Defendants belatedly and improperly objected to certain requests, and Defendants failed to produce any responsive documents in response to Plaintiff's RFPs. (ECF. No. 76). Defendants took the position that the RFPs were objectionable. (ECF No. 75).

Following the informal discovery conference, the Court directed the parties to meet and confer regarding the discovery issues raised at the conference, and gave Plaintiff permission to file a motion to compel by May 17, 2024, in advance of the non-expert discovery cut-off of July 9, 2024. (ECF No. 79). The Court also ordered Defendants to "provide Plaintiff a date certain for the production of documents and privilege log," and ordered the parties to "meet and confer regarding any necessary changes to the Court's scheduling order, and by no later than May 10, 2024, file a joint stipulation to modify the scheduling order or a statement regarding any disagreement." (ECF No. 79)

#### 2. Defendants Stipulate to Waive all Objections to RFPs

On May 10, 2024, the parties filed a Joint Stipulation Regarding Discovery Schedule. (ECF No. 81). That joint stipulation stated in part:

> The Parties met and conferred on May 3, 2024, and May 10, 2024, and agreed upon the following:
> 1. Defendants withdraw all objections to Foundation's Requests for Production, and will produce documents by July 1, 2024. As such, no Motion to Compel should be necessary at this time.

(ECF No. 81, at 2).  The parties also proposed a brief extension of the non-expert discovery deadline until September 15, 2024.  (*Id.*).

Notably, the parties' stipulation did not propose a date for Defendants to provide a privilege log, or otherwise indicate any intention by Defendants' to withhold documents based on privilege.

The Court subsequently granted the proposed order, extending the non-expert discovery deadline to September 15, 2024.  (ECF No. 84).

### 3.  Plaintiff's Motion to Compel and Request for Sanctions

On July 12, 2024, Plaintiff filed a motion to compel and request for sanctions, claiming that Defendants had still failed to produce any documents to the RFPs, notwithstanding the parties' joint stipulation to produce all documents by July 1, 2024.  (ECF No. 91) ("Defendants did not produce documents responsive to Foundation's February 2, 2024, Requests for Production of Documents . . . Foundation made several attempts to resolve this without Court intervention . . . Though Defendants continually promised to timely produce documents, they did not timely object to any request and did not produce documents.").  Specifically, Plaintiff moved to compel Defendants to produce all documents responsive to RFP Nos. 18, 19, 21, 31, 32, 33, 35, 37, 38, 42, and 43, which concern financial documents and documents concerning the reason for Defendants' decision to terminate the APA.  (ECF No. 91 at 7-9).  Plaintiff described the requests as follows:

> Foundation issued RFPs 18, 19, and 21 to seek Defendants' audited financial statements, profit and loss statements, and evidence of liabilities. These documents are relevant to determining damages as Defendants' financial information is the best available evidence of what Foundation would have earned had Defendants not repudiated the APA.  (ECF No. 91, at p. 7).

> RFPs 31-33 seek the identity of persons or entities with an equity interest in Defendants Weber or Lemans. Section 3.2(f) of the APA requires Defendants to deliver to Foundation all consents and approvals necessary for Defendants to enter into agreements and consummate the transaction. This discovery will show the identities of other parties whose consents were necessary to ensure compliance with the APA, whether Defendants agreed to sell equity to persons other than Foundation, and potential witnesses with knowledge of case facts, allegations, and defenses. (ECF No. 91, at p. 8).

> RFP 35 seeks communications regarding Defendants' decision to "terminate and/or not perform under the agreement." Given this case is premised on Defendants' refusal to perform, Defendants' objection to producing responsive documents in response to an RFP seeking documents related to that decision lacks merit. Foundation is entitled to Defendants' communications regarding its decision to terminate the APA and must disclose individuals with whom they shared decision-making.  (ECF No. 91, at p. 8)

4

RFPs 37 and 38 seek records related to Defendants' planned relocation of the dealerships Foundation agreed to purchase. After Defendants breached the APA, Foundation learned that Mr. Wilson had purchased land in Fresno for the potential relocation of the dealerships. Here, one of Defendants' defenses is based on the contention Foundation did not obtain landlord approval prior to the planned sale date and therefore Defendants could terminate the APA. ECF 43, Motion to Dismiss First Amended Complaint ("MTD"), at 6-7. Accordingly, these documents are plainly relevant if Defendants ultimately planned to relocate the dealerships, as such plans may have mooted any requirement under the APA to reach agreement with Defendants' landlord or may be a reason Mr. Wilson prematurely terminated the APA. (ECF No. 91, at p. 8-9)

RFPs 42 and 43 seek documents related to Audi's attempt to terminate Defendants' dealership agreement. During this litigation, Foundation learned that Audi sought to terminate its dealership agreement with Defendants given Mr. Wilson's mismanagement. Foundation seeks these records to show that manufacturers, contrary to Defendants' claims, were in favor of Defendants' sale to Foundation. Defendants cannot hide evidence that manufacturers sought to terminate his ownership, and at the same time argue to the Court that Foundation was unable to obtain manufacturer approval as required by the Agreement. . . . Further, Defendants were also obligated under the APA to obtain approvals from manufacturers, and thus their communications with Audi are relevant to their satisfaction of their obligation. (ECF No. 91, at p. 9)

Plaintiff also sought sanctions under Federal Rule of Civil Procedure 37. (ECF No. 91, at p. 10).

On July 26, 2024, Defendants filed their opposition to Plaintiff's motion to compel. (ECF No. 93). Defendants did not contest that they had failed to produce any documents or privilege log in response to the RFPs. Instead, Defendants argued that they "properly objected to Plaintiff's Requests for Production that are the subject of this motion." (ECF No. 93 at 3). Regarding RFP 25, concerning communications regarding Defendants' decision to "terminate and/or not perform under the agreement," Defendants asserted that all such communications were "protected from disclosure by the attorney-client privilege and work product doctrine." (ECF No. 93, at p. 4). Notably, Defendants' opposition did not acknowledge in any way their previous stipulation to waive all objections and produce all documents by July 1, 2024.

On August 1, 2024, Plaintiff filed a reply in support of its motion to compel, arguing that Defendants had waived objections to the RFPs and expressly waiving all objections in the May 10 stipulation. (ECF No. 94). Any privilege objections had also been waived because "Defendants have not produced a privilege log or *any* non-privileged documents." (ECF No. 94, at p. 4).

\\\

### 4. Hearing and Order on Plaintiff's Motion to Compel

On October 24, 2024, the Court held a hearing on the motion to compel. (ECF No. 100).

The Court began by addressing Defendants' previous stipulation to withdraw all objections and citing Ninth Circuit case law enforcing such stipulations. (ECF No. 114, p. 4, *citing CDN Inc. v. Kapes* 197 F.3d 1256, 1258 (9th Cir. 1999) ("Because stipulations serve both judicial economy and the convenience of the parties, courts will enforce them absent indications of involuntary or uninformed consent."). In response, defense counsel stated "Your Honor, the only response I have to that Stipulation is my client certainly did not and I did not intend to stipulate to withdrawing all objections. The attorney-client objections that were discussed among counsel, I did not intend to waive. I realize based on the terms of the Stipulation that I failed to make that clear, and so that's the only comment I have, Your Honor." (ECF No. 114, at p. 4-5). The Court then asked if Defendants had produced a privilege log, and defense counsel said they had not. (ECF No. 114, at p. 5).

The Court then heard argument on the issue of whether the stipulation waived the attorney-client privilege. Plaintiff's counsel pointed to the plain language of the stipulation, which purported to "withdraw all objections," represented that the parties had not separately discussed withholding documents based on the attorney-client privilege, and argued that the documents at issue concerning Defendants' communications at the time regarding their reasons for terminating the APA were likely not privileged in any event. (ECF No. 114, at p. 6). After substantial discussion regarding this issue, the Court gave the following ruling:

> Okay. I'm going to grant the Motion To Compel and find that per the Joint Stipulation, Document 81, Page 2, Defendants have withdrawn all objections to Foundation's Requests For Production. And I do find that that includes work product and attorney-client privilege.
>
> However, to the extent, and I don't know if there are any documents that would fall within the scope of this after the filing of the Complaint, I find that privilege has not been waived as to that time. And my basis is because that's a clear statement of the Stipulation. It is all objections.
>
> Also, Defendants did not provide a privilege log. And in not doing so, that also has been a waiver of any privilege to the extent that it has not been produced. It also appears that even as of today, they are not prepared to do a privilege log or to identify specific privileged communication.

I also find that based on the description of the documents that Defendants wish to now withhold, those documents are not a side or an oversight or something that they would have not anticipated when they spoke about objections. They are really central to the request. The central requests go to what was the reason why Defendants decided to withdraw from the deal.

So hearing now that Defendants wish to carve out communications and claim privilege over communications about why they were withdrawn because there were lawyers who were involved in that decision, I think, was clearly anticipated by the objections and are addressed by the Stipulation. That's a big carveout. That's not a side issue or something that would not be anticipated or something that would not be expected. That's a big part of those communications.

And also, frankly, I think if there's any issue here, it goes to Plaintiff. I am aware of the history, including that there are multiple informal conferences, that there is a Stipulation back in May that says that you will produce documents. And this was not something that Defendants acted properly in good faith and are entitled to the benefit of the doubt that they intended to act properly and produce documents and maintain this privilege.

Instead, the history is that Defendants did not produce documents after they said they did, after they told the Court they were going to. We are now several months after Defendants said that they were going to produce documents. I don't think that they are entitled to have the benefit of the doubt that they get to withhold those.

Additionally, I find that it would be prejudicial because my intuition is that this would pose very difficult privilege calls. And if this were done properly, timely, with a privilege log, I think that we could work through those issues and sort through which of these communications were more for business purposes.

For example, I anticipate that there are probably counsel that are on email communications, and there would be difficult calls about which ones are for attorney-client privilege and not. But we don't have the time to litigate that anymore because there has been no document production for several months when it was supposed to be and when you told the Court it was going to be.

So while I am sympathetic and I am very respectful of a properly identified privilege, I find that Defendants' request to carve out parts of central communications regarding this case with what I think are going to be difficult privilege calls, I think the time for that has passed and that this waiver included those documents, as well.

So I am granting the Motion To Compel in full except to the extent that I find that Defendants have not waived any attorney-client or work-product privilege regarding any documents from the filing of this litigation on.

(*Id.* at 12-15).

\\\

7

On October 29, 2024, the Court issued a written order in accordance with its oral order. (ECF No. 101).  The Court repeated that it found "Defendant[s] had waived all objections to that discovery in [their] stipulation stating 'Defendants withdraw all objections to Foundation's Requests for Production, and will produce documents by July 1, 2024.'"  (ECF No. 101 at 4 (citations omitted)).  The Court ordered that "[b]y no later than thirty (30) days from [October 29, 2024], Defendants must produce: (1) the requested documents, and (2) a privilege log, if any, reflecting privileged documents post-dating the commencement of this action on June 18, 2021." (*Id.* at 4).  The Court also ordered that "[b]y no later than November 7, 2024, Plaintiff shall file a statement identifying reasonable expenses, including attorney fees, that they incurred in filing the motion to compel."  (*Id.*). [1]

### 5.  Lack of Objection or Request for Extension of Deadline

Defendants did not file any request for reconsideration of the Court's order.

Defendants also did not file any objections to the Court's order to the then-assigned District Judge.  Fed. R. Civ. P. 72(a) (describing procedures for filing objections with the district judge to a magistrate judge's non-dispositive orders, and stating "[a] party may not assign as error a defect in the order not timely objected to").

Defendants also did not file any request for extension of time to comply with the Court's order.

### D.  Motion for Sanctions

### 1.  Plaintiff's Motion and Supporting Brief

On December 5, 2024, Plaintiff filed "Plaintiff Foundation Auto Holdings, LLC's Motion for Leave to File; Request for Further Sanctions," which is now before the Court.  (ECF No. 107).

In its motion, Plaintiff claims that Defendants failed to produce any documents or privilege log, as ordered by the Court's October 29 order.  (*Id.* at 8).  Plaintiff argues that negative inferences and evidentiary sanctions against Defendant are warranted under Federal Rule of Civil Procedure 37(b)(2)(A)(i) and 37(b)(2)(A)(ii).  (*Id.*).  Plaintiff also argues that the requirements for issuing these sanctions are met: specifically, that the sanctions would be just and related to the particular claim.  (*Id.*

---

[1] On November 4, 2024, Plaintiff filed a Declaration in support of its request for Attorneys' fees for bringing the motion to compel.  (ECF No. 102).  The Court granted reasonable attorneys' fees in the amount of $12,463.13 for Plaintiff's efforts in bringing the motion to compel.  (ECF No. 131).  Plaintiff's original request for attorneys' fees was $29,129.50.  For reasons explained in its order, the Court lowered total attorneys' fees to $12,463.13.

at 9).

### 2. Defendants' Response

On December 19, 2024, Defendants filed its opposition to Plaintiff's motion for sanctions.  (ECF No. 118).[2]  Defendants concede that they failed to comply with the Court's order, but state that they "believe that all documents in their possession, custody, and control will be produced."  (ECF No. 118, p. 2-3).  Defendants note that lead counsel left, and new counsel was added to the case.  (*Id.* at 3).  Defendants argue that they "have been working to locate and coordinate all responsive documents within [their] possession, custody, and control."  (*Id.* at 7).  Defendants argue that "[t]erminating sanctions and negative inferences can deprive parties of the right to have their case heard on the merits, making it essential to reserve such measures for extreme situations[.]"  (*Id.*).  Defendants also state that "there is no evidence that [they] have engaged in egregious conduct or been grossly negligent."  (*Id.* at 7-8).

### 3. Plaintiff's Reply

In its reply, Plaintiff points out that "[t]here is no dispute that Defendants had a duty to produce documents without objection. . ."  (ECF No. 120 at 2).  Plaintiff also argues that (1) "Defendants' defiance of multiple Court Orders is exactly the kind of conduct requiring sanctions, especially in cases like this where the requested documents are core to the issues of the case;" and (2) "[n]or is it even true that Defendants continuously changed counsel—Jonathan Michaels was counsel from the inception of the case."  (*Id.*).  Plaintiff also argues that "Defendants' second claim, that they are 'working hard' to produce the documents, is both too late and patently false."  (*Id.* at 5).

Although Plaintiff states that Defendants have produced some documents in response to the Court's order after Plaintiff filed its motion for sanctions, Plaintiff argues that Defendants' production is still deficient, stating:

> To the extent Defendants have produced documents subsequent to the filing of Foundations Second Sanctions Motion, those productions are deficient and show a continued effort to disobey the Court. On December 13, 2024, Defendants produced what it purported are documents in response to the at-issue discovery here. Holtzman Decl. at ¶ 3. The production totaled 24 documents, consisting of 13 heavily redacted emails and their

---

[2] It appears that Defendants inadvertently filed their opposition to Plaintiff's motion for sanctions twice.  (*See* ECF Nos. 118, 119).

attachments. *Id.* Accompanying this production was a privilege log detailing various withheld documents dating prior to June 17, 2021. *Id.* at ¶ 2, Exh. 1. The Court specifically Ordered that all documents prior to this date could not be withheld on the basis of privilege. ECF 101. However, it appears Defendants withheld **94** such documents. Holtzman Decl. at ¶ 4. The privilege log further asserts attorney-client and work product protections on the 24 documents actually produced, all also dating prior to the Court-Ordered cutoff for such objections. *Id.* at ¶ 5. Incredibly, Defendants' privilege log runs from the start of the negotiation of the Asset Purchase Agreement up until the initiation of the case. *Id.* at ¶ 5. This means Defendants assert privilege over ***all*** and ***only*** those documents that would defy this Court's Order and have still not produced a privilege log as ordered for post-initiation documents.

(ECF No. 120, at p.6).  Plaintiff's reply attached Defendants' privilege log listing 94 documents dated from January 28, 2021 through June 17, 2021, all listing the basis as the attorney-client privilege, with relatively few also listing the work-product privilege.  (ECF No. 120-1, at p. 6-8).  A supplemental privilege log identified another 13 documents dated March 1, 2021 through June 11, 2021 as withheld. (ECF No. 120-1, at p. 9-10).  Descriptions of withheld documents included "correspondence regarding conditional approvals," "correspondence re APA and demand for compliance."  Notably, all of the documents withheld as privileged were dated on or before the date when Defendants notified Plaintiff that they were terminating the APA.

### 4.  The January 24, 2025 Hearing regarding Plaintiff's Motion for Sanctions

On January 24, 2025, the Court held its first hearing on the motion for sanctions.  (ECF No. 127, 133).  During that hearing, Plaintiff stated that "[b]ased on [its counsels'] preliminary review of the documents that were produced [during the previous week], Defendants produced the financial documents requested. No other documents have been produced in accordance with [the Court's] order."  (ECF No. 133 at 5).  Plaintiff also stated that "Defendants went so far as to produce a privilege log that included all and only those documents for which [the Court] had already said privilege was waived."  (*Id.*).  Plaintiff stated that the "privilege log that ran from the date of negotiation of the APA up until June 18th and that did not include any documents thereafter."  (*Id.* at 8-9).

The Court questioned Defendants' then-counsel, Attorney Schenck, regarding Defendants' late production of documents, and asked whether it included any documents other than financial documents.  Defense counsel could not identify any document produced by Defendants other than financial

documents.  (ECF No. 133, at p. 7-9) (COURT: "So have Defendants produced any documents responsive to any other request other than requests for financial documents? MR. SCHENCK: My understanding is that we have, Your Honor. But --THE COURT: Do you have an example of any of them? . . . Do you want to take a look and tell me any document that you produced that was responsive to any of the requests?  MR. SCHENCK: Yeah. I wouldn't be able to at this time, Your Honor." . . . THE COURT: "Can you name a single document that was produced on any category other than requests for financial documents? MR. SCHENCK: Not at this time.").

During the hearing, the Court also reviewed the privilege log that Defendants provided Plaintiff. (*Id.* at 11 (citing ECF No. 120-1)).  When asked about the privilege log, Defendants' counsel represented that he was "unaware" that documents were withheld as privileged.  (*Id.* at 11, 12). Thereafter, Defendants' counsel promised to "go back through and identify everything that's in that, the privilege log that [Plaintiff] identified and put those documents together and get them to [opposing] Counsel as soon as possible."  (ECF No. 133 at 19).

Plaintiff responded that, at this point, Defendants' promise to produce documents was too late. (*Id.*).  Plaintiff specified that "[a] lot of the categories of documents such as those related to the termination and reasons for termination, such as those related to the relocation to Clovis of the dealerships, these are directly to elements necessary to prove [the] foundation of the case."  (*Id.* at 20). Plaintiff stated that it did not believe it's possible for the case to move forward without those documents or evidentiary sanctions or at least a need for those documents."  (*Id.*).

The Court then asked whether Plaintiff wanted "specific negative inferences versus finding for the Plaintiff on breach but leaving open to damages at this point?"  (*Id.* at 20).  Plaintiff clarified that it "would be fine with a finding for the Plaintiff foundation on breach and leaving open damages."  (*Id.*).

### E.  Supplemental Filings Regarding Communications Between Defendants and Previous Defense Counsel

Following completed briefing and the hearing on the motion for sanctions, newly retained defense counsel made a number of filings concerning Defendants' communications about discovery issues with previous defense counsel, and Defendants' continued production of documents.

\\\

1.    **Defendants' First Notice Claiming Defendants Were Never Informed of Court's**
       **Order and Discovery Requests**

Defendants' newly retained counsel from Jaborg and Wilk, P.C. substituted into this case on

February 14, 2025.  (ECF No. 140 at 2).  On February 26, 2025, that counsel filed a notice claiming that

previous defense counsel had never told Defendants that their document production was incomplete or

that there was a court order requiring further production, stating in part:

> Defendants were never provided with any of the specific Requests for Production.
> Defendants were never asked additional questions about any of the specific requests.
> Defendants were unaware of any of the pending sanctions motions and were unaware that
> a monetary award had been entered against the Defendants. . . . . Defendants were not
> aware of any claims that the prior production was incomplete, non-responsive, or otherwise
> deficient.

> Upon review of the file, and immediately following the unsuccessful Settlement
> Conference on February 25, 2025, Counsel contacted Plaintiffs' counsel to explain the
> foregoing and to commit to a rolling production of documents as fast as they can be
> assembled and reviewed for the limited privilege remaining following the Court's recent
> rulings related to discovery issues . . . .

(*Id.* at 2-3).

Defendants' filing attached a Declaration from Defendant Christopher John Wilson, the majority

owner and President of a BMW dealership held by Weber Motors, Fresno, Inc. dba BMW Fresno and an

Audi and Porche dealership held by CJ's Road to Lemans Corp. dba Audi Fresno and Porche Fresno.

(ECF No. 148-1).  Wilson's declaration, signed under penalty of perjury, stated in part:

> At no time did MLG ever provide to me or to any other representative of Defendants copies
> of any specific Requests for Production of Documents served by Plaintiff or Intervenor;
> nor did any MLG attorney ever ask me or any other representative of Defendants any
> questions about any specific document request. Further, neither I nor any other
> representative of were ever asked by MLG to provide any documents in addition to those
> that I had already provided to them. . . .

> Until I terminated MLG and at that time learned of the pending discovery issues, neither I
> nor any other representative of Defendants was aware of any motions to compel the
> production of documents or motions for sanctions in this matter.

> I was not aware that the Plaintiff and Intervenor had requested specific documents, and that
> they were claiming the documents had not been provided.

> I was not aware that Plaintiff and Intervenor had filed Motions to Compel and were seeking
> sanctions against Defendants.

Neither I nor any other representative of Defendants was made aware that a monetary sanctions award had been entered against Defendants until I was informed of the Court's February 6, 2025 sanctions Order by Defendants' current counsel, Jaburg & Wilk, P.C., on or around February 27, 2025. . . .

In fact, until recently being informed by Defendants' current defense counsel, on or about February 25, 2025, I was not aware that Plaintiff and/or Intervenor ever claimed any prior production of documents was incomplete, non-responsive, or otherwise deficient.

MLG never provided to me, nor was I ever aware of the existence of the Court Order Granting Plaintiff's Motion to Compel and Request for Sanctions, filed on 10/29/24 (Document 101) or the Court Order Awarding Attorneys' Fees filed on 2/6/25 (Document 131). I did not learn of the existence of these two Orders until I was just recently provided with copies of them by my new counsel.

(ECF No. 148-1 at 2-4).

### 5. Defendants' March 4, 2025 Notice

On March 4, 2025, Defendants provided the Court with an updated notice. (ECF No. 148). Defendants indicated that their new counsel was in the process of reviewing previous discovery productions and verifying that all documents Defendants turned over to prior counsel were produced. (*Id* .at 2-4). Defendants reiterated their claim that Defendants were never asked about any specific requests for documents and were unaware of the ongoing dispute with Plaintiff regarding discovery. (ECF No. 148, at p. 3) ("None of these attorneys communicated to Mr. Wilson the pending motions and the serious nature of the failure to comply with discovery requests; nor was he even aware of the various discovery disputes in the case. Defendants were not aware of any claims that the prior production was incomplete, non-responsive, or otherwise deficient.").

The filing included another declaration of Defendant Chris Wilson generally stating that he was not aware that prior document production was incomplete. (ECF No. 148-1, at p. 7-10) ("In fact, until recently being informed by Defendants' current defense counsel, on or about February 25, 2025, I was not aware that Plaintiff and/or Intervenor ever claimed any prior production of documents was incomplete, non-responsive, or otherwise deficient. . . . MLG never provided to me, nor was I ever aware of the existence of the Court Order Granting Plaintiff's Motion to Compel and Request for Sanctions, filed on 10/29/24 . . . .").

### 6. The March 4, 2025, Status Conference

In response to Defendants' Declaration (ECF No. 140), the Court held a status conference on March 4, 2025. (ECF No. 149). During the hearing, the Court addressed the new filings and the procedure for addressing those issues. Defendants requested the opportunity to file a supplemental opposition. The Court also granted the parties leave to propound discovery on the attorney-client communications addressed in Defendants' recent notices and declarations reflected in ECF No. 140, 146, 148. (*Id.* at 25-26; *see also* ECF No. 150).

### 7. Defendants' Supplemental Response

Defendants filed a supplemental opposition to Plaintiff's motion for sanctions on March 19, 2025. (ECF No. 164). Defendants argue that "[s]uch drastic sanctions are unwarranted because Defendants have now produced to Plaintiff all existing responsive documents within their possession, custody, or control." (*Id.* at 2). Defendants state that these documents include "a number of documents already included within the over 6,000 pages of documents previously produced to Plaintiff by Defendants' prior counsel, as well as an additional 1,034 documents, Bates Nos. WIL006236-WIL07270, produced by Defendants on March 18, 2025, after Defendants retained their current counsel." (*Id.*). Defendants state that "any delay in the production of responsive documents was not a result of [their] dilatory conduct. Indeed, Defendants were not even aware there was a dispute over the production of documents or that Plaintiff was seeking sanctions of any type until after they retained current counsel." (*Id.*). Defendants request that "[t]o the extent the Court believes a further sanction is appropriate, . . . the Court impose a further monetary sanction rather than the numerous negative inferences and evidentiary sanctions sought by Plaintiff." (*Id.* at 3).

### 8. Plaintiff's Supplemental Reply and Communications Between Prior Defense Counsel and Defendants

On April 2, 2025, Plaintiff filed its supplemental reply in support of its motion for sanctions. (ECF No. 166). Plaintiff argues that (1) "Defendant CJ Wilson ("Mr. Wilson") misrepresented his knowledge of his and Defendants Weber Motors, Fresno, Inc.'s and CJ's Road to Lemans Corp.'s ongoing discovery failures for the purpose of inducing the Court to grant Defendants yet another chance to comply;" (2) "Defendants produced only 83 additional documents, leaving many categories

unproduced entirely;" (3) "MLG Notified Mr. Wilson of Foundation's Requests;" (4) "MLG Notified Defendants about Foundation's Motion to Compel;" (5) "Defendants still have not produced all documents."  (*Id.* at 2, 3, 5, 6).

Plaintiff attached email correspondence between previous defense counsel and Defendant Wilson and Defendants' representatives explaining the need for Defendants to provide additional documents for the case.  For example, on December 6, 2024 (more than two months before Mr. Wilson said he first learned that Plaintiff was claiming Defendants' document production was incomplete), previous defense counsel wrote to one of Defendants' corporate attorneys, Reggie Borkum, and Defendant Wilson himself, stating:

> Reggie and CJ,
>
> Good evening.  I left a VM for both of you earlier today.  We will need to respond to additional discovery requests propounded by Foundation and provide some available dates for CJ's deposition.
>
> Do you have the following documents in your possession that you can provide:
> 1. Audited financial statements from January 1, 2020 to present.
> 2. Profit and loss statements from January 1, 2020 to present.
> 3. Aside from I.A.M. National Pension Fund, any documents relating to liability to any other multi-employer union pension fund.
> 4. Documents to identify all shareholders/owners (and the number of shares) with equity interest in CJ's Road to Lemans Corp. dba Audi Fresno and Porsche Fresno.
> 5. Documents to show equity ownership of CJ's Road to Lemans Corp. dba Audi Fresno and Porsche Fresno by any Trust.
> 6. Documents regarding relocation of the dealership to Clovis.
> 7. Settlement agreement with Audi in CJ's Road to Lemans Corp. v. VWGoA, Inc., and documents submitted to CA New Motor Vehicle Board in connection with the matter.
>
> CJ—Please provide 2-3 dates in January that are available at this time.
>
> Please send documents and dates to our office early next week.

 (ECF NO. 166-1, at p. 13).  Defendant Wilson responded on December 9. 2024:  "Julie, John I am not sure why I am being asked to provide all of these things.  I am comfortable with the following statements and backing them up. . . ."  (ECF No. 166-1, at p. 12).

Plaintiff also attached an email from former defense counsel to Mr. Wilson, among others, from December 11, 2024 stating in part that "a Motion to Compel has been filed by Foundation."  (ECF No. 166-1, at p. 26).  Mr. Borkum, Defendants' corporate counsel, writes elsewhere in the same email chain

"Just trying to determine what is absolutely necessary to turn over and what can be objected to," (ECF No. 166-1, at p. 25), and in another email "I read through the Judge's order and it seems to imply that somehow the Judge in the case is saying the attorney/client privilege for communications/work product prior to the state or litigation was waived—how is that the case." (ECF No. 166-1, at p. 23). Another email shows that on December 27, 2024, former defense counsel wrote to Defendant Wilson and others about the status of the case, including what would be addressed "at the January 24, 2025, hearing on Plaintiff's motion for request for sanctions," and how he planned to discuss with Plaintiff's counsel "the discovery issues in this case and the Court orders that Magistrate Judge Erica P. Grosjean has put in place." (ECF No. 166-1, at p. 35).

Plaintiff's reply also claims that Defendants still have not produced all documents ordered by the Court. For example, Defendants did not produce any documents reflecting Mr. Wilson's ownership of the land or an address of the new Clovis dealerships in response to a request for "All DOCUMENTS regarding YOUR decision to relocate YOUR dealerships to Clovis as identified in the Fresno Bee article dates November 20, 2023," and similar requests. (ECF No. 166, at p. 10). Defendant also failed to produce the settlement agreement with Audi, requested in RFP 32. (ECF No. 166, at p. 11).

Plaintiff concludes by requesting that "the Court issue terminating sanctions and award monetary damages in an amount according to proof for (1) the costs of briefing this Reply, and (2) the costs of discovery related to investigating Mr. Wilson's false claims of ignorance." (*Id.* at 11).

### 9. Defendants' Sur-reply

After being granted leave by the Court, Defendants filed a sur-reply on April 10, 2025. (ECF No. 172). Regarding Plaintiff's claim that Defendants still had not produced all ordered documents, Defendants argue that Plaintiff failed to adequately meet and confer. (ECF No. 172, at p. 3). Regarding the emails showing that, contrary to recent representations to the Court, Defendants did in fact know about Plaintiff's requests for additional production, the Court's order compelling production, and the pending motion for sanctions, Defendants merely state: "Moreover, Plaintiff's assertions about what was communicated to Defendants by their prior counsel and when it was communicated is really just a red herring, aimed at deflecting from the key issue the Court asked the parties to address in this supplemental briefing." (ECF No. 172, at p. 6).

### 10. The Court's April 24 Hearing

On April 24, 2025, the Court held another hearing on the motion for sanctions.  (ECF. No. 183)  The Court began by questioning Defendant Wilson about his email communications with his prior counsel regarding discovery and the motion to compel, which appear to contradict statements made under penalty of perjury that previous counsel never told him about the outstanding discovery requests.  The Court also questioned current defense counsel about their failure to correct similar statements given to the Court that appear to be false.  The Court gave Mr. Wilson and his new counsel until May 5, 2025, to show cause why sanctions should not issue for making false statements to the Court.  (ECF No. 179).

The Court also questioned Defendants regarding their continued withholding of pre-litigation documents on the basis of work-product privilege.  Defense counsel stated that he believed the Court's order only held that the attorney-client privilege had been waived, and thus that Defendants may continue to withhold documents under the work-product privilege.  (ECF NO. 183, at p. 21-22).  Defense counsel then explained that he went through all documents that previous defense counsel had withheld under the attorney-client privilege, redesignated many of them under the work-product privilege in a revised privilege log, and continued to withhold them from production. (ECF No. 183, at p. 27-30).

Plaintiff's counsel argued that Defendants still have not produced several categories of documents, including discussions between Defendants and their landlord and documents related to relocation.  Plaintiff's counsel argued indicated that such documents are relevant to determining whether the reason Defendants provided for terminated the APA was in fact a pretext, and that the Court should find that Defendants breached the APA and only allow the case to proceed on the question of damages, stating:

> So, your Honor is correct that there was an assertion by Defendants that they did not need to go forward with the APA. They sent a letter to Foundation on June -- June 11th, excuse me -- 2021 in which they cited three reasons. Those reasons were the assignment and assumption of the lease required consents of the landlord, the financing necessary to complete the transaction and the obtaining of the manufacturer and State of California regulatory approvals.
>
> And, so, we directed our discovery, for example, our request for documents related to discussions with the landlord, to obtaining the landlord approvals.. . .

The documents that we requested go directly to the pretextual reasons for terminating the APA. The APA could only be terminated, according to its terms, if the conditions could not be met as of the closing date. The termination letter we received from Defendants was 14 days before the closing date. So, it is our contention that he terminated the APA because he was reaching the closing date, that he didn't have any actual basis for doing so, and that he put forth these bases as essentially pretext for his real reasons for terminating the APA, which were to make his own deal and move the dealerships to Clovis.

The discovery that we have requested goes directly to these issues. We're asking for documents related to the decision to terminate the APA, which will tell us whether or not these bases were, in fact, pretextual. We asked for documents related to communications with the landlord, which is one of the very bases cited by Defendants in their June 11th letter. We asked for documents related to Clovis so we could figure out when those plans began and if they did, in fact, as we suspect, begin prior to the closing date deadline.

All of these documents are necessary to have a full and fair trial on the matter. The only category of documents that has been produced following all of this motion practice, your Honor, are the financials, which is why we updated the Court prior to I believe it was a motion for sanctions. We filed an update with the Court letting the Court know that we have now received financial documents.

So, we do think that the sanction your Honor proposed is appropriate. We do think trial is possible on the issue of damages.

(ECF No. 183, at p. 47-49). Defense counsel argued, in contrast, that the case should at least proceed on Defendants' claim that Plaintiff failed to comply with its obligations under the APA, stating:

To say that the -- to say that Mr. Wilson terminated the contract on -- on 6/11, whenever it was, June 11th of '21, which was, what, about I think a couple of weeks or -- two or three weeks prior to the termination date, when it would have terminated automatically anyways, but at that point, he was allowed to terminate it. At least it's his position he's allowed to terminate it because it was clear that the Plaintiff, Foundation, was not going to be able to satisfy his conditions and, therefore, he was allowed to terminate it.

Again, it's up to the Plaintiff. You know, a very clear condition is to say that they had to obtain the approvals of the manufacturers. That's -- you know, it's clear cut. It's stated clearly in the APA. That's one of their obligations. They did not obtain approval of the manufacturers. They were unable to obtain approval of the manufacturers. And, so, I'd also point out the whole -- this whole Clovis thing, there's no mention anywhere in the APA of Clovis. There's no obligation, you know, that relates to Clovis that somehow is connected. You know, they can say that you can look at the APA and see what that obligation is, and I would -- I would invite the Court if the Court wants to, I can reference you to where the APA is located. It's in Document 43-2, filed on 11/22/22, and the APA is an 88-page document.

(ECF No. 183, p. 56-57). The parties then argued their positions as to what the APA stated regarding

Plaintiff's independent obligations and whether Defendants continued to withhold documents relevant to those issues.

### 12. Defense Counsels' Response to the Show Cause Order

On May 6, 2025, Defendants' Counsel responded to the Court's order to show cause. (ECF No. 185). Defense counsel argued that their representations to the Court about what had been told to Defendants was true because, though prior defense counsel had summarized the categories of documents Plaintiff requested, it had not given Defendants a copy of the actual document requests. (ECF No. 185, at p. 3) ("That review revealed that Mr. Wilson had not received a copy of Foundation Auto Holdings, LLC's Second Set of Requests for Production ("RFP"), served on MLG on February 2, 2024. . . . Ms. Chang acknowledged in her deposition that she summarized categories of responsive documents in an email to Mr. Wilson but did not transmit the actual discovery requests or advise him of the Court's rulings. Critically, the client file originally provided to Mr. Moring by MLG did not include the RFP or responses to RFP served by MLG."). Defense counsel also argued that it had not intended to mislead the Court or otherwise act in bad faith, and that "Under both federal and California rules, honest mistakes or inherited oversights, promptly addressed upon discovery, do not amount to ethical violations, much less sanctionable misconduct."

### 13. Defendant Wilson's Response to the Show Cause Order

On May 5, 2025, Defendant Wilson responded to the Court's order to show cause why sanctions should not issue for making false statements to the Court. (ECF No. 186). Mr. Wilson similarly argues that his statements to the Court were true because he did not receive the actual underlying documents, such as the requests for production and orders from the Court, and thus lacked the complete picture of the situation. (ECF No. 186, at p. 3) ("MLG employees testified that they did not recall sending him these pleadings or discovery requests, and he does not remember getting them. In in the December emails, he is not provided with a full picture of the serious nature of the discovery issues."). Although he concedes that the emails show that defense counsel transmitted the Court's actual order on the motion to compel, he explains that the order itself was sent to Defendants' corporate counsel, Mr. Borkum, rather than Mr. Wilson himself, and appeared to concern a dispute over the attorney-client privilege. (ECF No. 186, at p. 3) ("Of particular note, a December 11, 2024 email from Ms. Chang does reference

a "Motion to Compel," but that message (copied to Mr. Wilson), was addressed to Reggie Borkum, corporate counsel for Mr. Wilson's companies, and appeared to involve an attorney-client privilege dispute—not a general failure of Defendants to comply with discovery obligations.").  Mr. Wilson argues "the law does not require perfection or clairvoyance. It requires honesty. Mr. Wilson's statements were made in good faith, were based on his understanding, and were not knowingly false."  (ECF No. 186, at p. 10).

Plaintiff's motion for sanctions is now before the Court.

## II.   ANALYSIS

### A.  Legal Standards

Pursuant to the Federal Rules of Civil Procedure 37(b)(2), a Court may issue sanctions against a party:

> (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)— fails to obey an order to provide or permit discovery, including an order under Rule 26(f) , 35 , or 37(a), the court where the action is pending may issue further just orders. [Just orders] may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> . . .
>
> (C) *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii), (C).

"Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to

the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707 (1982). "The decision to impose sanctions under rule 37 is in the trial court's discretion." *Forro Precision, Inc. v. IBM,* 673 F.2d 1045, 1053 (9th Cir. 1982).

Rule 37(b) sanctions apply to all discovery related orders. *See Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1222 (9th Cir. 2018). Notably, "sanctions may be imposed even for negligent failure to provide discovery." *Fjelstad v. Am. Honda Motor Co.,* 762 F.2d 1334, 1343 (9th Cir.1985), *citing Lew v. Kona Hosp.,* 754 F.2d 1420, 1427 (9th Cir.1985); *Marquis v. Chrysler Corp.,* 577 F.2d 624, 642 (9th Cir.1978). However, the Ninth Circuit has also advised that "[i]t is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007).

Furthermore, under Federal Rule of Civil Procedure 37(b)(2)(C) "the court *must* order disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). The fact that a defendant eventually responds to the discovery requests does not preclude imposition of monetary sanctions. *N. Am. Watch Corp*, 786 F.2d at 1451 ("Belated compliance with discovery orders does not preclude the imposition of sanctions.").

**B. Whether Defendants Violated a Court Order**

With these standards in mind, the Court first looks to whether Defendants failed to obey an order under Rule 26 to provide or permit discovery.

On October 24, 2024, the Court held a hearing on Plaintiff's Motion to Compel and Request for Sanctions. (ECF No. 100, 91). During that hearing, and in its subsequent written order, the Court granted Plaintiff's motion to compel and request for sanctions (ECF No. 91). Specifically, the Court's written order stated in relevant part:

For the reasons given above, **IT IS ORDERED** as follows:

Plaintiff's motion to compel and request for sanctions (ECF No. 91) is **GRANTED** in full, except insofar as Defendants have not waived objections based on attorney client privilege or work product regarding any documents filed since the commencement of this action on June 18, 2021. By no later than thirty (30) days from the date of this order,

Defendants must produce: (1) the requested documents, and (2) a privilege log, if any, reflecting privileged document post-dating the commencement of this action on June 18, 2021.

(ECF No. 101, at p. 4).

It is undisputed that Defendants failed to obey the Court's October 29 order. Defendants did not produce any of the requested documents by thirty days from the date of that order, i.e., November 28, 2024. Nor did they provide any privilege log by that date. Nor did Defendants request an extension of the time to do so.

Therefore, the Court concludes that Defendants failed to obey an order to provide discovery.

## C. Defendants' Claim that Prior Counsel Failed to Tell Them of the Court Order or Plaintiff's Requests for Documents

Defendants' filings starting in February 2025, four months after the Court's order granting the motion to compel, concede that Defendants were in violation of this Court's order. (*See* ECF No. 140) ("Defendants recognize that this production is long overdue."). However, Defendants ask that their lack of compliance be excused because prior defense counsel did not inform Defendants of the Court's order or Plaintiff's request for additional documents. (ECF No. 140).

As an initial matter, Defendants do not cite any rule or case law that a party should be excused from compliance with a court order because their attorneys of record failed to notify them of the order. (*See generally* ECF No. 164). On the contrary, it is settled law that "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (affirming dismissal of lawsuit for failure to prosecute where plaintiff's counsel failed to appear, and stating "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation . . . ."). *See also N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO* 568 F.2d 628, 633 (9th Cir. 1977) (relying in *Link* and holding "When the order was served on Sequoia's attorney, the union was clearly bound to abide by it."). "[I]f an attorney's conduct falls substantially below what is

22

reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." *Link*, 370 U.S. at 634, n. 10.

Moreover, emails subsequently produced between Defendants' prior counsel and Defendants refute Defendants' claim that they did not know about the discovery requests or the Court's order.   On December 13, 2024, Reggie Borkum, corporate counsel for Defendants, wrote to Defendant Chris Wilson, among others, "I read through the Judge's order and it seems to imply that somehow the Judge in this case is saying the attorney/client privilege for communications/work product prior to the state of litigation was waived . . . ." (ECF No. 166-1, at p. 23).  This email shows that prior defense counsel sent the Court's order to Defendants, that Defendants' corporate counsel reviewed the order, and that Mr. Wilson was aware of the order long before he claimed to have first learned of the order.

Those emails also contradict Defendants' claim that they were unaware that there was a pending motion for sanctions until after new counsel was retained in February 2025.  (ECF No. 140, at p. 3) ("None of these attorneys communicated to him the pending motions and the serious nature of the failure to comply with discovery requests . . . ."); (ECF No. 148-1, at p. 9) ("Until I terminated MLG and at that time learned of the pending discovery issues, neither I nor any other representative of Defendants was aware of any motions to compel the production of documents or motions for sanctions in this matter.").  On the contrary, prior defense counsel Douglas Schenck's email to Defendant Chris Wilson, among others, on December 27, 2024 refers to the "January 24, 2025, hearing on Plaintiff's motion for sanctions," and his intention to "reach[] out to opposing counsel to discuss the discovery issues in this case and the Court orders that Magistrate Judge Erica P. Grosjeans [sic] has put in place." (ECF No. 166-1, at p. 35).

Thus, Defendants' argument that they should be excused from lack of compliance because they were not informed of the Court order is unsupported by the law and the facts.

Moreover, Defendants' filings on this issue show a lack of honesty and good faith, which further support the imposition of sanctions.  Defendants' filings contain multiple statements that are clearly false.  For example, Defendant Chris Wilson repeatedly said that he was not aware that Plaintiffs were requesting additional documents from Defendants.  *See, e.g.*, (ECF No. 148-1, at p. 8) ("neither I nor any other representative of Defendants were ever asked by MLG to provide any documents in addition to those that I had already provided to them."); (ECF No. 148-1, at p. 10) ("In fact, until recently being

informed by Defendants' current defense counsel, on or about February 25, 2025, I was not aware that Plaintiff and/or Intervenor ever claimed any prior production of documents was incomplete, non-responsive, or otherwise deficient."); (ECF No. 164-1, at p. 10) ("Other than the request for financial documents in December 2024, I was unaware that specific requests for documents were being made."). But this was not true.  On December 6, 2024, prior defense counsel wrote to Mr. Wilson and other representatives of defendants informing them that Defendants "will need to respond to additional discovery requests," including 7 very specific categories of documents such as "Settlement agreement with Audi in CJ's Road to Lemans Corp. v. VWGoA, Inc., and documents submitted to CA New Motor Vehicle Board in connection with the matter."    (ECF NO. 166-1, at p. 13).  Defendant Wilson responded on December 9. 2024:  "Julie, John I am not sure why I am being asked to provide all of these things.  I am comfortable with the following statements and backing them up. . . ." (ECF No. 166-1, at p. 12).  These emails show, contrary to Mr. Wilson's representation to the Court, that prior defense counsel did in fact ask Defendants to provide documents in addition to those already provided to them, and that Mr. Wilson was aware that Plaintiff claimed that Defendants' production was incomplete months before February 25, 2025.

In Mr. Wilson's response to the Court's order to show cause, he attempts to explain this apparent falsehood by stating "The point I was attempting to make here is that I was never provided copies of any of the formal Document Requests, which is absolutely true. While Ms. Chang set forth in the MLG Emails a list of 7 categories of documents being requested (Exhibit A at JC20), those categories are not tied to any specific Document Request, and I was not aware of the context of the requests."  (ECF No. 186-1, at p. 6).  But Mr. Wilson's statement to the Court did not refer to "formal document requests"—it referred to the need to "provide any documents in addition to those that I had already provided," which is exactly what prior defense counsel's email communicated.  Moreover, Mr. Wilson's statements to the Court were made in the context of claiming that he was unaware of the need to provide documents—not that he was unaware of the formal document requests.  This context makes clear that Mr. Wilson intended his statements to create the false impression that Defendants were entirely unaware that they had an obligation to produce additional documents in this case.

Similarly, Mr. Wilson stated in his declaration to this Court, under penalty of perjury "I do not recall speaking with anyone at MLG regarding my deposition . . . ." (ECF No. 164-1, at p. 11).  But in

fact, prior defense counsel wrote in an email on December 6, 2024 to Mr. Wilson among others: "We will need to . . . provide some available dates for CJ's deposition. . . . CJ—Please provide 2-3 dates in January 2025 that are available at this time," (ECF No. 166-1, at p. 13), to which Mr. Wilson responds "January I would aim for second week of availability." (ECF No. 166-1, at p. 12). In response to the order to show cause, Mr. Wilson claims his statement to the Court was not false because "In the MLG Emails, I was asked to, and promptly did provide potential dates for my deposition. To the best of my recollection, there were no follow-up communications, and I never spoke with anyone at MLG regarding my deposition." (ECF No. 186-9, at p. 9). The Court finds Mr. Wilson's distinction between "speaking" and "emailing" unconvincing. Again, Mr. Wilson's statement to the Court was in the context of claiming that he was unaware of his discovery obligations, and whether the communication occurred through speaking or email was clearly not relevant to that issue.

Additionally, the Court does not find Defendants' argument that they were completely unaware of their discovery obligations to be convincing. This argument also requires the Court to believe that prior counsel took positions on discovery, in objections and responses, informal discovery letters, a stipulation to withdraw all objections, an opposition to a motion to compel, an appearance at the hearings on the motion to compel and motion for sanctions, all without any knowledge of or input from their client. Given the lengthy time that this dispute was occurring, and the importance of this case, this is not credible.

Thus, the Court also finds that Defendants' false statements about their prior counsel's communication do not excuse their non-compliance with the Court's order. Instead, their lack of good faith and candor to the Court further warrants imposition of sanctions.

**D.  Whether Defendant is Currently in Compliance with the Court's Order**

The Court next turns to whether Defendants have now produced all documents that were ordered by the Court. While belated compliance would not excuse Defendants' failure to abide by the Court's order, it is relevant to the prejudice to Plaintiff and the extent of any sanctions under Rule 37.

Plaintiff claims that numerous documents are still missing. In Plaintiff's supplemental reply in support of its motion for sanctions, Plaintiff claims:

> Of the missing documents, Defendants did not produce a June, 2021, email exchange concerning the at-issue termination letter. Klair Decl. at ¶ 11. Nor did they produce a late-January to early-February, 2021, email exchange retaining MLG to terminate the APA. Klair Decl. at ¶ 12. They did not produce a mid-February, 2021, email exchange concerning

the APA. Klair Decl. at ¶ 13. They have not produced an early-March, 2021, exchange regarding communications with the landlord of the at-issue businesses. Klair Decl. at ¶ 14. And they produced unredacted versions of only three of the thirteen improperly redacted documents. Klair Decl. at ¶ 10.

(ECF No. 166 at 7).   Notably, Defendants' sur-reply did not respond to this declaration or otherwise represent that such documents have been produced.  (*See* ECF No. 172).  Moreover, although Defendants filed a notice on April 25, 2025 purporting to show their late compliance with the Court's order, (ECF No. 184), it is far from clear.  The notice attached a 95-page exhibit including Supplemental Objections and Responses to Each Document Request.  (ECF No 184-1)  After each request for production, Defendants list a computer link for responsive documents already produced, a link for documents newly produced, and a commitment to supplement production if additional documents are located, such as the following:

> **REQUEST NO. 2.**
>
> All DOCUMENTS between YOU and TEMPLETON relating to the AGREEMENT.
>
> **RESPONSE: Documents responsive to this request were previously produced. See spreadsheet labeled "CJ Wilson RFPs identified WIL000001-WIL006235." Additional responsive documents are being produced herewith. See spreadsheet labeled "CJ Wilson RFPs identified WIL006236_007270." If additional documents are located, Defendant will supplement its productions.**

(ECF No. 184-1, at p. 3).  But the document does not describe what documents were actually produced in response to the request, or confirm that all such documents have now been produced.

What is clear is that Defendants continue to withhold responsive documents on the basis of privilege, despite the Court's order that any claims of privilege had been waived.  At the very end of the document, Defendants include a privilege log, listing sixty-two documents dated before the start of this case, that Defendants continue to withhold from production on the basis of work-product privilege.  Defendants' continued withholding of these documents violates the Court's order, which found that Defendants had waived any attorney-client or work-product privilege before June 18, 2021.  (ECF No. 101 at 4 ("Plaintiff's motion to compel is granted in full except that Defendants may assert the attorney client privilege or work product regarding any documents filed since the commencement of this action

on June 18, 2021. The Court found that Defendant had waived all objections to that discovery. . . . Plaintiff's motion to compel and request for sanctions (ECF No. 91) is **GRANTED** in full, except insofar as Defendants have not waived objections based on attorney client privilege or work product regarding any documents filed since the commencement of this action on June 18, 2021.").

At the last hearing on the motion for sanctions, defense counsel justified this withholding on the basis that he thought the Court's order only held that the attorney-client privilege had been waived, and thus that Defendants could continue to withhold documents under the work-product privilege.  (ECF NO. 183, at p. 21-22).  But the Court's order makes no such distinction.  Moreover, the Court stated explicitly during the hearing on the motion to compel, as reflected in the transcript available on the docket: "I'm going to grant the Motion To Compel and find that per the Joint Stipulation, Document 81, Page 2, Defendants have withdrawn all objections to Foundation's Requests For Production. And I do find that that includes work product and attorney-client privilege."  (ECF No. 114, at p. 12).  The Court also made this ruling clear at the last hearing on the motion for sanctions.  (ECF No. 183, p. 25) ("I don't think that's in any way consistent with my order, either my statements in the hearing, in the written order. So, what I think is happening is that Defendants are continuing to withhold documents that were compelled.").  Yet Defendants still have not produced these documents.[3]

These documents, which Defendants continue to withhold in violation of the Court's order, are central to the dispute regarding whether Defendants had a valid basis to withdraw from the APA, and thus whether Defendants breached the contract.  Although Defendants have not included a subject matter or description of any of the withheld communications, it is very likely that these documents reflect the internal communications among Defendants regarding the APA at the time.  After all, in

---

[3] Separate from the Court's order on waiver, there are reasons to doubt Defendants' claim that all of these documents are properly subject to the work-product privilege.  The attorney work-product privilege protects from discovery in litigation "mental impressions, conclusions, opinions, or legal theories of a party's attorney" that were "prepared in anticipation of litigation or for trial." *American Civil Liberties Union of Northern California v. United States Department of Justice*, 880 F.3d 473, 483 (9th Cir. 2018).  Here, there was no litigation pending, and Defendants had not yet withdrawn from the APA.  Moreover, many of the withheld documents indicate they were written by Mr. Wilson himself, who is not a lawyer.  Additionally, the only lawyer on some of the documents was Reggie Borkum, who is Defendants' corporate counsel, not litigation counsel.  The log also does not include any description of the subject matter of the communications that would indicate they concern mental impressions related to litigation.  And many of the documents had previously been withheld under the attorney-client privilege, only to be redesignated as work-product after Defendants agreed to provide all documents withheld on the basis of attorney-client privilege.

opposition to Plaintiff's motion to compel, Defendants took the position that every document responsive to Plaintiff's request for communications regarding Defendants' decision to "terminate and/or not perform under the agreement," were "protected from disclosure by the attorney-client privilege and work product doctrine." (ECF No. 93, at p. 4). These documents thus almost certainly contain Defendants' contemporary communications regarding their decision to terminate the APA.

Thus, Defendants have still not complied with the Court's order, and continue to withhold documents ordered by the Court concerning the central question of whether Defendants had a legitimate basis to withdraw from the APA.

### E. What Sanctions Should Issue

Having found that Defendants disobeyed the Court's October 29 order, that Defendants' excuses based on lack of notice are without merit, that Defendants submitted false statements in opposition to the motion for sanctions, and that Defendants continue to withhold documents compelled by the Court that are central to the case, the Court turns to what sanctions should issue.

Again, Federal Rules of Civil Procedure 37(b)(2), states:

(A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)— fails to obey an order to provide or permit discovery, including an order under Rule 26(f) , 35 , or 37(a), the court where the action is pending may issue further just orders. [Just orders] may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

. . .

(C) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii), (C).

As an initial matter, because Defendants clearly disobeyed the Court's prior discovery orders, without substantial justification, the Court is obligated to order Defendants pay the reasonable expenses, including attorney's fees, of the Motion for Sanctions.  Fed. R. Civ. P. 37(b)(2)(C).

Having considered the parties' arguments, the Court also finds that Defendants shall also be prohibited from opposing Plaintiff's claims for breach of contract and anticipatory breach of contract. The case will proceed only on the question of damages and/or remedy for those claims.

The Court finds that this sanction is just and specifically related to the particular claim that was at issue in the order to provide discovery.  In this case, it is undisputed that Defendants terminated the APA.  The central question in dispute is whether Defendants had valid, contractually permissible, reasons to do so.  If not, their termination was a breach of the contract.  The discovery at issue in the motion to compel and motion for sanctions go directly to that question, including documents supporting or refuting Defendants' purported reasons for terminating the APA.

Moreover, the documents that Defendants continue to withhold as privileged under the work-product doctrine, in violation of the Court's order, concern Defendants' internal communications regarding why they were terminating the contract.  Thus, Defendants' failure to comply with their discovery obligations and this Court's discovery order have prevented Plaintiff from obtaining evidence needed to prove their claims and try the merits of the breach of contract claims based on the evidence.

Nor does the Court find that, as argued by defense counsel at the last hearing on this motion, Defendants should still be entitled to pursue their defense that Plaintiff independently failed to meet its obligations under the contract.  For one thing, the discovery at issue in this order also concerns this issue, such as Defendants' communications on the reason for termination, which would include Defendants' opinions regarding Plaintiff's performance.  Additionally, it appears that Defendants' and Plaintiff's performance under the deal were interrelated.  Specifically, in the Section outlining the Buyer's obligations, the APA states that "Seller shall provide its best efforts to assist Buyer's efforts under this Section 5.7(b)."  (ECF No. 43-2 at 19).  Finally, it would also be unjust to permit Defendants to take further discovery and otherwise oppose the Plaintiff's claim for breach of contract on the merits. Defendants' failure to provide documents and comply with the Court's order has stalled all discovery efforts.  The non-expert discovery deadline has long since passed.  The trial date has been vacated.  To

the Court's knowledge, substantial discovery remains on the issues of breach, including depositions. Allowing further discovery and motion practice would further delay the case. Moreover, given the Defendants' conduct, including false and misleading statements to the Court in opposition to this motion, even after the Court imposed monetary sanctions, the Court has little confidence that Defendants would comply with its discovery obligations and court orders going forward.

The Court has also considered the "dismissal factors" discussed in the *Malone* test. *Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1982) ("A district court must weigh five factors in determining whether to dismiss a case for failure to comply with a court order[.]"). Under the *Malone* test, the Court must look to: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. (*Id.*).

The first factor, the public's interest in expeditious resolution of the case, weighs in favor of these sanctions because the discovery delays and failure to comply has substantially delayed the case, and allowing Defendants to pursue their defense to the breach of contract claim would delay it even further. After all, the non-expert discovery deadline has long since expired and all dates have been vacated a ruling on this motion. The second factor, the Court's need to manage its docket, also supports these sanctions because Defendants' conduct has thwarted this Court's attempts to move the case forward. The third factor, the risk of prejudice to the other party, is neutral because although this order prevents Defendants from pursuing their defense to the breach of contract claims based on the evidence, Defendants' own withholding of documents also prevents such a determination. Moreover, Defendants' decision to continue to withhold their own contemporary communications regarding their decision to terminate the APA, against the Court's clear court orders, suggests that those documents do not support Defendants' defense, and that Plaintiff would likely prevail on its breach of contract claims on the merits if Plaintiff obtained all the documents ordered by the Court. As to the fourth factor, the public policy favoring disposition of cases on their merits, while this sanction prevents the breach of contract claims from being resolved on the evidence available, Defendant's own actions in withholding ordered documents are largely to blame for the claims not being determined on their merits. Finally, as to the fifth factor, the Court has previously issued lesser monetary sanctions, which did not result in

Defendants' compliance.  Additionally, this sanction falls short of full resolution of the action by permitting the case to proceed on the question of damages.

The Court thus finds that this sanction is warranted under Rule 37.  *See AmTrust Bank v. Lewis* 687 Fed.Appx. 667, 671 (9th Cir. 2017) ("The district court did not clearly err in finding that Lewis willfully violated a prior discovery order by refusing to make necessary disclosures regarding his interest in the residence, or in finding that Lewis repeatedly evaded and hindered the post-judgment discovery process in order to frustrate the judgment creditors' execution. The district court could reasonably anticipate continued deceptive conduct, and "[i]t is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). Lewis's deception and evasion created a high risk of prejudice to the appellees, and under these circumstances it was not an abuse of discretion to treat these factors as dispositive.");  *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787-89 (9th Cir. 2011) (holding that district court did not abuse its discretion by imposing sanction of default for discovery violations, where defendants delayed resolution of case, interfered with court's management of its docket in "one of the busiest districts in country" actions of defendants made it impossible for plaintiff to adequately prepare itself for trial, and prior order to produce documents and answer interrogatories represented first, lesser sanction than default); *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406 (9th Cir. 1990) (corporation's repeated failure to appear at scheduled depositions compounded by noncompliance with court orders to produce documents warranted default).

## III.  ORDER

For the reasons set forth above, IT IS ORDERED as follows:

a.  Plaintiff's Motion for Sanctions (ECF No. 107) is GRANTED.

b.  Defendants shall pay the reasonable expenses, including attorney's fees, of the Motion for Sanctions.

c.  Defendants shall be prohibited from opposing Plaintiff's claims for breach of contract and anticipatory breach of contract.  The case will proceed only on the question of damages and/or remedy for those claims.

d.  The parties are directed to meet and confer regarding the amount of attorney fees and other costs to be awarded to Plaintiff for bringing this motion.  Should the parties be unable to agree on the amount to be awarded, Plaintiff's counsel may file a declaration of

reasonable costs and attorney fees by no later than June 27. 2025.  Plaintiff's counsel shall also submit an affidavit attesting to the reasonableness of the costs and attorney fees.  Defendants may file any objections to Plaintiff's statement of expenses within seven (7) days of the filing of Plaintiff's statement. Objections are limited only to the amount(s) claimed by Plaintiff and/or to specific line items.

IT IS SO ORDERED.

Dated:  __**May 30, 2025**__              ___/s/ Erica P. Grosj_____
                                                       UNITED STATES MAGISTRATE JUDGE